UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2017 MAY 11  PM 3:28
S.D. OF N.Y.

Faigy Rachel WEISS
_____

_____

Write the full name of each plaintiff.

17CV3557

_____CV_____
(Include case number if one has been assigned)

-against-

City University of New York, et al -
_____

See attached (Attachment 1)
_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

COMPLAINT

Do you want a jury trial?
☑ Yes   ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

## A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

The First and Fourteenth Amendments of the Constitution of the United States of America.

Title VI of the Civil Rights Act of 1964, 42 USC § 2000d et seq.

42 USC §§1981 and 1983.

## B. If you checked Diversity of Citizenship

### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of

(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
         (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Faigy | R | Weiss |
|---|---|---|
| First Name | Middle Initial | Last Name |

| PO Box 191104 |
|---|
| Street Address |

| Brooklyn | NY | 11219 |
|---|---|---|
| County, City | State | Zip Code |

| 6466576181 | 1rachelw@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:       SEE ATTACHED              (Attachment 2)

First Name                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 2:

First Name                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 3:

First Name                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 4: _____

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                    State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: New York, New York _____

Date(s) of occurrence: February 1, 2015 to April 6, 2016 _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See attached (Attachment 1) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

See attached (Attachment 1)
_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

See attached (Attachment 1)
_____

_____

_____

_____

_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 5/11/17 | _F Weiss_ |
| Dated | Plaintiff's Signature |
| Faigy                    R | Weiss |
| First Name         Middle Initial | Last Name |
| PO Box 191104 | |
| Street Address | |
| Kings County, Brooklyn | New York          11291 |
| County, City | State          Zip Code |
| 6466576181 | 1rachelw@gmail.com |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


FAIGY RACHEL WEISS,

                    Plaintiff,

            -against-                          :

                                               :        COMPLAINT
CITY UNIVERSITY OF NEW YORK                             **ATTACHMENT 1 OF 2**
("CUNY"), the CUNY BOARD OF                    :
TRUSTEES, HUNTER COLLEGE OF THE
CITY UNIVERSITY OF NEW YORK, THE               :
SILBERMAN SCHOOL OF SOCIAL WORK                :
AT HUNTER COLLEGE, NIREATA D.
SEALS, in her individual and official capacity,:
JOHN ROSE, in his individual and official
capacity, JENNIFER RAAB, in her individual     :
and official capacity, ROBERTA NORD, in        :
her individual and official capacity
                                               :

                    Defendants                 :

                                               :

                                               :

----------------------------------------------------- x

1

## TYPE OF CASE

1.    The Plaintiff, Ms. Weiss, is a Jewish female, with white skin. She was raised in an Hasidic Jewish community. In 2015, Ms. Weiss applied to the Masters of Social Work Program at the Silberman School of Social Work at Hunter College, which is part of the City University of New York.

2.    The Silberman School rejected Ms. Weiss on the basis of her race, religion, skin color and imputed political opinion. The Dean for Diversity and Compliance at Hunter College told Ms. Weiss that Jews from religious backgrounds are "too conservative" to be social workers, but that Ms. Weiss could take free classes as a non-matriculating student to see how she would "fit in".

3.    The Silberman School also uses racial balancing and/or quotas in its admissions process to ensure that approximately 40 to 50% of each class is made up of students who self-identify as part of under-represented minorities.

4.    Ms. Weiss seeks damages, and declaratory and injunctive relief under the First and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. §§ 1981 and 1983, and Title VI, 42 USC § 2000d et seq.

## PARTIES

### Plaintiff

5.    The Plaintiff, Faigy Rachel Weiss ("Ms. Weiss"), is a resident of New York.

6.    Ms. Weiss is female.

7.    Ms. Weiss has white skin.

8.    Ms. Weiss is of the Jewish religion and ethnicity.

### Defendants

### *CUNY & its Constituent Colleges and Schools*

9.    The City University of New York ("CUNY") is a separate and distinct body corporate under Title VII, Article 125 of the New York Education Law.

