UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIGY RACHEL WEISS,

          Plaintiff,

     -against-         :

CITY UNIVERSITY OF NEW YORK    :
("CUNY"), MEMBERS OF THE CITY
UNIVERSITY OF NEW YORK BOARD OF  :
TRUSTEES in their official and individual
capacity, HUNTER COLLEGE OF THE
CITY UNIVERSITY OF NEW YORK, THE  :
SILBERMAN SCHOOL OF SOCIAL WORK
AT HUNTER COLLEGE, JAMES         :
MILLIKEN, in his individual and personal
capacity, NIREATA D. SEALS, in her    :
individual and official capacity,  JOHN ROSE,
in his individual and official capacity,    :
JENNIFER RAAB, in her individual and
official capacity, ROBERTA NORD, in her  :
individual and official capacity, ERIC T.
SCHNEIDERMAN, in his individual and   :
official capacity.

         Defendants

------------------------------------------------------- x

17 Civ. 3557 (VSB)

Amended
COMPLAINT

**ATTACHMENT 1 OF 2**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/18

1

**TYPE OF CASE**

1.  The Plaintiff, Ms. Weiss, is a Jewish female, with white skin. She is an American born citizen and was raised in a Hasidic Jewish community in New York. In 2015, Ms. Weiss applied to the Masters of Social Work Program at the Silberman School of Social Work at Hunter College, which is part of the City University of New York.

2.  The Silberman School rejected Ms. Weiss on the basis of her race, religion, skin color, gender, citizenship status, national origin, and imputed political opinion. The Dean for Diversity and Compliance at Hunter College told Ms. Weiss that Jews from religious backgrounds are "too conservative" to be social workers, but that Ms. Weiss could take free classes as a non-matriculating student to see how she would "fit in".

3.  The Silberman School also uses racial balancing and/or quotas in its admissions process to ensure that approximately 40 to 50% of each class is made up of students who self-identify and/or are identified by the interviewers at the interview as part of under-represented minorities.

4.  Ms. Weiss seeks damages, and declaratory and injunctive relief under the First and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. §§ 1981 and 1983, Title VI and Title VII of the Civil Rights Act, Title IV of the Civil Rights Act, Title IX of the Educational Amendments of 1972, 42 USC § 2000d et seq, The Immigration Reform and Control Act of 1986 (IRCA), Immigration and Nationality Act (INA), NYS Human Rights Laws, NYC Human Rights Laws, 18 U.S.C. § 2.

**PARTIES**

**Plaintiff**

5.  The Plaintiff, Faigy Rachel Weiss ("Ms. Weiss"), is a resident of New York.

6.  Ms. Weiss is of the Jewish race and religion.

7.  Ms. Weiss is female.

8.  Ms. Weiss has white skin.

9.  Ms. Weiss is a first generation American born citizen.

10. Ms. Weiss's native language is Yiddish.

2

**Defendants**

***CUNY & its Constituent Colleges and Schools***

11.     The City University of New York ("CUNY") is a separate and distinct body corporate under Title VII, Article 125 of the New York Education Law.

12.     Under the New York Education Law, CUNY is committed to the provision of equal access and opportunity for students from all ethnic and racial groups.

13.     CUNY is comprised of 24 colleges, 11 of which are senior colleges.

14.     Hunter College of the City University of New York ("Hunter") is one of the senior colleges of CUNY.

15.     Hunter is comprised of five schools.

16.     The Silberman School of Social Work at Hunter College ("Silberman School") is one of the schools of Hunter.

***Members of the CUNY Board of Trustees***

17.     The members of the CUNY Board of Trustees are responsible for adopting bylaws and policies for CUNY.

18.      Members of the Board of Trustees of the City University of New York (hereinafter "Board Defendants") are, and were at all times relevant to this Complaint, the members of the Board of Trustees of the City University of New York, a public university organized and existing under the laws of the State of New York and the City of New York.

19.     The Board Defendants are William C. Thompson, Jr.; Barry F. Schwartz; Michael Arvanites; Wellington Z. Chen; Henry Berger; Una S. T-Clarke; Lorraine Cortes-Vazquez; Rita DiMartino; Fernando Ferrer; Judah Gribetz; Mayra Linares-Garcia; Kevin Kim;  Robert F. Mujica; Brian D. Obergefell; Jill O'Donnell-Tormey; Charles A. Shorter; Ken Sunshine; Sandra Wilkin; Chika Onyejiukwa; and Katherine M. Conway.

20.     The Board Defendants are responsible for the adoption and authorization of policies that govern students and student organizations at the College, including the admissions policy of the undergraduate and graduate schools.

