UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
              :

FAIGY RACHEL WEISS,          :
              :

            Plaintiff,    :
              :

        - against -      :
              :

CITY UNIVERSITY OF NEW YORK, et al., :
              :

         Defendants.  :
              :

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __3/18/2019__

17-CV-3557 (VSB)

**OPINION & ORDER**

Appearances:

Faigy Rachel Weiss
Brooklyn, NY
*Pro se Plaintiff*

Erin Patricia Kandel
Steven Leon Banks
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Faigy Rachel Weiss brings this action against the City University of New York

("CUNY"), the members of the CUNY Board of Trustees, Hunter College, the Silberman School

of Social Work at Hunter College (the "Silberman School"), James Milliken, Nireata D. Seals,

John Rose, Jennifer Raab, Roberta Nord, and the current New York Attorney General in her

official capacity and former New York Attorney General Eric T. Schneiderman in his individual

capacity, asserting myriad claims stemming from the denial of her application for admission to

the Masters of Social Work Program (the "MSW Program") at the Silberman School. Before me

is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim, respectively.  For the reasons stated herein, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    Background[1]

On February 1, 2015, Plaintiff—who was raised in the Satmar community of New York, a Hasidic Jewish Community—submitted an application for admission to the MSW Program. (Am. Compl. ¶¶ 58–59, 74.)[2]  In response to optional questions in the application regarding race and ethnicity, Plaintiff did not identify her race or ethnicity.  (*Id.* ¶¶ 75–76.)  However, in her personal statement submitted as part of the application, Plaintiff identified herself as Jewish and "described her upbringing in the Satmar community."  (*Id.* ¶ 79.)  Elsewhere in her application, Plaintiff disclosed that she is a United States citizen and that her native language is Yiddish.  (*Id.* ¶ 78.)

On March 23, 2015, the Silberman School invited Plaintiff to attend a group admissions interview.  (*Id.* ¶ 81.)  On April 7, 2015, Plaintiff attended the interview, along with seven other applicants "of different races and ethnicities, including African-American, Hispanic, Asian and white-skinned people."  (*Id.* ¶¶ 83–84.)  During the interview, an unidentified interviewer allegedly asked Plaintiff two questions that were not asked of the other applicants.  (*Id.* ¶ 87.)  The interviewer asked Plaintiff, "Why don't you apply to the special education school?" and "How would you handle people who are different to you?"  (*Id.* ¶¶ 88–89.)

On April 28, 2015, Plaintiff was notified by letter that her application to the MSW

---

[1] I assume Plaintiff's allegations contained in the Amended Complaint, (Doc. 31), to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed on April 12, 2018.  (Doc. 31.)

Program was denied. (*Id.* ¶ 93.) The letter did not include a reason for the denial. (*Id.*) Based on an email sent prior to the denial letter by Defendant Seals, the Director of Enrollment Services for the Silberman School ("Director Seals"), Plaintiff claims that Director Seals made the decision to deny Plaintiff's application. (*Id.* ¶¶ 31, 90.)

After receiving notification of the denial of her application, Plaintiff complained to certain CUNY officials about alleged discrimination in the admissions process. On December 7, 2015, Plaintiff emailed Defendant Rose, the Dean for Diversity and Compliance and Title IX Coordinator at Hunter College ("Dean Rose"), asserting that the MSW Program had discriminated against her on the basis of her religion and an unspecified disability. (*Id.* ¶¶ 37, 94.) Plaintiff subsequently met with Dean Rose on three separate occasions, on December 23, 2015, January 27, 2016, and February 1, 2016. (*Id.* ¶¶ 95, 97, 101.) During the second meeting, Dean Rose purportedly told Plaintiff that (1) he "did not think the Silberman School had discriminated against [Plaintiff] on the basis of religion"; (2) "[t]he Silberman School conducted the group admission interviews to weed out conservatives, because Trumps and Cruzes can't be social workers"; (3) "Jews from religious backgrounds are too conservative to be social workers"; (4) "[t]he interviewer had asked [Plaintiff] additional questions to 'help' the [Plaintiff]"; and (5) Plaintiff "could take classes as a non-matriculating student, so that the Silberman School could assess how [she] would 'fit in'". (*Id.* ¶ 98.)

On March 2, 2016, Defendant Raab, the President of Hunter College ("President Raab"), notified Plaintiff by letter that Hunter College denied Plaintiff's allegations of discriminatory treatment. (*Id.* ¶ 106.) On April 6, 2016, Plaintiff appealed President Raab's decision to the Office of the CUNY Chancellor, who at all relevant times was Defendant Milliken. (*Id.* ¶ 107.) On April 28, 2016, Defendant Nord, the University Director of Student Advocacy ("Director

Nord"), sent Plaintiff a letter denying the claim of discriminatory treatment, stating that "the group interview 'follows uniform guidelines which have been in place for some time and were not altered or adjusted prior to your interview.'" (*Id.* ¶¶ 46, 108–11.) Director Nord's letter "reiterated the offer to [Plaintiff] that she could take classes as a non-matriculating student for free." (*Id.* ¶ 111.)

