UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
|  |  |  |
|---|---|---|
| | : | |
| FAIGY RACHEL WEISS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | 17 Civ. 3557 (VSB) |
| - against - | : | |
| | : | **ORIGINAL FILED BY ECF** |
| CITY UNIVERSITY OF NEW YORK ("CUNY"), et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULES 12(b)(6) AND 21 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

LETITIA JAMES
Attorney General of the
  State of New York
<u>Attorney for CUNY Defendants</u>
<u>The CUNY Board, Milliken, Raab, Seals,</u>
<u>Nord, and AG James</u>
28 Liberty Street
New York, New York 10005

Johane Severin
Assistant Attorney General
  *of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... iii

Preliminary Statement.................................................................................................... 1

Statement of Facts.......................................................................................................... 3
*Plaintiff's Application to the MSW Program* ................................................................ 3
*Plaintiff's Complaints about Discriminatory Treatment* ............................................. 4
*The Present Action* ....................................................................................................... 5

Standards of Review ....................................................................................................... 6
*Fed. R. Civ. P. 12(b)(6)* ................................................................................................ 6
*Fed. R. Civ. P. 21* ......................................................................................................... 7

ARGUMENT .................................................................................................................. 7

I.      THE CUNY BOARD MEMBERS, MILLIKEN, RAAB, AND NORD
        ARE NOT PROPER PARTIES TO THIS ACTION AND SHOULD BE
        DISMISSED FROM THE LAWSUIT ............................................................. 7

    A.  *The CUNY Board Members Are Not Proper Parties* ........................................ 9
    B.  *Plaintiff's Claims Against Milliken Should Be Dismissed* ............................... 11
    C.  *Plaintiff's Claims Against President Raab Should Be Dismissed* .................... 11
    D.  *Plaintiff's Claims Against Nord Should Be Dismissed* .................................... 13

II.     DISMISSAL OF THE CUNY BOARD MEMBERS, MILLIKEN,
        RAAB, AND NORD WOULD NOT REQUIRE JOINDER OF OTHER
        PARTIES UNDER RULE 19 OF THE FEDERAL RULES OF CIVIL
        PROCEDURE.................................................................................................... 14

III.    DEFENDANTS THE CUNY BOARD, MILLIKEN, RAAB, SEALS,
        AND NORD ARE ENTITLED TO QUALIFIED IMMUNITY .............................. 14

    A.  *Plaintiff's Fourteenth Amendment Right to Equal Protection Was Not Violated* ........... 15

    B.  *A Reasonable University Official Would Not Have Understood that They
        Were Violating Plaintiff's Rights* ..................................................................... 17

    C.  *Plaintiff's Establishment Clause Rights Were Not Violated* ............................ 18

    D.  *It Is Objectively Reasonable To Believe That Any Consideration Of Plaintiff's
        Religion and Religious Upbringing Did Not Violate The Establishment Clause* ............ 18

IV.     PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST AG JAMES .................. 19

    A.  *Plaintiff's Claim Against AG James in her Official Capacity is Barred by the Eleventh Amendment*.................................................................................................. 20

    B.  *Plaintiff Fails to State a Claim Against AG James in her Individual Capacity* ........ 22

CONCLUSION.................................................................................................................... 23

# TABLE OF AUTHORITIES

CASES                                                                                              Page(s)

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................6-9

*Back v. Hastings on Hudson Union Free School District,*
    365 F.3d 107 (2d Cir.2004)...................................................................................8, 22

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................6-7

*Black v. Coughlin,*
    76 F.3d 72 (2d Cir. 1996).........................................................................................22

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,*
    *Inc.,*
    369 F.3d 212 (2d Cir. 2004)........................................................................................4

*Carvel v. Cuomo,*
    357 F.App'x 382 (2d Cir. 2009) ...............................................................................20

*Clements v. Nassau County,*
    835 F.2d 1000(2d Cir. 1987).....................................................................................15

*Clissuras v. City Univ. of N.Y.,*
    359 F.3d 79 (2d Cir. 2004) (per curiam), cert. denied, 543 U.S. 987 (2004) ...........1

*Colon v. Coughlin,*
    58 F.3d 865 (2d Cir. 1995).........................................................................................8

*Criely v. Delta Air Lines,*
    119 F.3d 102 (2d Cir. 1997).......................................................................................13

*Dawkins v. Gonyea,*
    646 F. Supp. 2d 594 (S.D.N.Y. 2009).......................................................................7

*Duplan v. City of New York,*
    888 F.3d 612 (2d Cir. 2018).......................................................................................20

*EEOC v. Port Authority of New York and New Jersey,*
    768 F. 3d 247 (2d Cir. 2014)......................................................................................7

*Esquilin v. Schriro,*
    2014 WL 2795408 (S.D.N.Y. 2014)..........................................................................22

*Ex parte Young,*
    209 U.S. 123 (1908)...................................................................................................21

*Favourite v. 55 Halley St., Inc.*,
 2019 WL 2226792 (S.D.N.Y. May 23, 2019) ...................................................13

*Fekete v. County of Chenango*,
 303 Fed. Appx. 932 (2d Cir. 2008)..................................................................23

*Fisher v. University of Texas at Austin*,
 _____ U.S. ___, 136 S.Ct. 2198 (2016).......................................................... 16-17

*Fowlkes v. Rodriguez*,
 584 F.Supp.2d 561,574 (E.D.N.Y. 2008) ..........................................................3

*Grullon v. City of New Haven*,
 720 F.3d 133 (2d Cir. 2013)..............................................................................8

*Grutter v. Bollinger*,
 539 U.S. 306 (2003)........................................................................................16

*Hafer v. Melo*,
 502 U.S. 21 (1991)............................................................................................7

*Harlow v. Fitzgerald*,
 457 U.S. 800 (1982)........................................................................................15

*Heckler v. Ringer*,
 466 U.S. 602 (1984)........................................................................................21

*Idaho v. Coeur d' Alene Tribe*,
 521 U.S. 261 (1997)........................................................................................21

*Inmates of Attica Correctional Facility v. Rockefeller*,
 477 F.2d 375 (2d Cir. 1973)............................................................................21