10.   Under the New York Education Law, CUNY is committed to the provision of equal access and opportunity for students from all ethnic and racial groups.

11.    CUNY is comprised of 24 colleges, 11 of which are senior colleges.

12.    Hunter College of the City University of New York ("Hunter") is one of the senior colleges of CUNY.

13.    Hunter is comprised of five schools.

14.    The Silberman School of Social Work at Hunter College ("Silberman School") is one of the schools of Hunter.

### *Board of Trustees*

15.    The CUNY Board of Trustees is responsible for adopting bylaws and policies for CUNY.

### *Nireata Seals*

16.    At all times relevant herein, Nireata D. Seals ("Ms. Seals"), was the Director of Enrollment Services for the Silberman School.

17.    At all times relevant herein, Ms. Seals was an officer or employee of CUNY.

18.    Ms. Seals is sued in her official and her individual capacity.

### *John Rose*

19.    At all times relevant herein, John Rose ("Dean Rose"), was the Hunter Dean for Diversity and Compliance and Title IX Coordinator.

20.    At all times relevant herein, Dean Rose was an officer or employee of CUNY.

21.    Dean Rose is sued in his official and his individual capacity.

### *Jennifer Raab*

22.    At all times relevant herein, Jennifer Raab ("President Raab") was the President of Hunter.

23.    At all times relevant herein, President Raab was an officer or employee of CUNY.

24.    President Raab is sued in her official and her individual capacity.

### *Roberta Nord*

25.    At all times relevant herein, Roberta Nord ("Ms. Nord") was the University Director of Student Advocacy at CUNY.

26.    At all times relevant herein, Ms. Nord was an officer or employee of CUNY.

27.    Ms. Nord held is sued in her official and her individual capacity.

## Color of Law

28.    All of the acts of Defendants, their agents, servants and employees were carried out under color of state law.

## III.  FACTS

## Ms. Weiss's Religious and Educational Background

29.    Ms. Weiss was raised in the Satmar community of New York. The Satmar community is a Hasidic, Jewish community with its own rules and regulations that differ from other Jewish communities.

30.    The Satmar community has strict rules governing women, including but not limited to rules prohibiting women from driving, limiting the education of women, and requiring women to enter into arranged marriages.

31.    Ms. Weiss attended a Satmar high school ("Satmar High School") until the age of 17.

32.    The Satmar High School did not provide an accredited high school diploma or New York State Regents diploma to any of the girls who attended the school.

33.    The Satmar High School did not confer on Ms. Weiss an accredited high school diploma or New York State Regents diploma.

34.    At about the age of 19, Ms. Weiss began to explore the secular world and pursue opportunities outside the Satmar community.

35.    In about 2008, Ms. Weiss studied for and passed the GED test.

36.    In 2008, Ms. Weiss commenced studying for an associate degree in liberal arts at the Borough of Manhattan Community College ("BMCC").

37.    BMCC is one of the community colleges of CUNY.

38.    In Fall 2010, Ms. Weiss graduated from BMCC with an associate degree.

39.    In Spring 2011, Ms. Weiss transferred to Brooklyn College and was admitted into the CUNY Baccalaureate for Unique and Interdisciplinary Studies Program ("CUNY BA Program"). Brooklyn College was Ms. Weiss' home school.

40.   Brooklyn College is one of the colleges of CUNY.

41.   In Spring 2012, Fall 2012, Spring 2014 and Fall 2014, Ms. Weiss earned a place on the Dean's list in the CUNY BA Program.

42.   During the CUNY BA Program, Ms. Weiss completed an internship at a substance abuse clinic doing intake and assessments of clients seeking counselling and other services.

43.   On January 31, 2015, the CUNY BA Program conferred on Ms. Weiss a Bachelor of Arts, cum laude, with a concentration in Jewish Psychology.