21.   The Board Defendants have approved a discriminatory admissions process and have not made any changes to ensure compliance with federal and state laws.

22.   The Board Defendants have openly stated that CUNY will continue to educate, provide scholarships, internships, etc to applicants/students who are not citizens (DACA recipients/immigrants) while denying American born citizens the same opportunities.

23.   The Board Defendants have not investigated and/or penalized any of the other defendants involved in this fraudulent and discriminatory activity.

24.   The Board Defendants approved the current employment and salary of Ms. Seals despite her obtaining her doctoral degree in a fraudulent manner.

25.   The Board Defendants are being sued in their official and individual capacity.

### *James Milliken*

26.   At all times relevant herein, James Milliken ("Mr. Milliken") was the Chancellor of the City University of New York (CUNY).

27.   At all times relevant herein, Mr. Milliken was an officer or employee of CUNY.

28.   Mr. Milliken actually participated in and aided and abetted the conduct giving rise to the discrimination claims as set forward herein.

29.   Mr. Milliken openly stated that CUNY will continue to educate, provide scholarships, internships, etc to applicants/students who are not citizens (DACA recipients/immigrants) while denying American born citizens the same opportunities.

30.   Mr. Milliken is being sued in his official and individual capacity.

### *Nireata Seals*

31.   At all times relevant herein, Nireata D. Seals ("Ms. Seals"), was the Director of Enrollment Services for the Silberman School.

32.   At all times relevant herein, Ms. Seals was an officer or employee of CUNY.

33.   Ms. Seals used her position as the Director of Enrollment Services for the Silberman School for personal gain, conducting research of applicants for the purpose to obtain her doctoral degree.

4

34.    Ms. Seals violated multiple CUNY rules, including but not limited to, discrimination of applicants, research and academic misconduct, fraud, or misuse of CUNY resources, conflict of interest or ethics, etc.

35.    Ms. Seals continues to be employed by CUNY under the title of Doctor despite obtaining her doctoral degree in a fraudulent manner and in violation of CUNY policy.

36.    Ms. Seals is sued in her official and her individual capacity.

### John Rose

37.    At all times relevant herein, John Rose ("Dean Rose"), was the Hunter Dean for Diversity and Compliance and Title IX Coordinator.

38.    At all times relevant herein, Dean Rose was an officer or employee of CUNY.

39.    Dean Rose has the responsibility to ensure compliance in federal and state laws.

40.    Dean Rose has enabled a discriminatory admissions process in violation of federal and state laws.

41.    Dean Rose is sued in his official and his individual capacity.

### Jennifer Raab

42.    Defendant Jennifer Raab is, and was at all times relevant to this Complaint, the President of Hunter College, a college of the City University of New York, a public university organized and existing under the laws of the State of New York and the City of New York.

43.    Defendant Raab is responsible for enactment, enforcement, administration and policymaking relating to applicants and students including the admissions process at the graduate schools.

44.    Defendant Raab enabled a discriminatory admissions process and has publicly pledged to ensure the rights of non-citizens (DACA recipients/immigrants) and provide them with services and opportunities that American-born citizens were denied.

45.    President Raab is sued in her official and her individual capacity.

*Roberta Nord*

46. At all times relevant herein, Roberta Nord ("Ms. Nord") was the University Director of Student Advocacy at CUNY.

47. At all times relevant herein, Ms. Nord was an officer or employee of CUNY.

48. Ms. Nord aided and abetted in the discriminatory admissions process and failed to take the appropriate actions to ensure compliance with federal and state laws.

49. Ms. Nord held is sued in her official and her individual capacity.

*Eric T. Schneiderman*

50. At all times relevant herein, Eric T. Schneiderman ("Mr. Schneiderman") is the Attorney General of New York.

51. Mr. Schneiderman is responsible to ensure compliance in state laws.

52. Mr. Schneiderman has filed a lawsuit against President Trump, et al, on behalf of CUNY and non-citizen students.

53. Mr. Schneiderman is de facto representing CUNY officials on behalf of non-citizens/immigrants (DACA recipients) enabling CUNY to discriminate against American born citizens who are not immigrants.

54. Mr. Schneiderman has not provided American born citizens with the same legal services provided to non-citizens/immigrants/DACA recipients.

55. Mr. Schneiderman failed to ensure compliance in state laws from/by defendants CUNY et. al.

56. Mr. Schneiderman is being sued in his official and individual capacity.

## Color of Law

57. All of the acts of Defendants, their agents, servants and employees were carried out under color of state law.

### III.   FACTS

### Ms. Weiss's Religious and Educational Background

58.    Ms. Weiss was raised in the Satmar community of New York. The Satmar community is a Hasidic, Jewish community with its own rules and regulations that differ from other Jewish communities.