## II. <u>Procedural History</u>

Plaintiff commenced this action on May 11, 2017 by filing a complaint and request to proceed in forma pauperis. (Docs. 1, 2.) On June 6, 2017, I granted Plaintiff's request to proceed in forma pauperis but, pursuant to a review of the initial complaint under 28 U.S.C. § 1915(e)(2)(B), dismissed on the basis of Eleventh Amendment immunity Plaintiff's (1) § 1981 and § 1983 claims asserted against CUNY, the CUNY Board of Trustees, Hunter College, and the Silberman School, and (2) the § 1981 and § 1983 claims for money damages asserted against Defendants Rose, Raab, Seals, and Nord in their official capacities. (Doc. 5.) I also dismissed Plaintiff's Title VI claims against Defendants Rose, Raab, Seals, and Nord. (*Id.*)

In response to Defendants' proposed motion to dismiss the remaining claims, and following discussions with the parties during a pre-motion conference, I instructed Plaintiff to file her Amended Complaint by December 11, 2017. (Doc. 24.) On December 8, 2017, Plaintiff filed a letter seeking an extension of the deadline to file her Amended Complaint until February 9, 2018, (Doc. 25), which I granted, (Doc. 26). On February 9, 2018, Plaintiff filed a letter seeking a second extension of the deadline to file her Amended Complaint, until April 13, 2018, (Doc. 27), which I granted, (Doc. 29). On April 13, 2018, Plaintiff filed the Amended Complaint. (Doc. 31.)

On May 3, 2018, I entered an order setting a briefing schedule for Defendants'

anticipated motion to dismiss, directing Defendants to file their motion by June 19, 2018, Plaintiff to file her opposition by August 20, 2018, and Defendants to file any reply by September 11, 2018.  (Doc. 33.)  On June 19, 2018, Defendants filed their motion to dismiss and documents in support.  (Docs. 36–38.)  On June 27, 2018, I entered an Order of Service directing the U.S. Marshals Service to serve the newly-named Defendants—James Milliken, the CUNY Board of Trustees, and Eric T. Schneiderman—in Plaintiff's Amended Complaint.  (Doc. 41.) On August 13, 2018, the newly-named Defendants filed a notice of motion indicating that they joined in the motion to dismiss filed by the original Defendants on June 19.  (Doc. 47.)  On August 20, 2018, Plaintiff requested an extension of time, until October 19, to file her opposition, (Doc. 50), which I granted, (Doc. 51).  On October 17, 2018, Plaintiff requested a second extension of time to file her opposition, (Doc. 54), to which Defendants objected, (Doc. 55).  In light of the multiple extensions previously granted, I denied Plaintiff's request for a 60-day extension of time and directed Plaintiff to file her opposition by November 16, 2018.  (Doc. 56.)  On November 15, 2018, Plaintiff filed her opposition.  (Doc. 57.)  On December 7, 2018, Defendants filed their reply and a declaration in support.  (Docs. 60–61.)

### III.  <u>Legal Standards</u>

#### A.  *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that they have standing to sue."  *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order) (internal quotation marks omitted).  In

considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895–96 (2d Cir. 2012) (summary order). A plaintiff, as the party asserting subject matter jurisdiction, bears the burden of establishing standing as the proper party to bring the lawsuit. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc*., 697 F.3d 59, 65 (2d Cir. 2012). When a defendant "moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993) (internal quotation marks omitted).

## B.     *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### C. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Bennett v. City of New York*, 425 F. App'x 79, 80 (2d Cir 2011) (summary order) (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

### IV. <u>Discussion</u>

Plaintiff claims that Defendants refused her admission to the MSW Program because she is Jewish, an American born citizen, female, has white skin, and based on the political opinion imputed to her on the basis of her skin color and Jewish identify. (Am. Compl. ¶ 142.) As a result of the allegedly discriminatory denial of her admission to the MSW Program, Plaintiff

brings suit under 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983") alleging violations

of the First and Fourteenth Amendments to the United States Constitution, Title IV, Title VI, and

Title VII of the Civil Rights Act of 1964 ("Title IV," "Title VI," and "Title VII," respectively),

42 U.S.C. §§ 2000d, et seq., Title IX of the Educational Amendments of 1972 ("Title IX"), 20

U.S.C. §§ 1681, et seq., the Immigration Reform and Control Act of 1986 ("IRCA") and the

Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq., the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, et seq., the New York City Human Rights

Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, et seq., and 18 U.S.C. § 2.[3]  Defendants

move to dismiss all of Plaintiff's claims for lack of subject matter jurisdiction and failure to state

a claim.  I address these arguments below.

### A.    *CUNY Defendants*

As a threshold matter, Defendants contend that the claims asserted against Hunter

College, the Silberman School, and the members of the CUNY Board of Trustees in their official

capacities have no legal basis and should be treated solely as claims against CUNY.  Plaintiff

does not dispute this point.