*Johnson v. N.Y.C. Dep't of Educ.*,
 39 F. Supp. 3d 314 (E.D.N.Y. 2014), aff'd 633 F. Appx. 42 (2d Cir. 2016)..........................13

*Joyner v. Greiner*,
 195 F.Supp. 2d 500 (S.D.N.Y. 2002).................................................................13

*Lee v. Weisman*,
 505 U.S. 577 (1992) (Souter, J. concurring)....................................................18

*Levy v. Cohen*,
 439 F.App'x 30 (2d Cir. 2011) ........................................................................20

*Mamot v. Bd. of Regents*,
 367 Fed. Appx. 191 (2d Cir. 2010)..................................................................20

*Marom v. City of New York*,
  2016 WL 916424 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part
  and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016) ..............................................8

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004).................................................................................................15

*Mills v. Green*,
  159 U.S. 651 (1895).............................................................................................................22

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985).............................................................................................................15

*Patterson v. County of Oneida*,
  N.Y., 375 F.3d 206 (2d Cir. 2004).....................................................................................7, 22

*Pennhurst State School & Hosp. v. Halderman*,
  465 U.S. 89 (1984)..............................................................................................................20

*Piccolo v. New York City Campaign Finance Bd.*,
  2007 WL 2844939 (S.D.N.Y. 2007).....................................................................................22

*Quern v. Jordan*,
  440 U.S. 332 (1979).............................................................................................................20

*Quick Cash of Westchester Ave. LLC v. Village of Port Chester*,
  2013 WL 135216 (S.D.N.Y. 2013)........................................................................................9

*Regents of the University of California v. Bakke*,
  438 U.S. 265 (1978).............................................................................................................16

*Sash v. U.S.*,
  674 F.Supp. 2d 531 (S.D.N.Y. 2009).....................................................................................8

*Trotman v. Palisades Interstate Park Comm'n*,
  557 F.2d 35 (2d Cir. 1977)...................................................................................................20

*U.S. v. Commercial Bank of North America*,
  31 F.R.D. 133 (S.D.N.Y. 1962) .............................................................................................7

*Vega v. Miller*,
  273 F.3d 460 (2d Cir. 2001).................................................................................................15

*Verizon Md., Inc. v. Pub. Serv. Comm'n*,
  535 U.S. 635 (2002).............................................................................................................21

*Whidbee v. Garzarelli Food Specialties, Inc.*,
  223 F.3d at 75 .......................................................................................................................8

*Ying Jing Gan v. City of New York,*
  996 F.2d 522 (2d Cir. 1993)...................................................................20

**CONSTITUTIONS**

Eleventh Amendment.................................................................... 5, 20-21

Fourteenth Amendment .................................................................10, 15, 17

**FEDERAL STATUTES**

18 U.S.C. § 2.................................................................................... 1-2

Title IX of the Education Amendments of 1972,
  20 U.S.C. § 1681...........................................................................1, 4

28 U.S.C. § 1915(e)(2)(B) ....................................................................5

42 U.S.C. §§ 1981 and 1983 ...............................................2, 5, 7, 20, 22, 23

Civil Rights Act of 1964 Title VI, 42 U.S.C.
  § 2000d <u>et.</u> <u>seq.</u> ......................................................................2, 5

Immigration and Nationality Act ..............................................................1

Immigration Reform and Control Act of 1986, 8 U.S.C.
  §§ 1324a and 1324b .........................................................................1

**STATE STATUTES**

Education Law
  § 6201(3) ...................................................................................16
  § 6201(5) ...................................................................................16

State Human Rights Law, Executive Law
  §§ 292 and 296 ..............................................................................1

**RULES**

Fed. R. Evid. 201(b)(2) .......................................................................9

Fed. R. Evid. 201(d) ..........................................................................9

Fed. R. Civ. P. 12(b)(6)...........................................................1, 2, 3, 6, 15

Fed. R. Civ. P. 18 .............................................................................7

Fed. R. Civ. P. 19 ...........................................................................7, 14

Fed. R. Civ. P. 20 ................................................................................................................7

Fed. R. Civ. P. 21 ........................................................................................................7, 9, 10

**MISCELLANEOUS AUTHORITIES**

N.Y.C. Admin. Code § 8-107 ...............................................................................................1, 4

Defendants The City University of New York ("CUNY")[1]; "Members of The City University of New York Board of Trustees" ("the CUNY Board"); James Milliken ("Milliken"), former Chancellor of CUNY; Nireata D. Seals ("Seals"), former Assistant Dean of Enrollment Management and Records at the Silberman School of Social Work ("the Silberman School") at Hunter College; Jennifer Raab ("Raab"), President of Hunter College; Roberta Nord ("Nord"), University Director of Student Advocacy; and Letitia James, Attorney General for the State of New York ("AG James"), respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Rules 12(b)(6) and 21 of the Federal Rules of Civil Procedure.[2]

### Preliminary Statement

Plaintiff Faigy Rachel Weiss ("Plaintiff") initially brought this action alleging numerous causes of action against many defendants all arising out of an allegedly wrongful admissions decision. Defendants moved to dismiss, focusing their arguments on the legal insufficiency of the wide-ranging claims asserted by Plaintiff. By decision and order of this Court dated March 18, 2019 ("the Dismissal Order"), Plaintiff's claim against former New York State Attorney General Eric Schneiderman, which was brought under the federal criminal statute 18 U.S.C. § 2, was dismissed. *See* ECF No. 65. Plaintiff's claims pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; the Immigration and Nationality Act; the Immigration Reform and Control Act of 1986, 8 U.S.C. §§ 1324a and 1324b; New York State Human Rights Law, Executive Law §§ 292 and 296; New York City Human Rights Law, N.Y.C. Admin. Code § 8-107; and

---

[1] Hunter College, a senior college in the CUNY system, is not a "legally cognizable entity apart from CUNY." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam), cert. denied, 543 U.S. 987 (2004). CUNY is thus the sole proper institutional defendant in this action.

[2] Defendant John Rose ("Dean Rose"), Dean for Diversity and Compliance and Title IX Coordinator at Hunter College, is not currently seeking dismissal of the claims against him.

violations of the federal criminal code pursuant to 18 U.S.C. § 2 were also dismissed in the Dismissal Order.