44.   Ms. Weiss obtained an overall GPA of 3.59 and a GPA in her major of 3.79.

## Ms. Weiss Applied to the Silberman School

45.   On February 1, 2015, Ms. Weiss submitted an application to the Silberman School for admission into the Masters of Social Work program ("the MSW Program").

46.   The application for the MSW Program included a non-mandatory question about the applicant's race and/or ethnicity. The list of possible answers to this question did not include an option for people of Jewish ethnicity.

47.   Ms. Weiss left the race and/or ethnicity question in the application form blank.

48.   Ms. Weiss' application to the Silberman School included a personal statement that identified Ms. Weiss as Jewish and described her upbringing in the Satmar community.

49.   Ms. Weiss satisfied all of the prerequisites for admission to the MSW Program.

## Ms. Weiss was Singled Out in the Admissions Interview

50.   On March 23, 2015, the Silberman School invited Ms. Weiss to attend a group interview. The interview was the next step in the admissions process for the MSW Program.

51.   On information and belief, the Silberman School is the only school of Social Work in New York to require a group interview as part of the admissions process. The source of that information and belief is the Dissertation of Ms. Seals (described below).

52.   On April 7, 2015, Ms. Weiss attended a group interview.

53.   There were seven other applicants at the group interview. The other applicants were of different races and ethnicities, including African-American, Hispanic, Asian and white-skinned people.

54.    The interview was conducted by a female employee of the Silberman School ("the Interviewer").

55.    The Interviewer asked a series of questions of each applicant. For each applicant other than Ms. Weiss, those questions were identical as between the applicants.

56.    The Interviewer asked Ms. Weiss two questions that the Interviewer did not ask of any other applicant.

57.    The first question the Interviewer asked Ms. Weiss only was "Why don't you apply to the special education school?"

58.    The second question the Interviewer asked Ms. Weiss only was "How would you handle people who are different to you?"

**Ms. Weiss is Refused Admission to the Silberman School**

59.    On information and belief, Ms. Seals was the employee and/or officer of the Silberman School who was responsible for deciding whether or not Ms. Weiss' application to the Program would be accepted. That information and belief is based on an email sent by Ms. Seals to Ms. Weiss in April 2017, stating that she was considering Ms. Weiss' application.

60.    On or about April 28, 2015, Ms. Seals decided to reject Ms. Weiss' application to the Program.

61.    On or about April 28, 2015, the Silberman School rejected Ms. Weiss' application to the Program.

62.    The Silberman School notified Ms. Weiss of her rejection from the Program by letter dated April 28, 2015. That letter did not state any reasons for the rejection of Ms. Weiss' application.

**Dean Rose Admits Discriminatory Purpose in Refusing Admission**

63.    On December 7, 2015, Ms. Weiss sent an email to Dean Rose stating that the Silberman School had discriminated against Ms. Weiss on the basis of religion and disability (based on health problems that occurred during Ms. Weiss' undergraduate studies).

64.    On December 23, 2015, Ms. Weiss met with Dean Rose and Sandra Nunez ("Ms. Nunez"), an attorney employed by Hunter College.

65.    At that meeting, Ms. Weiss told Dean Rose that:

a.  Ms. Weiss had been singled out at the group interview;

b.  The interview process violated the right to freedom of speech of all applicants;

c.  Ms. Weiss had heard from other Jewish white girls, who had also been rejected by the Silberman School, that the Silberman School did not want to admit Jewish white girls.

66. On January 27, 2016, Ms. Weiss met with Dean Rose for a second time. There was no one else present.

67. At that meeting, Dean Rose told Ms. Weiss:

a.  Dean Rose did not think the Silberman School had discriminated against Ms. Weiss on the basis of religion, and he would ask Ms. Nunez for verification;

b.  The Silberman School conducted the group admission interviews to "weed out conservatives, because Trumps and Cruzes can't be social workers."

c.  "Jews from religious backgrounds are too conservative to be social workers."

d.  The Interviewer had asked Ms. Weiss additional questions to "help" Ms. Weiss.

e.  Ms. Weiss could take classes as a non-matriculating student, so that the Silberman School could assess how Ms. Weiss would "fit in".