59.    The Satmar community has strict rules governing women, including but not limited to rules prohibiting women from driving, limiting the Jewish and secular education of women, and requiring women to enter into arranged marriages.

60.    Ms. Weiss attended a Satmar high school ("Satmar High School") until the age of 17.

61.    The Satmar High School did not provide an accredited high school diploma or New York State Regents diploma to any of the girls who attended the school.

62.    The Satmar High School did not confer on Ms. Weiss an accredited high school diploma or New York State Regents diploma.

63.    At about the age of 19, Ms. Weiss began to explore the secular world and pursue opportunities outside the Satmar community.

64.    In about 2008, Ms. Weiss studied for and passed the GED test.

65.    In 2008, Ms. Weiss commenced studying for an associate degree in liberal arts at the Borough of Manhattan Community College ("BMCC").

66.    BMCC is one of the community colleges of CUNY.

67.    In Fall 2010, Ms. Weiss graduated from BMCC with an associate degree.

68.    In Spring 2011, Ms. Weiss transferred to Brooklyn College and was admitted into the CUNY Baccalaureate for Unique and Interdisciplinary Studies Program ("CUNY BA Program"). Brooklyn College was Ms. Weiss' home school.

69.    Brooklyn College is one of the colleges of CUNY.

70.    In Spring 2012, Fall 2012, Spring 2014 and Fall 2014, Ms. Weiss earned a place on the Dean's list in the CUNY BA Program.

71. During the CUNY BA Program, Ms. Weiss completed an internship at a substance abuse clinic doing intake and assessments of clients seeking counselling and other services.

72. On January 31, 2015, the CUNY BA Program conferred on Ms. Weiss a Bachelor of Arts, cum laude, with a unique and individualized degree in Jewish Psychology.

73. Ms. Weiss obtained an overall GPA of 3.59 and a GPA in her major of 3.79.

## Ms. Weiss Applied to the Silberman School

74. On February 1, 2015, Ms. Weiss submitted an application to the Silberman School for admission into the Masters of Social Work program ("the MSW Program").

75. The application for the MSW Program included a non-mandatory question about the applicant's race and/or ethnicity. The list of possible answers to this question did not include an option for people of Jewish race.

76. Ms. Weiss left the race and/or ethnicity question in the application form blank.

77. The application for the MSW Program included three mandatory questions: citizenship status, country of birth, and native language.

78. Ms. Weiss stated that she is a United States Citizen, was born in the United States, and her native language is Yiddish.

79. Ms. Weiss' application to the Silberman School included a personal statement that identified Ms. Weiss as Jewish and described her upbringing in the Satmar community.

80. Ms. Weiss satisfied all of the prerequisites for admission to the MSW Program.

## Ms. Weiss was Singled Out in the Admissions Interview

81. On March 23, 2015, the Silberman School invited Ms. Weiss to attend a group interview. The interview was the next step in the admissions process for the MSW Program.

82. On information and belief, the Silberman School is the only school of Social Work in New York to require a group interview as part of the admissions process. The source of that information and belief is the Dissertation of Ms. Seals (described below).

83. On April 7, 2015, Ms. Weiss attended a group interview.

84.     There were seven other applicants at the group interview. The other applicants were of
        different races and ethnicities, including African-American, Hispanic, Asian and
        white-skinned people.

85.     The interview was conducted by a female employee of the Silberman School ("the
        Interviewer").

86.     The Interviewer asked a series of questions of each applicant. For each applicant other
        than Ms. Weiss, those questions were identical as between the applicants.

87.     The Interviewer asked Ms. Weiss two questions that the Interviewer did not ask of any
        other applicant.

88.     The first question the Interviewer asked Ms. Weiss only was "Why don't you apply to the
        special education school?"

89.     The second question the Interviewer asked Ms. Weiss only was "How would you handle
        people who are different to you?"

### Ms. Weiss is Refused Admission to the Silberman School

90.     On information and belief, Ms. Seals was the employee and/or officer of the Silberman
        School who was responsible for deciding whether or not Ms. Weiss' application to the
        Program would be accepted. That information and belief is based on an email sent by
        Ms. Seals to Ms. Weiss in April 2017, stating that she was considering Ms. Weiss'
        application.

91.     On or about April 28, 2015, Ms. Seals decided to reject Ms. Weiss' application to the
        Program.

92.     On or about April 28, 2015, the Silberman School rejected Ms. Weiss' application to the
        Program.

93.     The Silberman School notified Ms. Weiss of her rejection from the Program by letter
        dated April 28, 2015. That letter did not state any reasons for the rejection of Ms. Weiss'
        application.