It is well-established that CUNY senior colleges, including Hunter College, have no

separate legal existence apart from CUNY and that claims asserted against senior colleges are

treated as claims against CUNY.  *See, e.g.*, *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 (2d

Cir. 2004), *cert. denied*, 543 U.S. 987 (2004); *Barry v. City Univ. of N.Y.*, 700 F. Supp. 2d 447,

449 n.1 (S.D.N.Y. 2010) (treating claims asserted against Hunter College as claims against

CUNY); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 316 n.1 (S.D.N.Y. 2007) (same).

---

[3] Each claim appears to be asserted against every Defendant other than the current and former Attorneys General, and the claim brought under 18 U.S.C. § 2 seems to apply only to the Attorneys General.

Similarly, the CUNY Board of Trustees is the governing body of CUNY, *see* N.Y. Educ. Law § 6204, with no separate legal existence apart from CUNY, *cf. Kohlhausen v. SUNY Rockland Cmty. Coll.,* No. 7:10-CV-3168, 2011 WL 1404934, at *7–8 (S.D.N.Y. Feb. 9, 2011), *abrogated on other grounds*, *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015).

Accordingly, the claims asserted against Hunter College, the Silberman School, and the members of the CUNY Board of Trustees in their official capacities are dismissed. However, the related allegations will be treated as if asserted against CUNY.

### B.    *The Eleventh Amendment*

Defendants assert that the Eleventh Amendment to the United States Constitution divests the Court of jurisdiction over Plaintiff's § 1981, § 1983, NYSHRL, and NYCHRL claims against CUNY and against Defendants Rose, Raab, Milliken, Seals, and Nord in their official capacities. I agree.

As previously noted, I reviewed Plaintiff's initial complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and, on the basis of New York State's Eleventh Amendment immunity, dismissed Plaintiff's damages claims brought under § 1981 and § 1983 against the individual defendants named therein in their official capacities, and Plaintiff's claims brought under § 1981 and § 1983 against CUNY. (*See* Doc. 5.) Plaintiff's attempt to resurrect these claims by including them in her Amended Complaint is futile.

"The Eleventh Amendment bars federal jurisdiction over suits against nonconsenting States, and so whether or not sovereign immunity bars a claim is properly decided under a Rule 12(b)(1) motion." *Goonewardena*, 475 F. Supp. 2d at 321 (internal quotation marks omitted). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh

Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks omitted). This includes claims for monetary damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted). CUNY's senior colleges are "arms of the state" for Eleventh Amendment purposes. *See Clissuras*, 359 F.3d at 81–83 (finding plaintiffs' suits against CUNY to be "equivalent to suits against the State of New York and . . . therefore barred by the Eleventh Amendment"); *Martinez v. City Univ. of N.Y.*, No. 07 Civ. 6453 (GBD), 2010 WL 987029, at *2 (S.D.N.Y. Mar. 10, 2010) (applying *Clissuras* and holding that CUNY Graduate Center is an "arm[] of the state" for Eleventh Amendment purposes). In addition, "[t]he Eleventh Amendment bars a damages action in federal court against . . . state . . . officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).

Congress has not abrogated New York's immunity as to claims under § 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), or § 1981, *see Wang v. Office of Prof'l Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (summary order); *Cooper v. N.Y. State Dep't of Mental Health*, No. 01 CIV. 0943 AGS, 2001 WL 456348, at *2 (S.D.N.Y. May 1, 2001), nor has New York waived its Eleventh Amendment immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The Eleventh Amendment similarly bars Plaintiff's newly asserted claims under the

NYSHRL and the NYCHRL.  Congress has not abrogated state sovereign immunity for pendent state law claims.  *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002). Moreover, New York State has not consented to suit in federal court for claims brought under the NYSHRL or the NYCHRL.  *See, e.g.*, *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015); *Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 116 (2d Cir. 2015); *see also Henry-Offor v. City Univ. of N.Y.*, No. 11 Civ. 4695(NRB), 2012 WL 2317540, at *5 (S.D.N.Y. June 15, 2012) (dismissing NYCHRL claim against CUNY on the basis of the Eleventh Amendment).[4]

Accordingly, the Eleventh Amendment divests me of subject matter jurisdiction over Plaintiff's (1) § 1981, § 1983, NYSHRL, and NYCHRL claims against CUNY, and (2) § 1981 and § 1983 damages claims and NYSHRL and NYCHRL claims against Defendants Rose, Raab, Milliken, Seals, and Nord in their official capacities.  *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

**C.     *Section 1983 Claims***

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ."  42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege that defendants violated

---

[4] Although Plaintiff argues in her opposition that the Eleventh Amendment does not bar her claims under the NYSHRL or the NYCHRL on the grounds that "courts have ruled that NY[S]HRL or NYCHRL aiding and abetting claims can survive," (Pl.'s Opp. 4), an "aiding and abetting" theory of liability applies to claims against persons in an individual capacity and does not diminish the State's Eleventh Amendment immunity to claims against state agencies or officials in their official capacities.  The cases cited by Plaintiff are not to the contrary.  *See, e.g.*, *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015); *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *Kantha v. Blue*, 262 F. Supp. 2d 90, 109 (S.D.N.Y. 2003) ("[S]tate's sovereign immunity prevents [plaintiff] from bringing suit [under the NYSHRL] against the Division as her employer.").  "Pl.'s Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss, filed on November 15, 2018.  (Doc. 57.)

plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). Section 1983 does not establish substantive rights, but provides a means of redress for the deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Defendants do not contest and therefore concede, *see Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11 Civ. 3327(ER), 2013 WL 417406, at *13 (S.D.N.Y. Feb. 4, 2013), that Defendants Rose, Raab, Milliken, Seal, and Nord constitute persons acting "under the color of state law," but contend that Plaintiff's § 1983 claims should be dismissed as to those Defendants in their individual capacities because the Amended Complaint fails to allege that they had personal involvement in the decision to deny Plaintiff's admission to the MSW Program. (Defs.' Mem. 27–28.)[5] Although an individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996), personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Here with regard to Defendants Rose, Raab, Milliken, Seal, and Nord—as well as the members of the CUNY Board of Trustees acting

---

[5] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on June 19, 2018. (Doc. 38.)

in their individual capacities—Plaintiff alleges that each of these individuals had the ability to implement, reform, and/or oversee the admissions process. (*See generally* Am. Compl. ¶¶ 17–101.) Although discovery may not support Plaintiff's allegations, I find, for purposes of this motion, that Plaintiff has proffered sufficient facts demonstrating the personal involvement of Defendants Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of Trustees.

As outlined below, Plaintiff's § 1983 claims are premised on alleged violations of the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.[6]

### 1. Fourteenth Amendment

Plaintiff appears to assert equal protection discrimination claims based on race, national origin, and/or skin color, gender, and religious belief. I address each of these claims below.

#### a. Discrimination Based on Race, National Origin, and Skin Color

The Equal Protection Clause of the Fourteenth Amendment prohibits intentional discrimination by state actors based on race, national origin, and skin color. "It is well established that proof of racially discriminatory intent or purpose is required to show violation of the Equal Protection Clause." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (internal quotation marks omitted). "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *United States v. City of N.Y.*, 717 F.3d 72, 93 (2d Cir. 2013) (internal quotation marks

---

[6] Plaintiff's § 1983 claims also encompass all alleged violations of her rights under § 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (noting that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *Westbrook v. City Univ. of N.Y.*, 591 F. Supp. 2d 207, 223 (E.D.N.Y. 2008) (construing § 1981 claims against CUNY officials as being brought pursuant to § 1983). Nevertheless, for ease of reference, I discuss Plaintiff's remaining claims under § 1981 in conjunction with her claims under Title VI. *See infra* Part IV.D.

omitted).

The Amended Complaint plausibly connects the rejection of Plaintiff's application to the MSW Program to a discriminatory animus based on race, national origin, and/or skin color. Plaintiff alleges, inter alia, that Dean Rose admitted knowledge of the factors weighed by CUNY in making admissions decisions when he told Plaintiff in January 2016, after Plaintiff's application had been denied, that "[t]he Silberman School conducted the group admissions interviews to weed out conservatives, because Trumps and Cruzes can't be social workers" and that "Jews from religious backgrounds are too conservative to be social workers." (Am. Compl. ¶ 98.)[7] Assuming, as I must at this stage of the litigation, that Dean Rose made these comments and that they are true, Plaintiff has sufficiently claimed that Defendants, all with the alleged ability to control and influence the MSW Program's admissions procedures and policies, either directly established an unconstitutional admissions process, or allowed its continuance.

Defendants contend that the statements made by Dean Rose are too vague and removed from the admissions decision to create an inference of discrimination. In support of their position, Defendants rely on a single case, (*see* Defs.' Mem. 16 (citing *Pierce v. Woldenburg*, No. 11-CV-4248 (SJF)(AKT), 2012 WL 3260316 (E.D.N.Y. Aug. 7, 2012)), which I find to be unpersuasive. In *Pierce*, the court dismissed certain Title VI claims brought by a white, non-Jewish male who was denied admission to Hofstra University Medical School, notwithstanding allegations that "top Hofstra officials" actively supported Jewish organizations and that "an advisor informed [plaintiff] that medical schools are only looking for women and people of color." 2012 WL 3260316, at *1, 3 (internal quotation marks omitted). Unlike the present case,

---

[7] Defendants do not dispute that discrimination based on an individual's Jewish ethnicity or identity constitutes discrimination based on race, national origin, and/or skin color for the purposes of this argument. (*See* Defs.' Mem. 13–15.)

the unidentified advisor in *Pierce* was not a party to the action nor was it alleged that the advisor

held an official position within the university. Moreover, the purported statement made by the

advisor in *Pierce* related to medical schools generally rather than to the specific institution to

which plaintiff had applied. As such, *Pierce* is inapposite.