On August 29, 2019, Plaintiff filed a Second Amended Complaint ("SAC"). *See* ECF No. 93. Nearly identical to her prior complaints, the SAC attempted to resurrect previously dismissed causes of action and added the current New York State Attorney General as a Defendant in the lawsuit. The Court affirmed the dismissal of the previously dismissed causes of action but allowed Plaintiff's claim against AG James to move forward. *See* ECF No. 100. Accordingly, the only surviving claims at issue are Plaintiff's claims alleging a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d <u>et. seq.</u> ("Title VI") against CUNY; violations of 42 U.S.C. §§ 1981 and 1983 against Defendants the CUNY Board, Milliken, Seals, Raab, and Nord in their individual capacities; and violations of 42 U.S.C. §§ 1981 and 1983 against James in her official and individual capacities. Defendants now move to dismiss the claims against these individual defendants pursuant to Rules 12(b)(6) and 21.

In short, Plaintiff alleges that she applied for and was denied admission to the Masters of Social Work Program ("MSW Program") at the Silberman School because of her race, religion, skin color, gender, citizenship status, national origin, and imputed political opinion. *See* SAC at ¶¶ 1-2, 5-10. For the reasons more fully set forth below, dismissal is appropriate because (1) Plaintiff fails to allege, and cannot allege, that the members of the CUNY Board, Milliken, Raab, or Nord were involved in any of the alleged wrongful acts and thus they are not proper parties to this lawsuit; (2) the actions of the CUNY Board, Milliken, Raab, and Nord are shielded by qualified immunity; and (3) Plaintiff's claim against AG James is both factually and legally defective.

### Statement of Facts[3]

*Plaintiff's Application to the MSW Program*

Plaintiff alleges that she was raised in the Satmar community of New York, a Hasidic Jewish community with strict rules governing the conduct of women, including limitations on the education of women. *See* SAC at ¶¶ 59-60. At the age of 19, Plaintiff allegedly chose to "pursue opportunities outside the Satmar community," which included graduating from CUNY's Borough of Manhattan Community College with an associate's degree in liberal arts and from CUNY's Brooklyn College with a bachelor of arts degree. *Id*. at ¶¶ 64, 66-73.

On February 1, 2015, Plaintiff submitted an application to the MSW Program. *Id.* at ¶ 75. In response to optional questions in the application about the applicant's race and ethnicity, Plaintiff did not self-identify either her race or ethnicity. *Id.* at ¶¶ 76-77. However, in a personal statement submitted as part of the application, Plaintiff allegedly identified herself as Jewish "and described her upbringing in the Satmar community." *Id.* at ¶ 80. Elsewhere in her application, Plaintiff disclosed that she is a United States citizen and that her native language is Yiddish. *Id.* at ¶ 79.

During the time that the events alleged in the SAC took place, the Silberman School required that applicants for admission submit a Statement of Purpose in which they answered "specific questions about their professional and/or volunteer experience related to social work." *See* Seals Dissertation, p. 5.[4] After an applicant's essay, letters of recommendation, resume and

---

[3] The truth of the Plaintiff's non-conclusory factual allegations is assumed for purposes of this motion to dismiss only, and except where judicial notice may be taken of contrary facts. *See Fowlkes v. Rodriguez*, 584 F.Supp.2d 561,574 (E.D.N.Y. 2008) ("Although the court typically accepts plaintiff's allegations as true for purposes of a motion to dismiss, the court is permitted to consider and take judicial notice of certain documents, such as matters of public record, and reject the truthfulness of those allegations that are contradicted by the documents.")

[4] A full description of the admissions process that was in place during the time period relevant to the events alleged in this action is available on pages 4 -7 of the doctoral dissertation written by defendant Nireata Seals. The dissertation is discussed in paragraphs 117-126 of the SAC. In ruling on a motion to dismiss under Rule 12(b)(6), in addition to reviewing the facts and allegations that are contained in the complaint, the Court may also properly examine and

transcript were evaluated, the applicant was either advanced to the interview phase of the process or denied admission to the program. *Id.* at 7.

On April 7, 2015, Plaintiff attended a group interview with seven other applicants to the MSW Program "of different races and ethnicities, including African-American, Hispanic, Asian and white-skinned people." *Id.* at ¶¶ 84-85. During the interview, the unidentified interviewer asked Plaintiff two questions that were not asked of other applicants. *Id.* at ¶ 88. Specifically, the interviewer allegedly asked Plaintiff "Why don't you apply to the special education school?" and "How would you handle people who are different to you?" *Id.* at ¶¶ 89-90.

By letter dated April 28, 2015, Plaintiff was notified that her application to the MSW Program was denied. *Id.* at ¶ 94. The letter did not identify the reasons for the denial. *Id.* Plaintiff alleges that defendant Seals, Director of Enrollment Services for the Silberman School, made the decision to deny Plaintiff's application. *Id.* at ¶¶ 32, 91.

***Plaintiff's Complaints about Discriminatory Treatment***

Months after receiving notification of the denial of her application for admission to the MSW Program, and months into the fall semester, Plaintiff complained to CUNY officials about alleged discrimination in the admissions process.  First, on December 7, 2015, over seven months after she was notified of her denial, Plaintiff e-mailed defendant John Rose, Dean for Diversity and Compliance and Title IX Coordinator at Hunter College ("Dean Rose"), alleging that the MSW Program had discriminated against her on the basis of religion and an unspecified disability. *Id.* at ¶¶ 38, 95. Plaintiff subsequently had three meetings with Dean Rose on December 23, 2015, January 27, 2016, and February 1, 2016. *Id.* at ¶¶ 96, 98, 102. Dean Rose offered Plaintiff the

---

consider any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). A copy of the dissertation is available at ECF No. 37, Ex. D.

opportunity to take classes as a non-matriculating student for free. *Id.* at ¶¶ 99(e) and 104(a).
Plaintiff declined the offer. *Id.* at ¶¶ 99(e), 104(a), and 105.