68. At that meeting, Ms. Weiss asked Dean Rose who would pay for her to take classes, as non-matriculating students are not eligible for loans. Dean Rose told Ms. Weiss he would find out what he could do.

69. At that meeting, Ms. Weiss again told Dean Rose that she was concerned that the interview violated everyone's freedom of speech. Ms. Weiss told Dean Rose that her right to freedom of speech had been violated as the Silberman School had rejected Ms. Weiss because she had identified herself as Jewish and described her background in the Satmar community.

70. On February 1, 2017 Ms. Weiss met with Dean Rose for a third time.

**CUNY Fails to Remedy Discrimination**

71. On February 2, 2016, Ms. Weiss emailed an updated complaint to Dean Rose.

72. In about February 2016, Dean Rose left a voicemail for Ms. Weiss, stating that:

7

    a.      Ms. Weiss could attend classes as a non-matriculating student for free, provided that Ms. Weiss paid the $125 application fee;

    b.      The Silberman School would allow Ms. Weiss to apply despite the time for applications being closed.

73.      Ms. Weiss did not take up Dean Rose's offer to take classes as a non-matriculating student.

74.      Ms. Weiss' reason for refusing Dean Rose's offer was that Ms. Weiss was concerned Dean Rose made the offer to discourage her from following up her allegations of discrimination and violations of her right to free speech.

75.      On March 2, 2016, President Raab sent Ms. Weiss a letter stating that Hunter denied the discrimination charges.

76.      On April 6, 2016, Ms. Weiss emailed the Office of the Chancellor of CUNY to appeal the decision.

77.      On or about April 28, 2016, Ms. Nord sent a letter to Ms. Weiss on behalf of the Chancellor's Office.

78.      Ms. Nord denied that CUNY had discriminated against Ms. Weiss.

79.      Ms. Nord stated that the group interview "follows uniform guidelines which have been in place for some time and were not altered or adjusted prior to your interview."

80.      The letter reiterated the offer to Ms. Weiss that she could take classes as a non-matriculating student for free.

### Silberman School's Systematic Use of Race to Determine Admissions

#### *Racial Balancing and Significantly Disparate Standards*

81.      On information and belief, the Silberman School accepts all or almost all persons who:

    a.      complete their application; and

    b.      identify as a member of a racial and/or ethnic group that the Silberman School considers to be an "under-represented" minority, such as African-American or Hispanic ("under-represented minorities").

82.      Further, or in the alternative, the Silberman School applies a substantially lower standard of admission to all persons who:

8

    a.     complete their application; and

    b.     identify as a member of an under-represented minority.

83.    Further, or in the alternative, the Silberman School utilizes racial balancing and/or quotas in its admissions process, to ensure that there is an equal number of students from under-represented minorities and white or other non-minority students in each year. The term "non-minority" is used herein to describe individuals from ethnic groups, such as Jewish or Muslim students, who are not recognized as an under-represented minority by the Silberman School.

84.    Further, or in the alternative, the Silberman School uses race as a decisive factor in the admissions process for those applicants who identify as belonging to an under-represented minority.

85.    The source of that information and belief is:

    a.     The Education Doctoral dissertation of Ms. Seals entitled "The Admissions Process: An Evaluation of Access for Minority Students at the Silberman School of Social Work at Hunter College", submitted to St John Fisher College in 2012 ("Seals Dissertation");

    b.     The Factbook 2009 ("FB09"), the Factbook 2010 ("FB10"), the Factbook 2011 ("FB11") and the Factbook 2014 ("FB14") (together, "Factbooks") prepared and written by Hunter College's Office of Institutional Research;

    c.     CUNY's Response to a FOIL Request submitted by Ms. Weiss on May 3, 2016 ("FOIL Response").