### Dean Rose Admits Discriminatory Purpose in Refusing Admission

94. On December 7, 2015, Ms. Weiss sent an email to Dean Rose stating that the Silberman School had discriminated against Ms. Weiss on the basis of religion and disability (based on health problems that occurred during Ms. Weiss' undergraduate studies).

95. On December 23, 2015, Ms. Weiss met with Dean Rose and Sandra Nunez ("Ms. Nunez"), an attorney employed by Hunter College.

96. At that meeting, Ms. Weiss told Dean Rose that:

    a. Ms. Weiss had been singled out at the group interview;

    b. The interview process violated the right to freedom of speech of all applicants;

    c. Ms. Weiss had heard from other Jewish women, who had also been rejected by the Silberman School, that the Silberman School did not want to admit Jewish white girls.

97. On January 27, 2016, Ms. Weiss met with Dean Rose for a second time. There was no one else present.

98. At that meeting, Dean Rose told Ms. Weiss:

    a. Dean Rose did not think the Silberman School had discriminated against Ms. Weiss on the basis of religion, and he would ask Ms. Nunez for verification;

    b. The Silberman School conducted the group admission interviews to "weed out conservatives, because Trumps and Cruzes can't be social workers."

    c. "Jews from religious backgrounds are too conservative to be social workers."

    d. The Interviewer had asked Ms. Weiss additional questions to "help" Ms. Weiss.

    e. Ms. Weiss could take classes as a non-matriculating student, so that the Silberman School could assess how Ms. Weiss would "fit in".

99. At that meeting, Ms. Weiss asked Dean Rose who would pay for her to take classes, as non-matriculating students are not eligible for loans. Dean Rose told Ms. Weiss he would find out what he could do.

100. At that meeting, Ms. Weiss again told Dean Rose that she was concerned that the interview violated everyone's freedom of speech. Ms. Weiss told Dean Rose that her right to freedom of speech had been violated as the Silberman School had rejected Ms. Weiss

because she had identified herself as Jewish and described her background in the Satmar community.

101.    On February 1, 2017 Ms. Weiss met with Dean Rose for a third time.

### CUNY Fails to Remedy Discrimination

102.    On February 2, 2016, Ms. Weiss emailed an updated complaint to Dean Rose.

103.    In about February 2016, Dean Rose left a voicemail for Ms. Weiss, stating that:

    a.    Ms. Weiss could attend classes as a non-matriculating student for free, provided that Ms. Weiss paid the $125 application fee;

    b.    The Silberman School would allow Ms. Weiss to apply despite the time for applications being closed.

104.    Ms. Weiss did not take up Dean Rose's offer to take classes as a non-matriculating student.

105.    Ms. Weiss' reason for refusing Dean Rose's offer was that Ms. Weiss was concerned Dean Rose made the offer to discourage her from following up her allegations of discrimination and violations of her right to free speech.

106.    On March 2, 2016, President Raab sent Ms. Weiss a letter stating that Hunter denied the discrimination charges.

107.    On April 6, 2016, Ms. Weiss emailed the Office of the Chancellor of CUNY to appeal the decision.

108.    On or about April 28, 2016, Ms. Nord sent a letter to Ms. Weiss on behalf of the Chancellor's Office.

109.    Ms. Nord denied that CUNY had discriminated against Ms. Weiss.

110.    Ms. Nord stated that the group interview "follows uniform guidelines which have been in place for some time and were not altered or adjusted prior to your interview."

111.    The letter reiterated the offer to Ms. Weiss that she could take classes as a non-matriculating student for free.

### Silberman School's Systematic Use of Race/Skin Color to Determine Admissions

11

*Racial Balancing and Significantly Disparate Standards*

112.   On information and belief, the Silberman School accepts all or almost all persons who:

    a.   complete their application; and

    b.   self-identify and/or are identified by the interviewers at the interview as a member of a racial and/or ethnic group that the Silberman School considers to be an "under-represented" minority, such as African-American or Hispanic ("under-represented minorities").

113.   Further, or in the alternative, the Silberman School applies a substantially lower standard of admission to all persons who:

    a.   complete their application; and

    b.   self-identify and/or are identified by the interviewers at the interview as a member of an under-represented minority.

114.   Further, or in the alternative, the Silberman School utilizes racial balancing and/or quotas in its admissions process, to ensure that there is an equal number of students from under-represented minorities and white or other non-minority students in each year. The term "non-minority" is used herein to describe individuals from ethnic groups, such as Jewish or Muslim students, who are not recognized as an under-represented minority by the Silberman School.