Accordingly, I find that the alleged statements made by Dean Rose sufficiently

demonstrate a racially discriminatory intent or purpose in the admissions process to support a

claim for an Equal Protection Clause violation based on race, national origin, and/or skin color

against Defendants Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of

Trustees.[8]

### b. Discrimination Based on Religion

"To state a religion-based claim under the Equal Protection Clause, plaintiffs must

plausibly allege that a government actor intentionally discriminated against them on the basis of

their religion." *Kiryas Joel Alliance*, 495 F. App'x at 189. Plaintiff again offers Dean Rose's

alleged comments that "Jews from religious backgrounds are too conservative to be social

workers" as evidence of discriminatory animus and intent.

For the same reasons outlined above with respect to Plaintiff's claims of discrimination

based on Plaintiff's Jewish ethnicity and/or race, Defendants' motion to dismiss Plaintiff's equal

protection claim based on religion is denied as to Defendants Rose, Raab, Milliken, Seal, Nord

and members of the CUNY Board of Trustees. *See supra* Part IV.C.1.a.

---

[8] While Plaintiff proffers other allegations connecting her rejection to the MSW Program to a discriminatory animus, I do not address them here since I find the allegations relating to the comments made by Dean Rose to be sufficient to state a claim.

## c. Discrimination Based on Gender

To state a claim for an equal protection violation based on gender, a plaintiff must show that the defendant discriminated against her, that the discrimination was intentional, and that discrimination was a motivating factor for the defendant's actions. *See Chandrapaul v. City Univ. of N.Y.*, No. 14 Civ. 790 (AMD) (CLP), 2016 WL 1611468, at *17 (E.D.N.Y. Apr. 20, 2016); *see also Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y. 2002), *aff'd*, 41 F. App'x 521 (2d Cir. 2002).

In support of her gender discrimination claims, Plaintiff relies exclusively on a doctoral dissertation authored by Director Seals, entitled "The Admissions Process: An Evaluation of Access for Minority Students at the Silberman School of Social Work at Hunter College" (the "Dissertation"). Specifically, Plaintiff claims that "Ms. Seals wrote in her dissertation that the [MSW Program] was created for minorities, immigrants, and male students." (Am. Compl. ¶ 140.) As an initial matter, this allegation on its own cannot support a claim of gender discrimination. The fact that the MSW Program may have been created, in part, for male students does not support the assertion that the MSW Program at the time Plaintiff applied aimed to benefit males and specifically did so with regard to her application. In any event, Plaintiff does not identify any statements in the Dissertation that support this claim, and my review of the Dissertation does not reveal support for this contention.[9] In drafting the Dissertation, Director Seals' purpose "was to evaluate minority access throughout the admissions processes at the

---

[9] "In reviewing a motion to dismiss, a court may consider . . . documents that are incorporated by reference into the complaint." *Done v. HSBC Bank USA*, No. 09-CV-4878 JFB ARL, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (explaining that where plaintiff's complaint referenced certain mortgage agreements, "the Mortgage Agreement and Mortgage Note were incorporated by reference in the complaint, even though they were not attached to the complaint" but were submitted in support of defendant's motion to dismiss)*; see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Accordingly, I may properly consider the Dissertation, which Plaintiff cites to and references at length in the Amended Complaint, and which Defendants have attached to their motion papers.

Silberman School" and "determine[] what factors or barriers prevent minority applicant[s] from applying, submitting, and completing their applications to the School of Social Work." (Doc. 37-4 at iv.) To explore these issues, Director Seals reviewed admissions data for the Silberman School and sent questionnaires to a group of self-identified minority applications from fall 2009 to fall 2011. (*See id.*) Her research identified certain problem areas that might dissuade a minority applicant from applying to the school or accepting an admissions offer, and proposed recommendations to increase the number of minority applicants. (*See generally id.*) Furthermore, contrary to Plaintiff's contention, I find no statement in the Dissertation indicating that the Silberman School was "created" for "male students." Rather, the Dissertation mentions gender only insomuch as it notes that for the three-year period analyzed by Director Seals, 83% of the applications to the school were female. (*See id.* at 49.)

Accordingly, Plaintiff has failed to state a discrimination claim based on gender in violation of the Equal Protection Clause and this claim is dismissed.[10]

### 2. First Amendment

Plaintiff alleges that Defendants' actions violated her First Amendment rights to "freedom of religion," and that Defendants retaliated against her "for exercising her [F]irst [A]mendment right to freedom of speech." (Am. Compl. ¶¶ 164–67.)

---

[10] Title IX similarly proscribes discrimination "on the basis of sex" by federally funded educational institutions. *See* 20 U.S.C. § 1681(a). "In order to state a claim for discrimination under . . . Title IX, the plaintiff must show that the defendant discriminated against her, that the discrimination was intentional, and that the discrimination was a motivating factor for the defendant's actions." *Chandrapaul*, 2016 WL 1611468, at *17. For the reasons outlined above with respect to Plaintiff's equal protection claim, *see supra*, Plaintiff's Title IX claims based on gender discrimination are also dismissed. *See Wolff v. State Univ. of N.Y. Coll. at Cortland*, No. 1:13-CV-1397 (BKS/CFH), 2016 WL 9022503, at *23 (N.D.N.Y. Feb. 5, 2016), *aff'd*, 678 F. App'x 4 (2d Cir. 2017).