Plaintiff alleges that by letter dated March 2, 2016, the President of Hunter College,
defendant Jennifer Raab ("President Raab"), notified Plaintiff that Hunter College denied the
allegations of discriminatory treatment. *Id.* at ¶ 107. On April 6, 2016, Plaintiff purportedly
appealed President Raab's decision to the Office of the CUNY Chancellor. *Id.* at ¶ 108. Thereafter,
on April 28, 2016, the University Director of Student Advocacy, defendant Roberta Nord
("Nord"), sent Plaintiff a letter denying the claim of discriminatory treatment and stating that "the
group interview 'follows uniform guidelines which have been in place for some time and were not
altered or adjusted prior to your interview.'" *Id.* at ¶¶ 46, 109-111. Nord's letter "reiterated the
offer to [Plaintiff] that she could take classes as a non-matriculating student for free." *Id.* at ¶ 112.

### The Present Action

On May 11, 2017, Plaintiff commenced the present action by filing a complaint and a
request to proceed *in forma pauperis*. In an Order of Service dated June 6, 2017, the Court granted
Plaintiff's request to proceed *in forma pauperis*, but pursuant to a review under 28 U.S.C. §
1915(e)(2)(B), the Court dismissed the following claims on the basis of Eleventh Amendment
immunity: (1) the §§ 1981 and 1983 claims asserted against CUNY, the CUNY Board of Trustees,
Hunter College, and the Silberman School; and (2) the §§ 1981 and 1983 claims for money
damages asserted against defendants Dean Rose, President Raab, Director Seals, and Ms. Nord in
their official capacities. Further, the Court dismissed the Title VI claims as against the individual
defendants. *See* ECF No. 5.

Thereafter, in response to Defendants' proposed motion to dismiss the remaining claims in
the initial complaint, and following discussions at a pre-motion conference, Plaintiff filed an

Amended Complaint on April 13, 2018. Defendants filed an Answer to the Amended Complaint on April 8, 2019 (ECF Doc. No. 67) and a Motion for Judgment on the Pleadings on June 20, 2019 (ECF Doc. Nos. 78-81). After requesting leave to amend her complaint (ECF Doc. No. 88), Plaintiff filed the SAC on August 29, 2019 (ECF Doc. No. 93).

Because Plaintiff's SAC attempted to resurrect previously dismissed causes of action and added, without basis, AG James as a defendant, Defendants asked to withdraw their Motion for Judgment on the Pleadings and requested leave to file a motion to dismiss Plaintiff's SAC (ECF Doc. No. 94). The Court affirmed the dismissal of the previously dismissed causes of action and granted Defendants' request to file the instant motion to dismiss (ECF Doc. No. 100). Defendants now move to dismiss the claims against the CUNY Board,[5] Milliken, Raab, Nord, and AG James for failure to state a claim or, in the alternative, misjoinder.

<u>**Standards of Review**</u>

***Fed. R. Civ. P. 12(b)(6)***

To avoid "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions," all civil complaints are required to overcome a basic factual threshold in order to proceed beyond the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Specifically, "[t]o survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] Defendants Wellington Z. Chen, Rita DeMartino, Judah Gribetz, Katherine M. Conway, and Chika Onyejiukwa have not been served in this action. The arguments herein have equal application to the claims against these unserved defendants as to the other defendants.

alleged." *Iqbal*, 556 U.S. at 678. Conclusory statements are insufficient to satisfy this standard. *Id.* These pleading requirements are fully applicable to discrimination claims like those at issue here. Thus, a discrimination complaint "must at minimum assert non-conclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Authority of New York and New Jersey*, 768 F. 3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted). Significantly, "even pro se plaintiffs asserting civil rights claims are not exempt from *Twombly*'s threshold that the pleadings must contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea,* 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting <u>*Twombly*</u>, 500 U.S. at 555).

**Fed. R. Civ. P. 21**

Fed. R. Civ. P. 21 permits the Court "at any time, on just terms, [to] add or drop a party… [or] also sever any claim against a party." Rule 21 must be read in consideration of Rules 18, 19, and 20 and is meant "to minimize the harsh results which resulted from non-joinder and misjoinder under the common law." *U.S. v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962).

## <u>ARGUMENT</u>

### I.   THE CUNY BOARD MEMBERS, MILLIKEN, RAAB, AND NORD ARE NOT PROPER PARTIES TO THIS ACTION AND SHOULD BE DISMISSED FROM THE LAWSUIT.

Plaintiff's claims against the CUNY Board, Milliken, Raab, and Nord fail as a matter of law. Personal capacity lawsuits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In order to make out a claim for individual liability under §§ 1981 and 1983, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Patterson v. County*

*of Oneida*, N.Y., 375 F.3d 206, 229 (2d Cir. 2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d at 75) (internal quotation marks omitted). A defendant's personal involvement in an alleged violation must also be established to sustain a claim of individual liability. *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir.2004).

Previously in the Second Circuit, personal involvement was routinely established through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendants, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendants created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference… by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, since the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the standard for showing a supervisor's personal involvement in a constitutional violation has been heightened. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

> While *Colon* permitted supervisory liability in situations where the supervisor knew of and acquiesced in a constitutional violation committed by a subordinate… *Iqbal's* 'active conduct' standard imposes liability only where that supervisor directly participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred.

*Sash v. U.S.*, 674 F.Supp. 2d 531, 544 (S.D.N.Y. 2009). Indeed, many courts have found that the second, forth, and fifth *Colon* factors are no longer viable. *See Marom v. City of New York*, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (citing cases). Furthermore, when a claim involves allegations of invidious discrimination, to defeat a motion to dismiss,

> the plaintiff must plead and prove that the defendant acted with discriminatory purpose... [and] must plead sufficient factual matter to show that [defendants]

> adopted and implemented the policies at issue not for a neutral, investigative reason
> but for the purpose of discriminating on account of race, religion, or national
> origin."

*Ashcroft* 556 U.S. at 676-77. Because Plaintiff has failed to demonstrate that any member of the

CUNY Board, Milliken, Raab, or Nord knew about, directly participated in, or helped create an

admissions policy with the intent to discriminate, they should be dismissed from this action

pursuant to Rules 12(b)(6) and 21 of the Federal Rules of Civil Procedure because they are not

proper parties to this action.