86.    Based on the above, using 2009 as an example:

    a.     1433 people commenced applications for the Silberman School (FB09 p15b);

    b.     Of those 1433 applications, 605 were commenced by people who identified as minorities (Seals Dissertation, Table 4.14) and 828 were commenced by people who were white or otherwise did not identify as minorities;

    c.     Of those 1433 people, only 991 successfully completed their applications (FB09 p15b);

    d.     Neither CUNY nor Ms. Seals reveal the racial and/or ethnic makeup of the 991 individuals who successfully completed their applications. However, an estimate of the numbers can be derived from the Seals Dissertation:

    i.       In order to successfully complete an application to the Silberman School, applicants were required to meet two deadlines: first, an initial application deadline, and, second, a deadline for submitting supporting documentation;

    ii.      Between 2009 and 2011, on average, only 60% of minority students met the initial application deadline, compared to 80% of white or otherwise non-minority students (Seals Dissertation, Table 4.8);

    iii.     Between 2009 and 2011, on average, only 73.5% of minority students met the deadline for submitting supporting documentation, compared to 81.8% of white or otherwise non-minority students (Seals Dissertation, Table 4.10);

    iv.     Using the average rate at which minorities and white or otherwise non-minority students meet the initial deadline, in 2009 approximately 363 under-represented minority applicants completed their applications (i.e. 60% of 605 who commenced applications) and 662 white and other non-minority students completed their applications (i.e. 80% of 828 who commenced an application) (noting that these numbers would be smaller still if also incorporating the percentages who then fail to meet the submitting documentation deadline);

e.     501 applicants were accepted into the Silberman School (see FB09, p15b);

f.     Neither CUNY nor Ms. Seals reveal the racial and/or ethnic makeup of the individuals who were accepted into the Silberman School;

g.     Of the 501 applications which were accepted, 409 students enrolled (see FB09, p15b);

h.     Of the 409 enrolled students, 197 students identified as being African-American, Hispanic or another minority (Seals Dissertation, p76, Table 4.14). Therefore, 212 enrolled students identified as white or otherwise did not identify as being a minority;

i.     Based on the above, as a percentage of enrolled students to persons who commenced (but did not necessarily complete) an application:

    i.       Of 605 self-identified minority persons who commenced an application, only 197 were enrolled. That constitutes 32%.

      ii.      Of 828 white or non-minority persons who commenced an application, only 212 were enrolled. That constitutes only 25%.

    j.      Based on the above, as a percentage of enrolled students to persons who successfully completed an application:

      i.      Of approximately 363 self-identified minority persons who successfully completed an application, 197 were enrolled. That constitutes an admission rate of 54%.

      ii.      Of approximately 662 white or non-minority persons who successfully completed an application, 212 were enrolled. That constitutes an admission rate of 32%.

    k.      As a consequence of these differing rates of acceptance, CUNY achieved a student body in 2009 that was close to equally divided between minority (197) and non-minority (212) persons.

87.      Repeating the process above for 2010, as a percentage of enrolled students to persons who successfully completed an application:

    a.      Of approximately 376 (i.e. 60% of 627) self-identified minority persons who successfully completed an application, 184 were enrolled. That constitutes an admission rate of 49%.

    b.      Of approximately 802 (i.e. 80% of 1,003) white or non-minority persons who successfully completed an application, 269 were admitted. That constitutes an admission rate of 34%.

88.      Repeating the process above for 2011, as a percentage of enrolled students to persons who successfully completed an application:

    a.      Of approximately 366 (i.e. 60% of 610) self-identified minority persons who successfully completed an application, 266 were admitted. That constitutes an admission rate of 73%.

    b.      Of approximately 833 (i.e. 80% of 1,041) white or non-minority persons who successfully completed an application, 246 were admitted. That constitutes an admission rate of 30%.

89.      On information and belief, in each year, the number of applicants to the Silberman School who both identify as a minority student, and also successfully complete the

application, is approximately half the number of white or non-minority applicants who successfully complete the application.