115.   Further, or in the alternative, the Silberman School has a dual admissions process and uses skin color/ethnicity as a decisive factor in the admissions process for those applicants who self-identify and/or are identified by the interviewers at the interview as belonging to an under-represented minority.

116.   The source of that information and belief is:

    a.   The Education Doctoral dissertation of Ms. Seals entitled "The Admissions Process: An Evaluation of Access for Minority Students at the Silberman School of Social Work at Hunter College", submitted to St John Fisher College in 2012 ("Seals Dissertation");

    b.   The Factbook 2009 ("FB09"), the Factbook 2010 ("FB10"), the Factbook 2011 ("FB11") and the Factbook 2014 ("FB14") (together, "Factbooks") prepared and written by Hunter College's Office of Institutional Research;

c.     CUNY's Response to a FOIL Request submitted by Ms. Weiss on May 3, 2016 ("FOIL Response").

117.   Based on the above, using 2009 as an example:

a.     1433 people commenced applications for the Silberman School (FB09 p15b);

b.     Of those 1433 applications, 605 were commenced by people who identified as minorities and/or are identified by the interviewers at the interview (Seals Dissertation, Table 4.14) and 828 were commenced by people who were white or otherwise did not identify as minorities;

c.     Of those 1433 people, only 991 successfully completed their applications (FB09 p15b);

d.     Neither CUNY nor Ms. Seals reveal the racial and/or ethnic makeup of the 991 individuals who successfully completed their applications. However, an estimate of the numbers can be derived from the Seals Dissertation:

   i.     In order to successfully complete an application to the Silberman School, applicants were required to meet two deadlines: first, an initial application deadline, and, second, a deadline for submitting supporting documentation;

   ii.    Between 2009 and 2011, on average, only 60% of minority students met the initial application deadline, compared to 80% of white or otherwise non-minority students (Seals Dissertation, Table 4.8);

   iii.   Between 2009 and 2011, on average, only 73.5% of minority students met the deadline for submitting supporting documentation, compared to 81.8% of white or otherwise non-minority students (Seals Dissertation, Table 4.10);

   iv.    Using the average rate at which minorities and white or otherwise non-minority students meet the initial deadline, in 2009 approximately 363 under-represented minority applicants completed their applications (i.e. 60% of 605 who commenced applications) and 662 white and other non-minority students completed their applications (i.e. 80% of 828 who commenced an application) (noting that these numbers would be smaller still if also incorporating the percentages who then fail to meet the submitting documentation deadline);

13

e.   501 applicants were accepted into the Silberman School (see FB09, p15b);

f.   Neither CUNY nor Ms. Seals reveal the racial and/or ethnic makeup of the individuals who were accepted into the Silberman School;

g.   Of the 501 applications which were accepted, 409 students enrolled (see FB09, p15b);

h.   Of the 409 enrolled students, 197 students identified as being African-American, Hispanic or another minority (Seals Dissertation, p76, Table 4.14). Therefore, 212 enrolled students identified as white or otherwise did not identify as being a minority;

i.   Based on the above, as a percentage of enrolled students to persons who commenced (but did not necessarily complete) an application:

    i.   Of 605 self-identified minority persons who commenced an application, only 197 were enrolled. That constitutes 32%.

    ii.   Of 828 white or non-minority persons who commenced an application, only 212 were enrolled. That constitutes only 25%.

j.   Based on the above, as a percentage of enrolled students to persons who successfully completed an application:

    i.   Of approximately 363 self-identified minority persons who successfully completed an application, 197 were enrolled. That constitutes an admission rate of 54%.

    ii.   Of approximately 662 white or non-minority persons who successfully completed an application, 212 were enrolled. That constitutes an admission rate of 32%.

k.   As a consequence of these differing rates of acceptance, CUNY achieved a student body in 2009 that was close to equally divided between minority (197) and non-minority (212) persons.

118.   Repeating the process above for 2010, as a percentage of enrolled students to persons who successfully completed an application:

14

a.      Of approximately 376 (i.e. 60% of 627) self-identified minority persons who successfully completed an application, 184 were enrolled. That constitutes an admission rate of 49%.

b.      Of approximately 802 (i.e. 80% of 1,003) white or non-minority persons who successfully completed an application, 269 were admitted. That constitutes an admission rate of 34%.

119.    Repeating the process above for 2011, as a percentage of enrolled students to persons who successfully completed an application:

a.      Of approximately 366 (i.e. 60% of 610) self-identified minority persons who successfully completed an application, 266 were admitted. That constitutes an admission rate of 73%.

b.      Of approximately 833 (i.e. 80% of 1,041) white or non-minority persons who successfully completed an application, 246 were admitted. That constitutes an admission rate of 30%.