### a.  Freedom of Religion

The First Amendment provides that "Congress shall make no law respecting an establishment of religion."  The Establishment Clause prohibits "excessive government entanglement with religion," *Rweyemamu v. Cote*, 520 F.3d 198, 208 (2d Cir. 2008) (internal quotation marks omitted), and mandates that "government programs remain neutral toward religion," *Muhammad v. City of N.Y. Dep't of Corr.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995). Furthermore, "the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general."  *Id.* at 197 (internal quotation marks omitted).

Here, Plaintiff alleges that applicants to the MSW Program are evaluated based on their religious upbringing and/or beliefs and, specifically, that the school disfavors "Jews from religious backgrounds."  (Am. Compl. ¶ 98.)  Contrary to Defendants' contention that the MSW Program is indifferent to applicants' religious beliefs, (Defs.' Mem. 23), Plaintiff plainly claims that admissions interviews were held, at least in part, to discern and weed out applicants based on religion.

Construing Plaintiff's allegations liberally, as is required at this stage, I find that the Amended Complaint alleges an Establishment Clause claim and Defendants' motion to dismiss the claim is thus denied, *see Loccenitt v. City of N.Y.*, No. 12 Civ. 948(LTS)(MHD), 2013 WL 1091313, at *4 (S.D.N.Y. Mar. 15, 2013).

### b.  Retaliation

"A plaintiff asserting a First Amendment retaliation claim must establish that:  (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech."  *Matthews v. City of N.Y.*, 779 F.3d 167, 172 (2d Cir. 2015) (internal

quotation marks omitted).  Here, dismissal is required because, as a matter of law, speech made in connection with a college admissions application is not protected under the First Amendment.

First Amendment retaliation claims are commonly brought in the context of public employment where protection under the First Amendment only extends to speech made by the employee as "a citizen on a matter of public concern."  *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  Although the Second Circuit does not appear to have considered the application of a First Amendment retaliation claim in the realm of university admissions, the Fourth Circuit has found that "the Free Speech Clause does not protect speech expressed in [a college] admissions interview from admissions consequences in a competitive process."  *Buxton v. Kurtinitis*, 862 F.3d 423, 431 (4th Cir. 2017).  Relying on *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), the *Buxton* court concluded that:

> In the present case, there are a finite number of available slots open in the [academic] program and the [college] utilizes an interview process in order to narrow down the best applicants for those slots.  As is inherent in any competitive interview process, this narrowing requires distinctions to be made based on the speech—including the content and viewpoint—of the interviewee.  Indeed, for an interview process to have any efficacy at all, distinctions based on the content, and even the viewpoint, of the interviewee's speech during the interview is required.

*Buxton*, 862 F.3d at 430.  As such, the court held, in evaluating a First Amendment retaliation claim, that "the Free Speech Clause has no application in the context of speech expressed in a competitive interview.  This is not to say that government discrimination in an interview room is immune from constitutional protections, only that the proper review is not under the Free Speech Clause."  *Id.*  I find the reasoning of the Fourth Circuit to be sound and see no reason to deviate from it even though the decision is not binding on me.

For these reasons, Plaintiff's First Amendment retaliation claims are dismissed.

**D.** *Plaintiff's Claims of Discrimination Based on Race, National Origin, and Skin Color Under Title VI and § 1981*

Plaintiff advances claims of race, national origin, and/or color discrimination under Title VI and § 1981.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a Title VI race discrimination claim, a plaintiff must plausibly allege "that the defendant discriminated against [her] on the basis of race, that that discrimination was intentional, and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).[11] Furthermore, as articulated in my initial order of service, (Doc. 5), it is well established that Title VI claims "cannot be asserted against an individual defendant because the individual is not the recipient of federal funding." *Goonewardena*, 475 F. Supp. 2d at 328; *see also Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) ("The proper defendant in [a Title VI] case is the entity that receives federal financial assistance, not an individual.").

Section 1981 provides, in pertinent part, that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." To state a claim under § 1981, a plaintiff must allege facts showing that (1) the plaintiff is a member of a racial minority; (2) the defendant intentionally discriminated on the basis of race; and (3) the discrimination concerned one of the statute's enumerated activities. *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). It has been recognized that admission to an

---

[11] Religious views are not a protected category under Title VI. *Pierce v. Woldenburg*, No. 11-CV-4248 (SJF)(AKT), 2012 WL 3260316, at *3 n.6 (E.D.N.Y. Aug. 7, 2012). To the extent Plaintiff alleges discrimination under Title VI based on religious beliefs, that claim is dismissed.

educational program is sufficiently contractual in nature to fall within the purview of § 1981. *See Runyon v. McCrary*, 427 U.S. 160, 172 (1976).[12]

The substantive elements of these claims are nearly identical to each other, and to parallel claims under the Equal Protection Clause. *See, e.g.*, *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) (summary order); *see also Okolie v. Paikoff*, 589 F. Supp. 2d 204, 217 (E.D.N.Y. 2008). Accordingly, for the reasons outlined above with respect to Plaintiff's equal protection claim, *see supra* Part IV.C.1.a, I find that Plaintiff has adequately stated a claim under Title VI against CUNY and under § 1981 against Defendants Rose, Raab, Milliken, Seals, Nord, and the members of the CUNY Board of Trustees. However, Plaintiff's Title VI claims asserted against Defendants Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of Trustees must be dismissed because they are not recipients of federal funds. *Goonewardena*, 475 F. Supp. 2d at 328; *see also Kelly*, 375 F. Supp. 2d at 208.