### A.  The CUNY Board Members Are Not Proper Parties

Plaintiff's claims against the CUNY Board Members should be dismissed.  Plaintiff alleges

that the members of the CUNY Board "were at all times relevant to this Complaint, the members

of the Board of trustees of the City University of New York." *See* SAC at ¶ 18.  However, the

terms of William C. Thompson, Barry F. Schwartz, Michael Arvanites, Henry T. Berger, Lorraine

Cortés-Vazquez, Kevin Kim, Robert F. Mujica, Ken Sunshine, Sandra Wilkin, or Chika

Onyejiukwa did not begin until *after* the actions challenged in the SAC.[6] *See* Atkins Declaration.[7]

Because these individuals were not members of the CUNY Board when these events occurred,

Plaintiff cannot establish the personal involvement that is required to sustain a claim of individual

---

[6] According to the facts alleged in the SAC, the discriminatory actions began on February 1, 2015 when Plaintiff alleges that she submitted an application to the Silberman School for admission to the MSW Program and ended on or about April 28, 2016 when Defendant Nord allegedly sent Plaintiff a letter on behalf of the Chancellor's Office denying that CUNY had discriminated against her. The membership dates of the above-referenced Board Members are as follows: Thompson: June 2016 to June 2022; Schwartz: October 2016 to June 2020; Arvanites: July 2017 to June 2024; Berger: June 2017 to June 2021; Cortés-Vazquez: June 2016 to June 2022; Kim: July 2017 to June 2024; Mujica: June 2016 to June 2021; Sunshine: June 2016 to June 2019; Wilkin: June 2016 to June 2023; Onyejijkwa: September 2016 to September 2017.

[7] "Courts may take judicial notice 'at any stage of the proceeding.' Fed. R. Evid. 201(d). Under Federal Rule of Evidence 201(b)(2), courts may judicially notice facts that are 'not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. On a motion to dismiss, the Court may take judicial notice of Board meeting minutes as public records. *See Quick Cash of Westchester Ave. LLC v. Village of Port Chester*, 2013 WL 135216 at *4 (S.D.N.Y. 2013).

liability. Accordingly, these individual defendants should be dismissed from the present lawsuit pursuant to Rule 21 of the Federal Rules of Civil Procedure.

The remaining CUNY Board members – Wellington Z. Chen, Una S. T-Clarke, Rita DeMartino, Fernando Ferrer, Judah Gribetz, Mayra Linares-Garcia, Brian D. Obergfell, Jill O'Donnell-Tormey, Charles A. Shorter, and Katherine M. Conway – should also be dismissed from this action because Plaintiff has failed to allege facts showing that they were involved in the decision to deny Plaintiff admission to the Silberman School.  Indeed, Plaintiff does not allege that they had any role in that decision but, instead, bases her claims against them on the allegation that they adopted the admissions procedures at issue for the purpose of violating Plaintiff's Fourteenth Amendment rights. *See* SAC ¶ 20. Plaintiff offers no plausible support for that contention. Rather, Plaintiff's conclusory assertions that the Board "approved" an admissions process that violates federal anti-discrimination statutes and that the CUNY Board favors DACA recipients and immigrants over American born citizens are bigoted conjecture masquerading as fact. *See* SAC ¶¶ 21. A cursory reading of the press release that Plaintiff ostensibly relies upon to establish that the admissions policies at the Silberman School were discriminatory only confirms that the CUNY Board is committed to upholding CUNY's founding principle of ensuring that everyone has equal access and opportunity to pursue an education, regardless of immigration status. *See* Document 61, Exhibit B filed December 7, 2018. The *only* reasonable inference that can be drawn from the plain language of the Board's press statement is that it is committed to protecting and educating *all* students.

Put simply, Plaintiff has failed to allege – and cannot allege – that the CUNY Board was at all involved in assessing candidates for the MSW program or that they participated in the development of or sanctioned admissions protocols whose purpose was to exclude certain

applicants from the MSW program on the basis of their race, national origin/skin color, and religion. Such factual allegations are a prerequisite for establishing discriminatory purpose in invidious discrimination claims such as this one.  Given these failures, the CUNY Board Members should be dismissed from this action.

### B.  Plaintiff's Claims Against Milliken Should Be Dismissed

Defendant Milliken should also be dismissed from this action because Plaintiff has failed to plead any factual allegation that would show that Milliken was involved in the decision to deny her admission to the Silberman School or that he had any involvement in developing or sanctioning the admissions policy at issue. Plaintiff's sole allegation against Milliken is that he publicly stated that CUNY would continue to educate and provide scholarships and internships to DACA recipients and immigrants while denying American born citizens the same opportunities. *See* SAC ¶¶ 29. This assertion is patently false. Once again, a perfunctory review of the very plain language of Milliken's statement shows that Milliken expressed the university's support for the thousands of DACA recipients who were enrolled at CUNY, urged Congress to act to support the program, and highlighted the partnerships that the university had developed with other organizations in order to make counseling, financial support, and legal services available to DACA recipients. *See* Statement from Chancellor James. B. Milliken (Severin Decl., Ex. A). Nowhere in the statement does Milliken state or imply that such resources are provided to DACA recipients at the expense of those who are not. Since Plaintiff has also failed to make a single allegation demonstrating that Milliken had any involvement in developing the admissions procedures at issue or in the decision to deny Plaintiff admission to the Silberman School, he should be dismissed from this action.

### C.  Plaintiff's Claims Against President Raab Should Be Dismissed

President Raab should also be dismissed from this lawsuit because Plaintiff has failed to plead any factual allegations that would raise her right to relief even to a speculative level.  Plaintiff alleges that Raab is responsible for the enactment, enforcement, administration, and policymaking that is associated with the admissions process at Hunter; that she too pledged to confer rights to DACA recipients and immigrants while denying those rights to American born citizens; and that Raab denied that Hunter had discriminated against Plaintiff after Plaintiff shared with Raab's subordinates her belief that the admissions process had been biased. None of these allegations, even when read in the light most favorable to Plaintiff, meet the threshold requirements necessary to demonstrate Raab's personal involvement in the matters at issue and that would consequently make Raab a proper party to this action.