90.    Using the average rates of application completion described above at paragraph 86(2)(ii), there were approximately twice as many white or non-minority applicants who completed applications to minority applicants who completed applications in each of 2009, 2010 and 2011:

    a.    In 2009, 662 white or non-minority applicants to 363 minority applicants;

    b.    In 2010, 802 white or non-minority applicants to 376 minority applicants;

    c.    In 2011, 833 white or non-minority applicants to 366 minority applicants.

91.    Despite having approximately half the number of completed applications from self-identified minority students than the number of completed applications from white and other non-minority students, the Silberman School's admissions process results in a racially balanced class each year:

    a.    In 2009, 197 self-identified minority students were enrolled out of 409 students, constituting 48.2% of the class (Seals Dissertation Table 4.14, FB11).

    b.    In 2010, 184 minority students were enrolled out of 453 students, constituting 40.6% of the class (Seals Dissertation Table 4.14, FB11).

    c.    In 2011, 226 minority students were enrolled out of 472 students, constituting 47.8% of the class (Seals Dissertation Table 4.14, FB11).

92.    As a consequence of this racial balancing and /or quota approach, a much higher proportion of white or non-minority students are refused admission into the MSW program.

93.    The admissions policy of the Silberman School is not narrowly tailored to take account of an applicant's race.

### Failure to Recognize Diversity of Other Applicants

94.    On information and belief, the Silberman School fails to recognize the ethnic and/or racial identity of Jewish people.

95.    The source of that information and belief is:

    a.    The Seals Dissertation;

      b.     The application form for the MSW Program, which did not include the option of "Jewish" as an answer to the question about the applicant's ethnicity and/or race.

96.    By failing to recognize the ethnic and/or racial identity of Jewish people, the Silberman School fails to give serious and individualized consideration to all the ways an applicant might contribute to a diverse educational environment.

### *Lack of Transparency about Race in Admissions at the Silberman School*

97.    Each of the FOIL Response, the Factbooks, and the Seals Dissertation, contain different and contradictory figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School.

98.    Each of the FOIL Response, the Factbooks, and the Seals Dissertation, omit crucial figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School.

99.    The Defendants knew, or ought to have known, that the published figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School were incorrect, incomplete and misleading.

### **Defendants' Rejection of Ms. Weiss**

100.    The Defendants refused Ms. Weiss admission to the MSW Program for discriminatory reasons, specifically on the basis of her Jewish religion and ethnicity, and the "conservative" political opinion imputed to her on the basis of her Jewish identity.

101.    Further, or in the alternative, the Defendants refused to consider Ms. Weiss' application for discriminatory reasons, specifically by failing to consider her application on an equal basis with students who identified as an under-represented minority, such as African-American or Hispanic.

102.    The Defendants knew of, or were deliberately indifferent to, to the discrimination perpetuated by CUNY in the admission to the MSW Program at the Silberman School.

### **INJURIES**

103.    The Defendants' conduct deprived Ms. Weiss of the ability to compete for admission to the MSW Program on an equal basis with under-represented minority applicants.

104.    The Defendants' conduct deprived Ms. Weiss of the opportunity to attend, and graduate from, the MSW Program.

105.  The Defendants' conduct deprived Ms. Weiss of the $125 fee spent by her to apply to the MSW Program.

106.  As a result of the Defendants' conduct, Ms. Weiss suffered emotional distress.

107.  As a result of the Defendants' misconduct, Ms. Weiss incurred tuition fees and other expenses attendant to attending the Social Work Program at New York University ("NYU"), which is a significantly more expensive program than the MSW Program.

108.  In or about fall 2015, Ms. Weiss attended a single semester of the Social Work Program at New York University ("NYU").

109.  Ms. Weiss was unable to afford the tuition at NYU.

110.  After the first semester, Ms. Weiss dropped out of the NYU Program because she could not afford to continue paying the tuition fees.

111.  As at May 9, 2017, Ms. Weiss still has student loans for the NYU Program of approximately $11,360 including a $609 Grad Plus Loan, according to the website myfedloan.org and the NYU Student Portal.