120.    On information and belief, in each year, the number of applicants to the Silberman School who both identify as a minority student and/or are identified by the interviewers at the interview, and also successfully complete the application, is approximately half the number of white or non-minority applicants who successfully complete the application.

121.    Using the average rates of application completion described above at paragraph 86(2)(ii), there were approximately twice as many white or non-minority applicants who completed applications to minority applicants who completed applications in each of 2009, 2010 and 2011:

a.      In 2009, 662 white or non-minority applicants to 363 minority applicants;

b.      In 2010, 802 white or non-minority applicants to 376 minority applicants;

c.      In 2011, 833 white or non-minority applicants to 366 minority applicants.

122.    Despite having approximately half the number of completed applications from self-identified minority students and/or applicants identified as minority students by the interviewers at the interview than the number of completed applications from white and other non-minority students, the Silberman School's admissions process results in a racially balanced class each year:

a.      In 2009, 197 self-identified minority students were enrolled out of 409 students, constituting 48.2% of the class (Seals Dissertation Table 4.14, FB11).

b.      In 2010, 184 minority students were enrolled out of 453 students, constituting 40.6% of the class (Seals Dissertation Table 4.14, FB11).

c.      In 2011, 226 minority students were enrolled out of 472 students, constituting 47.8% of the class (Seals Dissertation Table 4.14, FB11).

123.    As a consequence of this racial balancing and /or quota approach, a much higher proportion of white or non-minority students are refused admission into the MSW program.

124.    The program has a quota/target of 420-430 of minority students to be accepted in the program each Fall semester. (Seals Dissertation, Page 77)

125.    Defendant Seals states that the program was created primarily for minority, male and immigrant students. (Seals Dissertation)

126.    The admissions policy of the Silberman School is not narrowly tailored to take account of an applicant's race and does not have holistic reviews of applicants.


***Failure to Recognize Diversity of Other Applicants***

127.    On information and belief, the Silberman School fails to recognize the ethnic and/or racial identity of Jewish people.

128.    The source of that information and belief is:

a.      The Seals Dissertation;

b.      The application form for the MSW Program, which did not include the option of "Jewish" as an answer to the question about the applicant's ethnicity and/or race.

129.    By failing to recognize the racial identity of Jewish people, the Silberman School fails to give serious and individualized consideration to all the ways an applicant might contribute to a diverse educational environment.

*Lack of Transparency about Race in Admissions at the Silberman School*

130. Each of the FOIL Response, the Factbooks, and the Seals Dissertation, contain different and contradictory figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School.

131. Each of the FOIL Response, the Factbooks, and the Seals Dissertation, omit crucial figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School.

132. The Defendants knew, or ought to have known, that the published figures regarding the racial and/or ethnic composition of the pool of applicants to the Silberman School were incorrect, incomplete and misleading.

## *Discrimination based on Citizenship and National Origin*

133. The Silberman School requires applicants to complete mandatory questions about their citizenship status, national origin, and native language.

134. Ms Seals states in her dissertation that the program was created primarily for minorities, immigrant, and male students.

135. This complaint has already established that the MSW program accepts all or almost all applicants who self-identify as a minority and/or is identified as a minority by the MSW program at the interview.

136. According to the lawsuit filed by Mr. Schneiderman against Trump et. al., more than 78% of DACA recipients (who are immigrants/non-citizens) are from Mexican origin which would place them in the category of under-represented minority, automatically qualifying for a spot in the program regardless of their credentials.

137. The Board Defendants, Defendant Raab, and Defendant Milliken have openly stated their support for DACA recipients ( immigrants/non-citizens) and pledged to continue to provide them with an education, scholarships, internships, etc.

138. Mr. Schneiderman acknowledges in the lawsuit against Trump et. al. that CUNY et. al. provides non-citizens/immigrants with an education, scholarships, internships, etc.

139. Ms. Weiss has not been able to get the same education, scholarships, internships etc. because she is an American born citizen instead of a DACA recipient/non-citizen/immigrant.

### *Discrimination based on Gender*

140. Ms. Seals wrote in her dissertation that the program was created for minorities, immigrants, and male students.

141. Ms. Weiss is a female student and was denied admissions to the MSW based on gender.

### *Defendants' Rejection of Ms. Weiss*

142. The Defendants refused Ms. Weiss admission to the MSW Program for discriminatory reasons, specifically because she is Jewish, an American born citizen, female, has white skin, and the political opinion imputed to her on the basis of her skin color and Jewish identity.