### E.   *Plaintiff's Claims of Discrimination Under Title IV, Title VII, the NYSHRL, and the NYCHRL*

Plaintiff further asserts that Defendants' denial of her admission to the MSW Program contravenes Title IV, Title VII, the NYSHRL, and the NYCHRL. Defendants assert that the protections of these statutes do not apply to admissions decisions made by a public university. To the extent these claims have not already been dismissed, *see supra*, I address them below.

### 1.  Title IV

The Amended Complaint makes one passing reference to Title IV. (*See* Am. Comp. ¶ 4.) Title IV was enacted "to encourage the desegregation of public schools and authorizes the [U.S.] Secretary of Education to render 'technical assistance' in the 'preparation, adoption, and

---

[12] Defendants accept for purposes of this motion that Jewish ethnicity may be considered a "race" for purposes of Title VI and § 1981. (*See* Defs.' Mem. 14.)

implementation of plans for the desegregation of public schools.'" *Brown v. Tex. State Univ.*

*Sys. Bd. of Regents*, No A-13-CA-483-SS, 2013 WL 6532025, at *5 (W.D. Tex. Dec. 12, 2013).

The few courts that have evaluated a claim under Title IV have generally found that Title IV

does not expressly create a private cause of action. *See, e.g.*, *id.* (stating that a Title IV action

"may only be initiated by the Attorney General after receipt of a complaint and other procedural

standards are satisfied" and that "Title IV does not . . . create a private cause of action"). Even

assuming that a private cause of action exists under Title IV, the Amended Complaint does not

concern a public school district's purported failure to desegregate or otherwise concern activities

that fall within the ambit of Title IV. *See Samuel v. Excelsior Coll.*, No. 1:14-CV-456

(DNH/RFT), 2014 WL 2105839, at *5 (N.D.N.Y. May 20, 2014) (dismissing Title IV claim

brought by student with regard to a failing grade where there was no indication the case

concerned a failure to desegregate).

Accordingly, to the extent Plaintiff asserts a claim under Title IV, it must be dismissed.

### 2. Title VII, the NYSHRL, and the NYCHRL

The statutory protections set forth in Title VII, the NYSHRL, and the NYCHRL relate to

discrimination in employment and/or housing and do not apply to the academic admissions

process.

Title VII relates to "unlawful employment practice[s]," 42 U.S.C. § 2000e-2(a), and does

not afford protection to students alleging discrimination in their education where the claimed

discrimination concerned the individual's role as a student, *see Diaz v. City Univ. of N.Y.*, No. 13

Cv 2038(PAC)(MHD), 2014 WL 10417871, at *16–17 (S.D.N.Y. Nov. 10, 2014) (dismissing

student's Title VII claim for alleged discriminatory treatment).

Similarly, the NYSHRL proscribes various forms of discrimination in employment,

housing, and "places of public accommodation." N.Y. Exec. Law § 296. However, the statute expressly excludes from the definition of "place of public accommodation" all "academies, colleges and universities, extension courses, and all educational institutions under the supervision of the regents of the state of New York" and any "college, university, professional school, extension course or other education facility, supported in whole or in part by public funds or by contributions solicited from the general public." *Id.* § 292(9). While the NYSHRL prohibits discriminatory practices by "an education corporation or association," N.Y. Exec. Law § 296(4), that provision applies only to private, non-sectarian education corporations and not public universities or colleges, *see N. Syracuse Cent. Sch. Dist. v. N.Y. State Div. of Human Rights*, 19 N.Y.3d 481, 494–95 (2012); *Garcia v. City Univ. of N.Y.*, 136 A.D.3d 577, 578 (1st Dep't 2016) (dismissing NYSHRL claim against CUNY on the grounds that "[d]efendants are public educational institutions, and therefore are not 'education corporations or associations' under" N.Y. Exec. § 296(4) (internal quotation marks omitted)). Similarly, the NYCHRL expressly excludes from its domain "matters that are strictly educational or pedagogic in nature." N.Y.C. Admin. Code § 8-107(4)(f).