Plaintiff's primary allegation against Raab is that she expressed support for DACA recipients in a written statement. But, yet again, Plaintiff distorts the plain meaning of the public statement, which merely affirms the college's commitment to providing "support, guidance, and financial assistance *where possible*" to DACA recipients and identifies an unaffiliated organization that provided the funding that allowed Hunter to offer "*some* financial assistance to Dreamers," *See* Document 61, Exhibit A filed December 7, 2018 (emphasis added).  After urging Congress to act to confer legal status upon all DACA recipients, Raab highlights the stories of four unidentified DACA recipients who had excelled academically at Hunter and who were committed to contributing to their communities. *Id.*

Nowhere does Raab, Milliken, or the CUNY Board express or imply a preference for DACA recipients or immigrants over American-born citizens. Accordingly, they do not provide the requisite support for Plaintiff's conclusory allegations of discriminatory animus. Even if they were indicative of animus, which they are not, "[s]tray remarks by non-decisionmakers or by

decisionmakers unrelated to the decision process are rarely given great weigh, particularly if they were made temporally remote from the date of decision." *Favourite v. 55 Halley St., Inc.,* 2019 WL 2226792, at *9 (S.D.N.Y. May 23, 2019). The SAC lacks any factual allegations that can connect the sentiments expressed in the CUNY Board, Milliken, or President Raab's press releases to discriminatory animus that led to the decision to deny Plaintiff admission to the Silberman School. *See Johnson v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 314, 325 (E.D.N.Y. 2014), *aff'd* 633 F. Appx. 42 (2d Cir. 2016) (dismissing discrimination claim and refusing "to make an inferential leap" where an employee relied on a history of racial tensions "without providing any indication of how these events were linked to the staffing decision regarding plaintiff."); *Criely v. Delta Air Lines*, 119 F.3d 102, 105 (2d Cir. 1997) (affirming grant of summary judgment where defendant's remarks that made "reference to age" do not "reflect any age-based stereotype or belief that older [employees] are less competent than younger ones"). Accordingly, their dismissal from this action is required.

Finally, Plaintiff's allegation that President Raab sent her a letter denying that Hunter College engaged in discrimination is insufficient to establish personal involvement. Courts in the Second Circuit have held that the affirmation of the denial of a grievance is insufficient to establish the personal involvement of a defendant in an alleged constitutional violation. *Joyner v. Greiner*, 195 F.Supp. 2d 500, 506 (S.D.N.Y. 2002). Accordingly, the mere allegation that President Raab was involved in notifying the Plaintiff that her discrimination complaint was found to be without merit is insufficient, and Plaintiff's claims against President Raab should be dismissed.

### D. *Plaintiff's Claims Against Nord Should Be Dismissed*

Defendant Nord should also be dismissed because the only allegations lodged against her involve her denial of Plaintiff's internal complaint. *See* SAC ¶¶ 108 – 110. As explained in the

paragraph above, such action is insufficient to establish personal involvement of a defendant in an alleged constitutional violation. Consequently, Defendant Nord should be dismissed from this action.

## II.  DISMISSAL OF THE CUNY BOARD MEMBERS, MILLIKEN, RAAB, AND NORD WOULD NOT REQUIRE JOINDER OF OTHER PARTIES UNDER RULE 19 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Dismissal of the CUNY Board, Milliken, Raab, and Nord would not require joinder of other former CUNY Board members or any additional parties.[8]  Rule 19 of the Federal Rules of Civil Procedure requires joinder of parties who are subject to the court's personal and subject matter jurisdiction:

> if (A) in that person's absence, the court cannot accord complete relief among existing parties or (B)… disposing of the action in the person's absence may: (i)… impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

None of these considerations is applicable to the case at bar. Although those accused of wrongdoing have an interest in defending themselves in lawsuits, CUNY and any other individuals who are not dismissed as defendants from this lawsuit can effectively defend the matters at issue in this case and Plaintiff can be made whole without the addition of further defendants. Accordingly, joinder of additional parties is unnecessary.

## III.  DEFENDANTS THE CUNY BOARD, MILLIKEN, RAAB, SEALS, AND NORD ARE ENTITLED TO QUALIFIED IMMUNITY.

The defense of qualified immunity is available to government officials who are being sued in their individual capacity for damages. Such officers are shielded from liability for civil damages so long as their conduct does not "violate a clearly established statutory or constitutional right of

---

[8] Defendants do not concede that former CUNY Board members or any other individual(s) would be proper parties to this action.

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A qualified immunity defense may be asserted on a Rule 12(b)(6) motion "as long as the defense

is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436

(2d Cir. 2004). When considering a defense of qualified immunity, the court must consider (1)

whether a clearly established constitutional right has been violated, and (2) "whether a reasonable

person, acting under the circumstances then confronting a defendant, would have understood that

the applicable law was being violated." *Vega v. Miller*, 273 F.3d 460, 466 (2d Cir. 2001). Qualified

immunity is "*immunity from suit* rather than a mere defense of liability" and should be determined

at the earliest possible stage of a case. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in

original). Furthermore, courts are expected to show judicial deference to the decisions made by

university administrators. *Clements v. Nassau County*, 835 F.2d 1000, 1005(2d Cir. 1987).

Here, Plaintiff alleges that Defendant Seals is liable because she directed the operation of

an allegedly biased admissions process; that Defendants the CUNY Board, Milliken, and President

Raab are liable because they sanctioned the admissions process; and that President Raab and Nord

are liable because they affirmed the integrity of the admissions process.  But, as noted below,

Plaintiff neither has a clearly established right to an admissions procedure of her choosing nor does

a holistic admissions procedure violate a clearly established constitutional right. Furthermore, no

reasonable official in Defendants' positions would have understood that their conduct violated

such a right.

### A. *Plaintiff's Fourteenth Amendment Right to Equal Protection Was Not Violated*

Admissions policies that take a holistic view of applicants by reviewing their academic

performance, essays, leadership and work experience, extracurricular activities, community

service, and "other 'special characteristics' that might give the admissions committee insight into

a student's academic background" are lawful under the Equal Protection Clause. *Fisher v. University of Texas at Austin*, _____ U.S. ___, 136 S.Ct. 2198 (2016), *Grutter v. Bollinger*, 539 U.S. 306 (2003). "The attainment of a diverse student body… is a constitutionally permissible goal for an institution of higher education." *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978) (separate opinion). Although courts should defer to a university's educational judgement that diversity is essential to its educational mission, "[t]he means chosen to accomplish the asserted purpose must be specifically and narrowly framed to accomplish that purpose." *Grutter*, 539 U.S. at 328 and 333.