## CLAIMS

112.  By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish religion.

113.  By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish race.

114.  By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her white skin color.

115.  By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her imputed political opinion.

### First Amendment

116.  By their conduct alleged herein, the Defendants violated Plaintiff's first amendment rights to freedom of religion and 42 U.S.C. §§ 1981 and 1983.

117.  By their conduct alleged herein, the Defendants violated Plaintiff's first amendment right to freedom of speech and 42 U.S.C. §§ 1981 and 1983.

118.    By their conduct alleged herein, the Defendants retaliated against Plaintiff for exercising her first amendment right to freedom of speech and 42 U.S.C. §§ 1981 and 1983.

119.    By their conduct alleged herein, the Defendants violated Plaintiff's first amendment right to freedom from political discrimination and 42 U.S.C. §§ 1981 and 1983.

### Fourteenth Amendment

120.    By their conduct alleged herein, the Defendants violated Plaintiff's fourteenth amendment right to equal protection and 42 U.S.C. §§ 1981 and 1983.

### Title VI

121.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish race and her white skin color, contrary to Title VI, 42 USC § 2000d et seq.

### RELIEF

The Plaintiff, Ms. Weiss, respectfully requests the following relief:

A.    A declaratory judgment from the Court that Defendants' admissions policies and procedures violate the First Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983;

B.    A permanent injunction restraining the Defendants from an admission policy based on race, religion or imputed political opinion;

C.    Award to the Plaintiff of compensatory damages against all Defendants, jointly and severally, including the refund of the application fees and associated costs of applying, the Plaintiff's emotional distress, and the tuition incurred by the Plaintiff in attending NYU;

D.    Award to the Plaintiff of punitive damages against all Defendants on the basis of their conscious wrongdoing;

E.    Injunctive relief admitting Ms. Weiss to the Social Work Program at the Silberman School of Social Work on the basis of her existing application, and with the provision of a tuition waiver and stipend;

F.    Award to the Plaintiff of the costs and reasonable attorney's fees arising from this action;

G.    All other relief this Court finds appropriate and just;

H.    An order entering judgment for Ms. Weiss, Plaintiff, against the Defendants.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


FAIGY RACHEL WEISS,

                  Plaintiff,

      -against-


CITY UNIVERSITY OF NEW YORK
("CUNY"), et al

                  Defendants


**COMPLAINT**
**ATTACHMENT 2 OF 2**


**B. Defendant Information**

**Defendant 1**

Name:        City University of New York

Address:    Office of the General Counsel and Vice Chancellor of Legal Affairs
               City University of New York
               205 E 42nd Street
               New York, NY 10017


**Defendant 2**

Name:        City University of New York Board of Trustees

Address:    Office of the General Counsel and Vice Chancellor of Legal Affairs
               City University of New York
               205 E 42nd Street
               New York, NY 10017

1

**Defendant 3**

Name:        Hunter College of the City University of New York

Address:     Office of Legal Affairs
             Hunter College
             695 Park Ave
             NY, NY 10065

**Defendant 4**

Name:        Silberman School of Social Work at Hunter College

Address:     Office of the Dean
             Silberman School of Social Work at Hunter College
             2180 Third Avenue
             New York, NY 10035

**Defendant 5**

Name:        Nireata D. Seals

Title:       Associate Dean for Student Access and Achievement

Address:     LaGuardia Community College
             31-10 Thomson Ave.
             Long Island City, NY 11101

**Defendant 6**

Name:        John Rose

Title:       Dean for Diversity & Compliance

Address:     Hunter College
             695 Park Ave
             NY, NY 10065

**Defendant 7**

Name:          Jennifer Raab

Title:          President of Hunter College

Address:        Office of the President
                Hunter College
                695 Park Ave
                NY, NY 10065

**Defendant 8**

Name:          Roberta Nord

Title:          University Director, Student Conduct, Advocacy & Disaster Relief

Address:        City University of New York
                205 E 42nd Street
                New York, NY 10017