143. Further, or in the alternative, the Defendants refused to consider Ms. Weiss' application for discriminatory reasons, specifically by failing to consider her application on an equal basis with students who identified and/or were identified by the interviewers at the interview as an under-represented minority, such as African-American or Hispanic.

144. Further, or in the alternative, the Defendants refused to consider Ms. Weiss' application for discriminatory reasons, specifically by prioritizing the admissions of non-citizens and/or immigrants (legal and illegal) over American born citizens.

145. Further, or in the alternative, the Defendants refused to consider Ms. Weiss' application for discriminatory reasons, specifically by failing to consider her application on an equal basis with male applicants.

146. The Defendants knew of, or were deliberately indifferent to, to the discrimination perpetuated by CUNY in the admission to the MSW Program at the Silberman School.

### **Freedom of Information Act**

147. Ms. Weiss filed a Freedom of Information Act request with CUNY Hunter College requesting further admissions data.

148. The school failed to respond to the FOIL request.

18

## INJURIES

149.   The Defendants' conduct deprived Ms. Weiss of the ability to compete for admission to the MSW Program on an equal basis with under-represented minority applicants, immigrants/non-citizens, males, and non-Jewish applicants.

150.   The Defendants' conduct deprived Ms. Weiss of the opportunity to attend, and graduate from, the MSW Program.

151.   The Defendants' conduct deprived Ms. Weiss of the $125 fee spent by her to apply to the MSW Program.

152.   As a result of the Defendants' conduct, Ms. Weiss suffered emotional distress.

153.   As a result of the Defendants' misconduct, Ms. Weiss incurred tuition fees and other expenses attendant to attending the Social Work Program at New York University ("NYU"), which is a significantly more expensive program than the MSW Program.

154.   In or about fall 2015, Ms. Weiss attended a single semester of the Social Work Program at New York University ("NYU").

155.   Ms. Weiss was unable to afford the tuition at NYU.

156.   After the first semester, Ms. Weiss dropped out of the NYU Program because she could not afford to continue paying the tuition fees.

157.   As at May 9, 2017, Ms. Weiss still has student loans for the NYU Program of approximately $11,360 including a $609 Grad Plus Loan, according to the website myfedloan.org and the NYU Student Portal.

## CLAIMS

158.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish religion.

159.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish race.

160.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her white skin color.

161.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her imputed political opinion.

162.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her gender.

163.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her citizenship and national origin status.

### First Amendment

164.    By their conduct alleged herein, the Defendants violated Plaintiff's first amendment rights to freedom of religion and 42 U.S.C. §§ 1981 and 1983.

165.    By their conduct alleged herein, the Defendants violated Plaintiff's first amendment right to freedom of speech and 42 U.S.C. §§ 1981 and 1983.

166.    By their conduct alleged herein, the Defendants retaliated against Plaintiff for exercising her first amendment right to freedom of speech and 42 U.S.C. §§ 1981 and 1983.

167.    By their conduct alleged herein, the Defendants violated Plaintiff's first amendment right to freedom from political discrimination and 42 U.S.C. §§ 1981 and 1983.

### Fourteenth Amendment

168.    By their conduct alleged herein, the Defendants violated Plaintiff's fourteenth amendment right to equal protection and 42 U.S.C. §§ 1981 and 1983.

### Title VI

169.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her Jewish race and her white skin color, contrary to Title VI, 42 USC § 2000d et seq.

### Title IX of the Educational Amendments of 1972

170.    By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her gender, contrary to Title IX of the Educational Amendments of 1972 .

### The Immigration Reform and Control Act of 1986 (IRCA), Immigration and Nationality Act (INA)

171.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her citizenship status and national original contrary to The Immigration Reform and Control Act of 1986 (IRCA), Immigration and Nationality Act (INA)

## NYS Human Rights Law

172.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her skin color, race, religion, gender, citizenship status, and national original contrary to NYS Human Rights Law.

173.   Defendant Schneiderman is aiding and abetting CUNY et. al. contrary to NYS Human Rights Law.

## NYC Human Rights Law

174.   By their conduct alleged herein, the Defendants discriminated against the Plaintiff on the basis of her skin color, race, religion, gender, citizenship status, and national original contrary to NYC Human Rights Law.