Plaintiff attempts to avoid the educational carve-outs to these statutes by arguing that CUNY should be treated as an employment agency because "the program requires students to complete internships at various agencies throughout the city during the duration of the program and is therefore [a] de facto temporary employment agency that hires students to do internships at various agencies across the city." (Pl.'s Opp. 4.) However, Plaintiff's claims do not arise from any actual or potential activities she may have engaged in during an internship in connection with the MSW Program. Instead, Plaintiff's claims relate solely to her application to the MSW Program and her eligibility to enroll in a graduate-level program in social work. As

such, Plaintiff cannot bring suit based on alleged unlawful employment practices. *See Diaz*, 2014 WL 10417871, at* 16 (finding that university's refusal to approve plaintiff's dissertation topic or assign dissertation advisor "are all matters relating solely to his efforts as a student to obtain an advanced degree and hence are not covered by the protections of Title VII or the ADEA (or indeed by the cited State and City Human Rights Laws)"); *Budden v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 725–26 (N.D.N.Y. 2001) (dismissing Title VII claim "since that claim does not allege discrimination in terms or conditions of [plaintiff's] employment but rather discrimination against him in his role as a student").

Accordingly, Plaintiff cannot assert causes of action for discrimination under Title VII, the NYSHRL, or the NYSHRL and such claims must be dismissed.[13]

### F.    *INA and IRCA Claims*

Plaintiff asserts claims of citizenship and national origin discrimination under the INA and IRCA. Congress enacted the INA and IRCA as a "comprehensive federal statutory scheme for regulation of immigration and naturalization and set the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (internal quotation marks omitted). The statutes make it unlawful to, among other things, employ "unauthorized aliens," 8 U.S.C. § 1324a, and prohibit citizenship status and national origin discrimination with respect to hiring and firing employees, *see* 8 U.S.C. § 1324b.

Before an individual can initiate a private action under these statutes, a claim must first be filed with the Office of Special Counsel for Immigration Related Unfair Employment

---

[13] Defendants contend that, as additional grounds for dismissal, Plaintiff's Title VII claim is time-barred and unexhausted. (Defs.' Mem. 12 n.7.) Because I dismiss Plaintiff's Title VII claims on alternative grounds, I do not address Defendants' other arguments for dismissal.

Practices ("OSC").  *See* 8 U.S.C. § 1324b(b), (d).  An individual may initiate a private action

only if the OSC fails to file a complaint within 120 days of receiving a claim.  *See* 8 U.S.C.

§ 1324b(d)(2); *Gen. Dynamics Corp. v. United States*, 49 F.3d 1384, 1385 (9th Cir. 1995)

("Before an individual can instigate a private action, however, the claim first must be filed with

the OSC.  If the OSC fails to file a complaint within 120 days of receiving the claim, the

individual making the charge may initiate a private action." (internal quotation marks omitted)).

Here, Plaintiff's claims have nothing to do with illegal aliens, or the hiring and firing of

employees, and Plaintiff's citation to these statutes as a basis for her claims is therefore

frivolous.  *See Sulehria v. New York*, No. 1:12-CV-21 (LEK/ATB), 2012 WL 1288760, at *3–4

(N.D.N.Y. Feb. 8, 2012) (recommending dismissal of INA/IRCA claim as frivolous), *report and*

*recommendation adopted*, 2012 WL 1284380 (N.D.N.Y. Apr. 16, 2012).  Moreover, Plaintiff

does not allege that she filed a claim with the OSC and that OSC failed to file a complaint within

120 days; therefore, Plaintiff cannot initiate a private action under the statutes.

Accordingly, Plaintiff's INA and IRCA claims are dismissed as a matter of law.

### G.    *18 U.S.C. § 2 Claim*

Plaintiff asserts a cause of action against the current and former Attorneys General for

"aiding and abetting CUNY et al. contrary to 18 U.S.C. § 2."  (Am. Compl. ¶ 176.)  However, 18

U.S.C. § 2 is part of the federal criminal code extending liability as a "principal" for federal

crimes to any individual who "aids, abets, counsels, induces or procures" or "willfully causes"

the commission of an offense against the United States.  It does not provide a private cause of

action.  *See Lamont v. Haig*, 539 F. Supp. 552, 558–59 (D.S.D. 1982) (finding that "[t]he

question whether Congress, either expressly or by implication, intended to create a private cause

of action, has been answered in the negative" and dismissing plaintiff's purported cause of action

under 18 U.S.C. § 2).

Accordingly, Plaintiff's claim pursuant to 18 U.S.C. § 2 cannot stand.

V.   **Conclusion**

For the reasons stated herein, Defendants' motion to dismiss, (Doc. 36), is GRANTED IN PART and DENIED IN PART. Specifically, all of Plaintiff's claims are dismissed except the following claims: (1) Title VI claim against CUNY; (2) § 1983 claims against the CUNY Board of Trustees, Milliken, Seals, Rose, Raab, and Nord in their individual capacities; and (3) § 1981 claims against the CUNY Board of Trustees, Milliken, Seals, Rose, Raab, and Nord in their individual capacities.

The Clerk of Court is respectfully directed to terminate the open motions at Doc. Nos. 36 and 47 and mail a copy of this Opinion and Order to the pro se Plaintiff.

Defendants shall file an Answer to the Amended Complaint within twenty-one days of the date of this Opinion and Order.

SO ORDERED.

Dated: March 18, 2019
     New York, New York

Vernon S. Broderick
United States District Judge