In establishing CUNY, the State Legislature based its support of an independent and integrated system of higher education "on the assumption that the university will continue to maintain and expand its… provision of equal access and opportunity for students, faculty and staff from all ethnic and racial group and from both sexes." N.Y. Educ. § 6201(3). The Legislature mandated that activities at the CUNY campuses

> be undertaken in a spirit which recognizes and responds to the imperative need for affirmative action and the positive desire to have city university personnel reflect the diverse communities which comprise the people of the city and state of New York. In its urban environment this commitment should be evident in all the guidelines established by the board of trustees for the university's operation, from admissions and hiring to contracting for the provision of goods, services, new construction and facilities rehabilitation.

Education Law § 6201(5).

Seals oversaw (SAC at ¶ 31, 91-92) the CUNY Board, Milliken, and Raab approved (*Id.* at ¶¶ 20-21, 28-29, 43-44) and Raab and Nord affirmed the integrity of a holistic admissions process (*Id.* at ¶¶ 107, 109-11) that was narrowly tailored to accomplish the twin goals of providing equal access and opportunity to prospective social work students and creating a pipeline of social workers who reflect New York's diverse communities. Education Law § 6201(5).Their collective

actions – or, in Plaintiff's view, their collective failure to develop an admissions process that should have favored her – cannot be shown to have violated a clearly established right. Like the holistic review process that was deemed lawful under the Equal Protection Clause in *Fisher*, applicants to the Silberman School were evaluated based on their academic transcripts and letters of recommendation; answers to questions about their professional and/or volunteer experience related to social work; and, for those who met the threshold requirements for admission, performance in a group interview. *See* Seals Dissertation, p. 7. Because an admissions policy that take a holistic view of applicants does not violate a clearly established constitutional right, the CUNY Board, Milliken, Raab, and Nord are entitled to qualified immunity and should be dismissed from this lawsuit.

**B.  *A Reasonable University Official Would Not Have Understood that They Were Violating Plaintiff's Rights***

Plaintiff alleges that her Fourteenth Amendment rights were violated because she was required to disclose her citizenship, country of birth, and native language in her application for admission (SAC at ¶ 78) and because she attended a group interview where she was allegedly asked how she would handle people who are different from her and whether she had considered pursuing a degree in special education (*Id*. at ¶¶ 84, 89-80). The questions asked about Plaintiff's citizenship, country of birth and native language were used to determine applicants' eligibility for federal financial aid and whether an applicant would be required to submit scores from the Test of English as a Foreign Language. The question allegedly asked at the group interview concerning interactions with different people is logical given CUNY's legislative mandate and the nature of social work practice. The second question allegedly posed concerning Plaintiff's interest in special education is completely innocuous, unrelated to her status as a white, Jewish, female citizen, and could have come up in a variety of contexts, including gauging whether Plaintiff was serious about

pursuing a career in social work. The underlying reasons why questions about citizenship status, language proficiency, comfort with working with diverse people, and possible interest in other academic areas would understandably be asked of applicants to a graduate level program at an urban institution that serves a diverse student body from all socio-economic backgrounds.

Neither these Defendants nor any reasonable state officer in their stead would have understood that including such questions in any part of the admissions process to evaluate an applicant's eligibility for federal financial aid, gauge the applicant's proficiency in the English language, or assess the applicant's level of comfort with working with people who are different from them was a violation of Plaintiff's constitutional rights. Since no reasonable person could have believed that such questions, posed for legitimate, nondiscriminatory reasons, would violate Plaintiff's rights, the CUNY Board, Milliken, Seals, Raab, and Nord are entitled to qualified immunity.

### C.  Plaintiff's Establishment Clause Rights Were Not Violated

Plaintiff alleges a violation of the Establishment Clause, arguing that consideration of her religion and her religious upbringing – facts that she *voluntarily* disclosed in her personal statement – violated her constitutional rights. Although government must remain neutral in matters involving religion, it is not precluded from taking religion into account. *Lee v. Weisman*, 505 U.S. 577, 627 (1992) (Souter, J. concurring). Assuming, *arguendo,* that Plaintiff's religion was considered when her application was being evaluated, doing so did not violate a clearly established right. Accordingly, the CUNY Board, Milliken, Seals, Raab, and Nord are entitled to qualified immunity and should be dismissed from this action.

### D.  It Is Objectively Reasonable To Believe That Any Consideration Of Plaintiff's Religion and Religious Upbringing Did Not Violate The Establishment Clause

As an initial matter, Plaintiff has failed to demonstrate that any consideration of her religion and her religious upbringing led to her denial of admission to the MSW Program. Plaintiff's references to rumors "heard from other Jewish women, who had also been rejected by the Silberman School," and conclusion that she, too, was rejected because of her religion are legal conclusions couched as fact. SAC at ¶¶ 97(c). As discussed previously, without a causal link connecting Plaintiff's voluntary disclosure of her religion and religious background to any religious animus held by the members of the CUNY Board, Milliken, Seals, Raab, or Nord, Plaintiff's Establishment Clause claim against these defendants should be dismissed.

Even if Plaintiff's religion and religious upbringing were considered, it is objectively reasonable for a university official to consider *all* information submitted by an applicant who is attempting to demonstrate that she qualifies for admission to a graduate program. Here, university officials considered all documents and information provided by the applicant as part of the holistic admissions process. A university official cannot be expected to know that considering an applicant's religion or religious upbringing violates that applicant's constitutional rights when the applicant ostensibly disclosed these aspects of her identity and experience in order to demonstrate that she has the requisite professional and/or volunteer experience to qualify for admission to a MSW program. Since no reasonable person could have believed that considering all aspects of Plaintiff's application in this context would violate Plaintiff's rights, the CUNY Board, Milliken, Seals, Raab, and Nord are entitled to qualified immunity.