175.   Defendant Schneiderman is aiding and abetting CUNY et. al. contrary to NYC Human Rights Law.

## 18 U.S.C. § 2

176.   Defendant Schneiderman is aiding and abetting CUNY et. al. contrary to 18 U.S.C. § 2

## RELIEF

The Plaintiff, Ms. Weiss, respectfully requests the following relief:

A.   A declaratory judgment from the Court that Defendants' admissions policies and procedures violate the First Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983; Title VI and Title VII of the Civil Rights Act,  Title IX of the Educational Amendments of 1972, The Immigration Reform and Control Act of 1986 (IRCA), Immigration and Nationality Act (INA), NYS Human Rights Laws, NYC Human Rights Laws, 18 U.S.C. § 2.

B.   A permanent injunction restraining the Defendants from an admission policy based on race, religion, skin color, ethnicity, citizenship, gender, or imputed political opinion and ensuring a holistic review of every applicant;

C.    Ensure that Mr. Schneiderman recuse himself from defending CUNY et. al. and provide the same legal services to American born citizens that is provided to non-citizens/immigrants/DACA recipients. (Ms. Weiss is respectfully requesting legal assistance to bring a class action against CUNY and the other defendants/CUNY employees);

D.    Ensure that Mr. Schneiderman investigate the discriminatory activities of CUNY employees and stop the discriminatory activities;

E.    CUNY should recognize Jews, regardless of their religious affiliation or lack thereoff, as a separate class, include them in affirmative action laws/policies, and provide them with the same protections, services, and benefits, etc that other minorities get at CUNY;

F.    Stop CUNY from conducting interviews at the Master level programs as the interviews are merely a pretext for discrimination;

G.    Award to the Plaintiff of compensatory damages against all Defendants, jointly and severally, including the refund of the application fees and associated costs of applying, the Plaintiff's emotional distress, and the tuition incurred by the Plaintiff in attending NYU;

H.    Award to the Plaintiff of punitive damages against all Defendants on the basis of their conscious wrongdoing;

I.    Injunctive relief admitting Ms. Weiss to the Social Work Program at the Silberman School of Social Work on the basis of her existing application, and with the provision of a tuition waiver and stipend;

J.    All current and future CUNY employees should receive mandatory training to help them understand state and federal laws they have to comply with and to learn how to not discriminate against any applicant or student regardless of their skin color, race, ethnicity, religion, citizenship status, etc;

K.    Award to the Plaintiff of the costs and reasonable attorney's fees arising from this action;

L.    All other relief this Court finds appropriate and just;

M.    An order entering judgment for Ms. Weiss, Plaintiff, against the Defendants.



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

(212) 416-8621

November 21, 2017

*Service addresses
for the defendants.*

**BY EMAIL AND FIRST-CLASS MAIL**

Faigy R. Weiss
P.O. Box 191104
Brooklyn, New York 11219

RE:   Weiss v. City University of New York, et al., 17 Civ. 3557 (VSB)

Dear Ms. Weiss:

The Office of the Attorney General of the State of New York represents defendants The City University of New York ("CUNY"), Jennifer Raab, John Rose, Nireata Seals, and Roberta Nord in the above-referenced action.

At the court conference on November 9, 2017, there was a discussion about your proposal to file an amended complaint to add as defendants Chancellor James Milliken and the individual members of the CUNY Board of Trustees.  The Court gave you leave until December 11, 2017 to file the amended complaint.

I write to confirm that Chancellor Milliken and the CUNY Board of Trustees agree to be served with the amended complaint by first-class mail on CUNY's Office of General Counsel and Vice Chancellor for Legal Affairs.  Please mail individual summons for each of the added defendants and one (1) copy of the amended complaint to:

City University of New York
Office of the General Counsel and
Vice Chancellor for Legal Affairs
205 East 42nd Street
New York, NY 10017

ATTN: Hilary Klein

Faigy R. Weiss
November 21, 2017

You should also mail a copy of the amended complaint to me as attorney for the defendants who have already appeared in this action.

If you have any further questions regarding service of the amended complaint, please let me know.

Very truly yours,

Steven L. Banks
Assistant Attorney General

 Gmail

---

**Weiss v. CUNY**

---

**Banks, Steven** <Steven.Banks@ag.ny.gov>Wed, Apr 4, 2018 at 3:05 PM
To: rachel w <1rachelw@gmail.com>

You should serve the AG by delivering a copy of the amended complaint and a summons to our Managing Clerk's Office (open 9-5 M-F).  We are relocating our offices this month.  If you attempt service before next Friday April 13th, please bring the summons and complaint to the Managing Clerk's Office at 120 Broadway on the 24th Floor.  If you attempt service after April 13th, please go the Managing Clerk's Office at 28 Liberty Plaza.  At the moment, I do not have the room number at 28 Liberty Plaza but there should be a visitors' desk in the lobby that can assist you.

Thanks.