## IV.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST AG JAMES

Plaintiff baselessly alleges that AG James is "enabling CUNY to discriminate against American born citizens who are not immigrants; has not provided American born citizens with the same legal services provided to non-citizens/immigrants/DACA recipients; is enabling a

discriminatory and illegal admissions process at CUNY… [and] failed to ensure compliance in the law from/by the CUNY defendants." SAC at ¶¶ 53-56. These unsupported and conclusory allegations are patently insufficient to state a claim against AG James in either her official or individual capacities.

### A. Plaintiff's Claim Against AG James in her Official Capacity is Barred by the Eleventh Amendment

The Eleventh Amendment to the United States Constitution precludes federal courts from entertaining lawsuits by individuals against the States, including state officials sued in their official capacities, unless (i) the State "unequivocally expressed" consent to be sued in federal court; or (ii) Congress enacted legislation containing "an unequivocal expression of congressional intent to" override the States' sovereign immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Plaintiff does not and cannot demonstrate that either of those circumstances is present in this case because "[i]t is well-established that New York has not consented to § 1983 suits in federal court…and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 Fed. Appx. 191, 192 (2d Cir. 2010) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977) and *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)).[9] The Attorney General is entitled to Eleventh Amendment Immunity. *Levy v. Cohen*, 439 F.App'x 30, 32 (2d Cir. 2011); *Carvel v. Cuomo*, 357 F.App'x 382, 383 (2d Cir. 2009). Eleventh Amendment immunity extends to state officials who are sued for damages under § 1983. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

The limited exception to state employees' Eleventh Amendment immunity is inapplicable here. Specifically, state employees can be sued in their official capacities in federal court when the

---

[9] For the purposes of a suit against a state officer, a § 1981 claim only lies through a valid § 1983 claim. *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).

"'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908), and quoting *Idaho v. Coeur d' Alene Tribe*, 521 U.S. 261, 296 (1997)).  The SAC fails to satisfy either requirement.

Not only does the SAC fail to allege any ongoing violation of federal law, the injunctive relief it seeks against AG James – an order directing her to "investigate the discriminatory activities of CUNY employees and stop the discriminatory activities" – is invalid because mandamus is not available to compel a discretionary act. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Requiring the New York State Attorney General to investigate CUNY and its alleged discriminatory activities would impermissibly interfere with AG James's prosecutorial discretion.  In *Inmates of Attica Correctional Facility v. Rockefeller,* the Second Circuit upheld the dismissal of a complaint by present and former Attica inmates seeking mandamus to compel federal and state officials to investigate and prosecute state officers for their alleged violations of certain federal and state criminal statutes. 477 F.2d 375 (2d Cir. 1973). The Court noted that "federal courts have traditionally, and to [the Court's] knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made." *Id*. at 379. This Court likewise observed that, like federal law, "New York law reposes in its prosecutors a discretion to decide whether or not to prosecute in a given case, which is not subject to review in state courts. *Id*. at 382. The Court accordingly concluded that "the problems inherent in the task of supervising prosecutorial decisions do not lend themselves to resolution by the judiciary." *Id*. at 381. The same reasoning compels dismissal of Plaintiff's claims here. Plaintiff's claims against AG James in her official capacity are thus barred by the Eleventh Amendment and should be dismissed.

### B.  Plaintiff Fails to State a Claim Against AG James in her Individual Capacity

As outlined above, *see* Point I at p. 7-11, to make out a claim for individual liability under §§ 1981 and 1983, a plaintiff must affirmatively link the defendant with the discriminatory action, *Patterson*, 375 F.3d 229, and establish the defendant's personal involvement in the alleged violation, *Hastings on Hudson Union Free School District*, 365 F.3d 122. Plaintiff cannot do either. The sole basis for Plaintiff's claim against AG James appears to be the allegation that "[a]t all times relevant herein, James is the Attorney General of New York." SAC at ¶ 50.[10]  However, it is well-established that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Esquilin v. Schriro*, 2014 WL 2795408 at *5 (S.D.N.Y. 2014) ("Plaintiff's argument in his opposition that the complaint sufficiently alleges [DOC Commissioner] Schriro's personal involvement merely because she creates and enforces the DOC's policies and procedures is conclusory and insufficient.").

Moreover, Plaintiff's assertion about James is demonstrably false. According to the New York State Board of Elections, James was elected New York State Attorney General on November 6, 2018 and assumed office on January 1, 2019.[11]  *See* https://www.elections.ny.gov/NYSBOE/elections/2018/general/2018AttorneyGeneral.pdf. Because Plaintiff's allegations solely concern events that allegedly occurred between February 1, 2015 and April 28, 2016, well before AG James was elected, Plaintiff cannot establish the personal

---

[10] This allegation is patently false. Indeed, Plaintiff named then-Attorney General Eric Schneiderman as a defendant in her Amended Complaint and made the same allegation about him. *See* ECF Doc. 31 at ¶ 50.

[11] The Court "must take judicial notice of the days of public general elections of [elected officials]… as well as the times of the commencement of the sitting of those [elected officials], and of the dates when their acts take effect. *Mills v. Green*, 159 U.S. 651, 658 (1895). *See also Piccolo v. New York City Campaign Finance Bd.*, 2007 WL 2844939 at *2 n2 (S.D.N.Y. 2007) (taking judicial notice of election dates and results on a motion to dismiss).

involvement that is required to sustain a claim of individual liability, and Plaintiff's claims asserted against AG James in her individual capacity should be dismissed.

### CONCLUSION

For the forgoing reasons, defendants the CUNY Board, Milliken, Seals, Raab, Nord, and AG James respectfully request that the Court grant this motion and dismiss the claims against them. Defendants further request that such dismissal be with prejudice because Plaintiff has now had two chances to attempt to submit viable claims in this matter (including two opportunities to amend her complaint). *Fekete v. County of Chenango*, 303 Fed. Appx. 932, 933 (2d Cir. 2008) (upholding dismissal of Section 1983 claim with prejudice because *pro se* plaintiffs were afforded two opportunities to amend their complaint).

Dated: New York, New York
       December 6, 2019

LETITIA JAMES
Attorney General of the
  State of New York
<u>Attorney for CUNY Defendants</u>
<u>The CUNY Board, Milliken, Raab, Seals,</u>
<u>Nord, and James</u>

By:

_____/s/ Johane Severin_____
Johane Severin
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8565
Johane.Severin@ag.ny.gov