# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FAIGY RACHEL WEISS,

                              Plaintiff,

            -v-

CITY UNIVERSITY OF NEW YORK, et al.,

                              Defendants.

**1:17-cv-03557-VSB**

**JURY TRIAL DEMANDED**

## PLAINTIFF FAIGY RACHEL WEISS'
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULES 12(B)(6) AND 21 OF THE FEDERAL RULES OF CIVIL PROCEDURE



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 - 18 - 20

2020 MAR 19  AM 11: 55

SDNY PRO SE OFFICE
RECEIVED

**Contents**

PRELIMINARY STATEMENT ................................................................................................... 1

INTRODUCTION ...................................................................................................................... 1

STANDARD OF REVIEW ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

I. THE SECOND AMENDED COMPLAINT ALLEGES SUFFICIENT FACTUAL MATTER
   TO STATE A CLAIM TO RELIEF AGAINST THE CUNY BOARD MEMBERS,
   MILLIKEN, RAAB, AND NORD ARE PROPER PARTIES ................................................. 4

   A.   The CUNY Board Members Are Proper Parties................................................................ 7

   B.   Plaintiff's Claims Against Milliken Should be Maintained............................................... 9

   C.   Plaintiff's Claims Against Raab Should be Maintained .................................................. 10

   D.   Plaintiff's Claims Against Nord Should be Maintained .................................................. 12

II. PLAINTIFF'S FOURTEENTH AMENDMENT BASED CLAIMS ARE ADEQUATELY
    PLEADED AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY .. 13

   A.   Plaintiff's Clearly Established Fourteenth Amendment Rights Were Violated ............... 13

   B.   Reasonable University Officials Would Have Understood that They Violated Plaintiff's
        Rights .............................................................................................................................. 15

   C.   Defendants Violated Plaintiff's Establishment Clause Rights......................................... 16

III. PLAINTIFF ADEQUATELY STATES A CLAIM FOR RELIEF AGAINST LETITIA
     JAMES .............................................................................................................................. 17

IV. PLAINTIFF CLAIMS FOR RELIEF UNDER NEW YORK STATE HUMAN RIGHTS
    LAW SHOULD NOT BE DISMISSED .............................................................................. 18

V. CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................3, 8

*Clements v. Nassau County,*
    835 F.2d 1000 (2d Cir. 1987)................................................................................13, 14

*Colon v. Coughlin,*
    58 F.3d 865 (2d Cir. 1995).............................................................................................4

*Fisher v. University of Texas,*
    136 S. Ct. 2198 (2016).................................................................................................15

*Fisher v. University of*
    Texas, 570 U.S. 297, 311-12 (2013)...........................................................................15

*Grutter v. Bollinger,*
    539 U.S. 306 (2003).....................................................................................................15

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982).....................................................................................................13

*Johnson v. Holder,*
    564 F.3d 95 (2d Cir. 2009).........................................................................................3, 7

*Joyner v. Greiner,*
    195 F. Supp. 2d 500 (S.D.N.Y. 2002).........................................................................12

*Lee v. Weisman,*
    505 U.S. 577 (1992) (Souter, J. concurring)...........................................................17, 18

*Marom v. City of New York,*
    2016 WL 916424 (S.D.N.Y. Mar. 7, 2016) .................................................................4

*McKenna v. Wright,*
    386 F.3d 432 (2d Cir. 2004).........................................................................................13

*Melito v. Am. Eagle Outfitters, Inc.,*
    No. 14-CV-2440 (VEC), 2016 WL 6584482 (S.D.N.Y. Nov. 7, 2016) .......................6

*Nielsen v. Rabin,*
    746 F.3d 58 (2d Cir. 2014)..............................................................................................3

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)...............................................................................................3

*Sash v. U.S.*,
    674 F. Supp. 2d 531 (S.D.N.Y. 2009)...............................................................................4, 6

*Scott v. Fischer*,
    616 F.3d 100 (2d Cir. 2010)..............................................................................................16

*United States v. Carr*,
    557 F.3d 93 (2d Cir. 2000)................................................................................................19

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir.2002)..........................................................................................3, 19

*Walker v. Schult*,
    717 F.3d 119 (2d Cir.2013)...............................................................................................3

**STATUTES**

N.Y. EXEC LAW § 292 (37).....................................................................................................19

N.Y. EXEC LAW § 296 (6)........................................................................................................19

**OTHER AUTHORITIES**

CUNY Bylaws, Article VIII §§ 8.1 and 8.5,
    https://policy.cuny.edu/bylaws/article-viii/.........................................................................11

CUNY Bylaws, Article VIII, Section 8.5, https://policy.cuny.edu/bylaws/article-
    viii/........................................................................................................................................9

CUNY Manual of General Policy, Policy 5.03, https://policy.cuny.edu/general-
    policy/article-v/#policy_5.03...............................................................................................9

## PRELIMINARY STATEMENT

Plaintiff Faigy Rachel Weiss submits this opposition to the Motion to Dismiss the Second Amended Complaint (ECF No. 104, "Motion") filed by Defendants The City University of New York ("CUNY"); "Members of The City University of New York Board of Trustees" ("the CUNY Board"); James Milliken ("Milliken"), former Chancellor of CUNY; Nireata D. Seals ("Seals"), former Assistant Dean of Enrollment Management and Records at the Silberman School of Social Work ("the Silberman School") at Hunter College; Jennifer Raab ("Raab"), President of Hunter College; Roberta Nord ("Nord"), University Director of Student Advocacy; and Letitia James, Attorney General for the State of New York ("AG James").

## INTRODUCTION

Plaintiff Faigy Rachel Weiss, brought this action asserting several causes of action arising out of Defendants' discriminatory denial of her application for admission to the Masters of Social Work Program at the Silberman School of Social Work at the City University of New York's Hunter College. On August 29, 2019, Ms. Weiss filed a Second Amended Complaint, setting forth specific factual allegations concerning Defendants, CUNY, the CUNY Board, Milliken, Seals, Rose, Raab, Nord, and James. Among other things, in the SAC, Ms. Weiss describes in detail her application to the Silberman School, the discriminatory admissions process to which she was subjected, each Defendants' role in that process, and the control Defendants exercised over adopting and administering the admissions process. Ms. Weiss also recounts how CUNY singled her out in a group interview, and later denied her application.

After the interview, CUNY denied Ms. Weiss' application. Ms. Weiss informed Dean Rose that CUNY discriminated against her in denying her application. Although Dean Rose disagreed, he told Ms. Weiss that the Silberman School conducts group interviews to "weed out

1

conservatives, because Trumps and Cruzes can't be social workers," and that "Jews from religious backgrounds are too conservative to be social workers." These statements and Ms. Weiss' subsequent examination of the admissions process as it applied to her and others led her to conclude that there was a pattern and practice of discriminatory behavior in admissions at the Silberman School.

Defendants move to dismiss certain parties and causes of action from the SAC. Defendants argue that the SAC fails to state a claim upon which relief can be granted with respect to the CUNY Board Members, Milliken, Raab, Nord, and James; and that the CUNY Board, Milliken, Raab, Seals, and Nord are entitled to qualified immunity. As discussed herein, Defendants' motion should be denied at least because: (i) the SAC sets forth sufficient facts to demonstrate a plausible claim for relief against Defendants; (ii) the Court previously considered substantially identical allegations in the Amended Complaint and found them to be sufficient; (iii) Defendants' qualified immunity defense raises factual issues which are in dispute and cannot be decided in their favor at the motion to dismiss stage; and (iv) Defendants are not subject to qualified immunity because they violated Ms. Weiss' clearly established right to be free from discrimination and reasonable officials in Defendants position would have understood that the admissions process adopted and applied would violate such rights.

Finally, although the Court previously dismissed Ms. Weiss' discrimination claims under New York Human Rights Law because at the time that law did not apply to discrimination at public universities. That law was amended to specifically apply to public universities. Ms. Weiss respectfully requests reconsideration of her claims under the NYHRL.

2

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion, the Court should "should accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "[t]he plausibility standard is not akin to a probability requirement." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Nielsen v. Rabin*, 746 F.3d at 62. "Where, as here, the complaint was filed pro se, it must be construed liberally to raise the strongest arguments it suggests." *Id.* at 63 (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.2013)).

"The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks and citation omitted). The law of the case doctrine, however, "does not rigidly bind a court to its former decisions." 564 F.3d at 99 (internal citation omitted). "A court may depart from the law of the case for cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002)) (internal quotations omitted).

3

## ARGUMENT

## I.   THE SECOND AMENDED COMPLAINT ALLEGES SUFFICIENT FACTUAL MATTER TO STATE A CLAIM TO RELIEF AGAINST THE CUNY BOARD MEMBERS, MILLIKEN, RAAB, AND NORD ARE PROPER PARTIES

Defendants contend that Ms. Weiss' claims against the CUNY Board, Milliken, Raab, and Nord supposedly fail as a matter of law.  Motion at 7.  Defendants argue that since the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2002), "the standard for showing a supervisor's personal involvement in a constitutional violation has been heightened," beyond the five factors set forth in *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).  Motion at 8. Defendants contend the new standard "imposes liability only where that supervisor directly participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred." *Id.* (citing *Sash v. U.S.*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)).  Defendants further argue that "many courts have found that the second, fourth, and fifth *Conlon* factors are no longer viable.  Motion at 8 (citing *Marom v. City of New York*, 2016 WL 916424, at \*15 (S.D.N.Y. Mar. 7, 2016) (referring to *Colon,* 58 F.3d at 873)).

The Second Amended Complaint ("SAC") sets forth sufficient facts demonstrating a claim to relief against Defendants even under a purportedly *heightened* standard.  That is, the defendants in question were personally involved in discriminating against Ms. Weiss and/or directly established an unconstitutional admissions process—the first and third *Conlon* factors, which Defendants contend remain viable.  ***First***, for example, the SAC alleges that "[t]he Board Defendants are responsible for the adoption and authorization of policies that govern students and student organizations at the College, including the admissions policy of the undergraduate and graduate schools."  SAC at ¶20.  And the SAC further alleges "[t]he Board Defendants have approved a discriminatory admissions process and have not made any changes to ensure compliance with federal and state laws."  *Id.* at ¶21.

4

*Second*, the SAC ties Defendants Millikan, Raab, and Nord to the discriminatory conduct against Ms. Weiss. For example, the SAC alleges that Chancellor "Milliken actually participated in and aided and abetted conduct giving rise to the discrimination claims." *See, e.g., id.* at ¶¶26-30. Further, the SAC alleges that President Raab is responsible for enacting and enabling a discriminatory admissions process (*see, e.g., id.* at ¶¶42-45), and that "Nord aided and abetted in the discriminatory admissions process," (*see, e.g., id.* at ¶¶46-49). Moreover, Dean Rose admitted the discriminatory purpose of the interview process and the denial of Ms. Weiss' admission stating "[t]he Silberman School conducted the group admissions interviews to 'weed out conservatives, because Trumps and Cruzes can't be social workers'" and that "Jews from religious backgrounds are too conservative to be social workers." *Id.* at ¶99.

*Third*, the SAC sets forth sufficient facts to demonstrate that the admissions process at the Silberman School is discriminatory. Based on information from the Seals Dissertation, Hunter College Factbooks, and CUNY's response to FOIL requests, the SAC alleges that the Silberman School systematically used race and/or skin color to determine admissions. *Id.* at ¶¶113-127. Among other things, the SAC alleges that the Silberman School: (i) applies lower standards for admissions of minority applicants (*id.* at ¶114); (ii) "utilizes racial balancing and/or quotas in its admissions process, to ensure that there is an equal number of students from under-represented minorities and white or other non-minority students in each year,"; (*id.* at ¶115) and (iii) "has a dual admissions process and uses skin color/ethnicity as a decisive factor in the admissions process," (*id.* at ¶116). The SAC then analyzes the admissions data for several years and sets forth sufficient facts to demonstrate that the admissions process which was approved and administered by Defendants is discriminatory and resulted in a pattern of discrimination. *Id.* at ¶¶113-127.

**Fourth**, the Court previously considered this very issue and the sufficiency of these allegations in denying Defendants' Motion to Dismiss the Amended Complaint (ECF Nos. 36-38). *See* ECF No. 65 at 12-15. Based on the same allegations detailed above, the Court found that the "Amended Complaint plausibly connects the rejection of Plaintiff's application to the MSW Program to a discriminatory animus based on race, national origin, and/or skin color." *Id.* at 14. The Court noted:

> Plaintiff alleges that each of these individuals had the ability to implement, reform, and/or oversee the admissions process. . . .I find, for purposes of this motion, that Plaintiff has proffered sufficient facts demonstrating the personal involvement of Defendants Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of Trustees.

*Id.* at 12. The Court continued:

> Assuming, as I must at this stage of the litigation, that Dean Rose made these comments and that they are true, Plaintiff has sufficiently claimed that Defendants, all with the alleged ability to control and influence the MSW Program's admissions procedures and policies, either directly established an unconstitutional admissions process, or allowed its continuance.

*Id.* at 14. Thus, the Court applied the third *Colon* factor and found that Ms. Weiss' allegations were sufficient to state a claim for supervisor liability—"creating a policy or custom under which the unconstitutional practices occurred." *See Sash v. U.S.*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009).

Further, this Court's Order on Defendants' Motion to Dismiss the Amended Complaint is the law of the case. *See, e.g., Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2016 WL 6584482, at *3 (S.D.N.Y. Nov. 7, 2016) (applying law of the case doctrine in the context of a motion to dismiss and declining to allow defendant to relitigate issues already decided by the court). The Court should adhere to its prior decision and reject Defendants' attempt to relitigate this issue given that there is no cogent or compelling reason to depart from its former ruling. To

6

the contrary, Defendants cannot demonstrate the requisite intervening change in law as even the cases Defendants now rely on in their motion to dismiss predate the filing of the original complaint in this action and Ms. Weiss' application to Hunter College.[1] Nor can the Defendants demonstrate the availability of new evidence, or the need to correct a clear error or prevent manifest injustice that would support the Court's reconsideration of its prior decision. *See Johnson*, 564 F.3d at 99.

*Finally*, Ms. Weiss would be unduly prejudiced were the Court to grant Defendants' motion challenging the very allegations the Court previously found sufficient to state a claim. ECF No. 65 at 12-15. Ms. Weiss reasonably relied on that decision in maintaining in the SAC the allegations that the Court previously found sufficient to state a claim. Although Ms. Weiss believes the Court should deny Defendants' Motion to Dismiss, should the Court disagree, Ms. Weiss respectfully requests leave to amend the complaint with respect to the allegations the Court previously found sufficiently stated a claim for relief.

## A. The CUNY Board Members Are Proper Parties

As discussed above, the SAC pleads sufficient facts to demonstrate the personal involvement / supervisor liability of CUNY Board Members. Defendants' motion to dismiss certain of the CUNY Board Members rests on a fundamental flaw—"that the discriminatory actions . . . ended on or about April 28, 2016, when Defendant Nord allegedly sent Plaintiff a letter on behalf of the Chancellor's Office denying that CUNY had discriminated against her." Motion at 9 n.6. Defendants cite no authority for their proposition that a party's denial of discriminatory action ends the discrimination the party is alleged to have perpetrated. It is on

---

[1] Defendants rely on *Ashcroft v. Iqbal*, U.S. 662 (2009); *Grullon v. City of New Haven*, 720 F.3d 133 (2d. Cir. 2013); and *Sash v. U.S.*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009) to argue that the standard for showing a supervisor's personal involvement in a constitutional violation has been heightened. Motion at 8.

that faulty and unsupported premise that Defendants base their contention that "the terms of William C. Thompson, Barry F. Schwartz, Michael Arvanites, Henry T. Berger, Lorraine Cortés-Vazquez, Kevin Kim, Robert F. Mujica, Ken Sunshine, Sandra Wilkin, or Chika Onyejiukwa did not begin until *after* the actions challenged in the SAC," and that they should therefore be dismissed from this action. *Id.* at 9.

The discriminatory actions alleged in the SAC are continuing. The discrimination against Ms. Weiss began when she submitted her application to the MSW Program at the Silberman School.[2] CUNY, however, did not end that discrimination by denying that it ever took place. Ms. Weiss was denied admission to the MSW Program based on a discriminatory process—that discrimination continues so long as it has not been remedied.

The remaining CUNY Board Members are also proper parties.[3] Defendants argue that Ms. Weiss offers no plausible support for the contention that the CUNY Board Defendants "on the allegation that they adopted the admissions procedures at issue for the purpose of violating Plaintiff's Fourteenth Amendment rights." Motion at 10 (citing SAC at ¶20). This is not so. Ms. Weiss alleges that "[t]he members of the CUNY Board of Trustees are responsible for adopting bylaws and policies for CUNY." SAC ¶17. Ms. Weiss further alleges that "[t]he Board Defendants are responsible for the adoption and authorization of policies that govern students and student organizations at the College, including the admissions policy of the undergraduate and graduate schools." Indeed, these allegations are sufficient to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial

---

[2] In fact, the SAC alleges that the discriminatory admissions process was in place for several years before Ms. Weiss applied for admission. *See, e.g.,* SAC at ¶¶ 113-127.

[3] According to Defendants, the remaining CUNY Board Members are: Wellington Z. Chen, Una S. T-Clarke, Rita DeMartino, Fernando Ferrer, Judah Gribetz, Mayra Linares-Garcia, Brian D. Obergfell, Jill O'Donnell-Tormey, Charles A. Shorter, and Katherine M. Conway. Motion at 10.

8

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Moreover, Defendants cannot credibly dispute that the CUNY Board is involved in the adoption and authorization of admissions policies. For example, Defendants cite statute, which recognizes that the CUNY Board sets guidelines for admission. N.Y. Educ. § 6201(5) ("In its urban environment this commitment should be evident in *all the guidelines established by the board of trustees for the university's operation, from admissions* and hiring to contracting.") (emphasis added). CUNY's Bylaws and Manual of General Policy further define the Board's role in adopting and authorizing admissions policies. *See* CUNY Bylaws, Article VIII, Section 8.5, https://policy.cuny.edu/bylaws/article-viii/; CUNY Manual of General Policy, Policy 5.03, https://policy.cuny.edu/general-policy/article-v/#policy_5.03. Thus, Ms. Weiss' allegations concerning the Board's involvement in the admissions process are plausible and consistent with New York Statute and CUNY's bylaws and policies.

Finally, as the Court previously found, Ms. Weiss' allegations that the CUNY Board, among others, "had the ability to implement, reform, and/or oversee the admissions process" demonstrates the personal involvement/supervisor liability of the CUNY Board in that process and the discriminatory actions resulting therefrom. ECF No. 65 at 12. Accordingly, the CUNY Board Members are proper parties and the Defendants' Motion to dismiss with respect thereto should be denied.

**B.**     **Plaintiff's Claims Against Milliken Should be Maintained**

Contrary to Defendant's contentions, the SAC pleads sufficient facts from which the Court may plausibly infer that Milliken was involved in the decision to deny Ms. Weiss admission and was involved in developing and sanctioning the admission policy at issue. The SAC alleges that Milliken was the Chancellor of the City University of New York. SAC at ¶26.

9

The SAC further alleges that "Milliken actually participated and aided and abetted the conduct giving rise to the discrimination claims" alleged. *Id.* ¶28. The SAC also sets forth that Ms. Weiss emailed Milliken's office—the Office of the Chancellor of CUNY—to appeal the decision denying her admission. *Id.* at ¶108. Still further, Ms. Weiss received a letter from Nord, on behalf of the Chancellor, denying that CUNY had discriminated against Ms. Weiss and stating "the group interview 'follows uniform guidelines which have been in place for some time and were not altered or adjusted prior to [Ms. Weiss'] interview.'" *Id.* at ¶¶109-111. In addition, the SAC alleges that Milliken's statements concerning DACA recipients demonstrate that CUNY provides certain opportunities and benefits to DACA recipients that are not available to American born citizens. *Id.* at ¶29. These allegations, together with Dean Rose's statements concerning the discriminatory purpose of the admissions interview, demonstrate that Milliken, as Chancellor, had the ability to control and influence the MSW Program's admissions procedures and policies and either directly established an unconstitutional admissions process, or allowed its continuance.

Accordingly, the Court should deny Defendants' motion to dismiss Milliken from this action.

## C. Plaintiff's Claims Against Raab Should be Maintained

President Raab is a proper party and should not be dismissed from this action for reasons similar to those set forth with respect to the CUNY Board Members and Milliken. Defendants contend that "Plaintiff failed to plead any factual allegations that would raise her right to relief even to a speculative level." Motion at 12. Defendants, however, recognize that Ms. Weiss alleged that "Raab is responsible for the enactment, enforcement, administration, and policymaking that is associated with the admissions process at Hunter." *Id.* (citing SAC at ¶ 43). And the SAC further alleges that "Raab enabled a discriminatory admissions process." SAC at

10

¶44. Defendants inexplicably dismiss those allegations even though the Court previously found them sufficient to demonstrate personal involvement and/or supervisor liability of Raab in the admissions process. ECF No. 65 at 12.

The allegations concerning President Raab's involvement in the admissions process are plausible given Raab's position as President of CUNY. Indeed, these allegations are consistent with CUNY's bylaws and policies. *See, e.g.,* CUNY Bylaws, Article VIII §§ 8.1 and 8.5, https://policy.cuny.edu/bylaws/article-viii/ (setting forth that faculty is responsible for setting admissions policy and further defining "faculty rank" to include the presidents, like Raab). Defendants, however, do not even attempt to explain how the allegations of Raab's involvement in "enabling a discriminatory admissions process," taken as true, are insufficient to demonstrate Raab's personal involvement and/or supervisor liability in that process. Motion at 12. Instead, Defendants merely state in conclusory fashion that those allegations fail to meet the threshold. *Id.*

In addition, the SAC alleges that Raab's statements concerning DACA recipients, like the statements made by Milliken, demonstrate that CUNY provides certain opportunities and benefits to DACA recipients that are not available to American born citizens. SAC at ¶44. Contrary to Defendants contention, Ms. Weiss' allegations are not "bigoted conjecture." Motion at 10. Rather, Such statements, from the President of CUNY (and other high-ranking faculty), have the potential to directly or indirectly affect the admissions process. And although Defendants dispute the factual accuracy of Ms. Weiss' allegations concerning Raab's statements, taken as true and together with the other allegations against Raab discussed above, they demonstrate Raab's personal involvement in or control over a discriminatory admissions process

11

which improperly considers race, color, religion, national origin and/or imputed political opinion. Therefore, Raab is a proper party.

Defendants further contend that President Raab's letter denying that Hunter College engaged in discrimination is insufficient to establish personal involvement. Motion at 13. Defendants argue that "[c]ourts in the Second Circuit have held that the affirmation of the denial of a grievance is insufficient to establish personal involvement . . . in a constitutional violation." *Id.* (citing *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)). *Joyner*, however, is distinguishable from the facts of this case. In *Joyner*, the *only* allegation made against the superintendent of the prison where the plaintiff was incarcerated was that the superintendent "affirmed denial of a grievance against the two doctors for failing to provide care." *Joyner*, 195 F. Supp at 506. There, the court noted that the superintendent was not a doctor and was "permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners." *Id.* In contrast, the SAC as described above, makes several allegations tying President Raab to the creation and administration of the allegedly discriminatory admissions process—Raab's letter denying discrimination is but one of the allegations against her. SAC at ¶¶42-45, 99. Thus, *Joyner* is inapposite.

**D.      Plaintiff's Claims Against Nord Should be Maintained**

Similarly, the SAC pleads sufficient facts from which the Court may plausibly infer that Nord was involved in the discriminatory admissions process. For example, the SAC alleges that Nord was the University Director of Student Advocacy at CUNY (SAC at ¶46) and that "Nord aided and abetted in the discriminatory admissions process and failed to take the appropriate actions to ensure compliance with federal and state laws" (*id.* at ¶48). Further, the SAC sets forth that Ms. Weiss emailed Milliken's office—the Office of the Chancellor of CUNY—to appeal the decision denying her admission. *Id.* at ¶108. And, that Ms. Weiss received a letter

from Nord, on behalf of the Chancellor, denying that CUNY had discriminated against Ms. Weiss and stating "the group interview 'follows uniform guidelines which have been in place for some time and were not altered or adjusted prior to [Ms. Weiss'] interview.'" *Id.* at ¶¶109-111. These allegations, together with Dean Rose's statements concerning the purpose of the admissions interview, demonstrate that Nord was sufficiently involved in the MSW Program's admissions procedures and policies and either directly established an unconstitutional admissions process, or allowed its continuance. Accordingly, the Court should deny Defendants' motion to dismiss Nord from this action.

## II. PLAINTIFF'S FOURTEENTH AMENDMENT BASED CLAIMS ARE ADEQUATELY PLEADED AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

### A. Plaintiff's Clearly Established Fourteenth Amendment Rights Were Violated

"[A] a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *Id.* Thus, to secure dismissal of Ms. Weiss' claim on the ground of qualified immunity, Defendants must show, viewing the allegations in the light most favorable to Ms. Weiss, that she has failed to plead sufficient facts "to state a claim to relief that is plausible on its face" that the CUNY Board, Milliken, Raab, Seals, and Nord "violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Defendants cannot make that showing.

In addition, Defendants rely on *Clements v. Nassau County,* 835 F.2d 1000 (2d Cir. 1987), for the proposition that courts are expected to show judicial deference to the decisions of

13

university administrators.  Motion at 15.  *Clements*, however, is not applicable as it involved an appeal from a grant of summary judgment that plaintiff's inability to graduate was not due to bad faith grading and evaluation of her clinical performance.  *See Clements*, 835 F.2d 1000.  There, the Second Circuit held that "[w]hen courts review the substance of academic decisions . . . they should show great respect for the teacher's professional judgment."  *Id.* at 1005.  Here, Ms. Weiss alleges discriminatory animus on the part of the Defendants as the basis for denial of her application.  The actions of the Defendants do not constitute an "academic decision" of the kind referenced in *Clements*, nor are the cases in the same procedural posture.  At the motion to dismiss stage, without discovery and evidence, the Court cannot evaluate the substance of Defendants decisions.  The SAC alleges that Defendants acted illegally—the Court owes them no deference.

Defendants do not dispute that Ms. Weiss had a clearly established right to be free from discrimination pursuant to the Fourteenth Amendment.  Rather, Defendants contend that CUNY's admission process was holistic, did not violate a clearly established constitutional right, and that "no reasonable official in Defendants' positions would have understood that their conduct violated such a right."  Motion at 15.  But these are factual issues that are in dispute.

The factual allegations in the SAC, and reasonable inferences drawn therefrom, demonstrate that Ms. Weiss was wrongfully discriminated against on the bases of her race, color, religion, national origin and/or imputed political opinion, and that CUNY's admission process was not holistic.  For example, the SAC alleges Defendant Dean Rose told Ms. Weiss that the Silberman School conducts group admission interviews "to weed out conservatives" and that "Jews from religious backgrounds are too conservative to be social workers."  *See* SAC at ¶99.  Taken as true, Dean Rose's statements defeat Defendants' immunity defense and contradict their

14

narrative.  Indeed, the Court previously considered Dean Rose's statements regarding the purpose of group interviews and found that they "demonstrate a racially discriminatory intent or purpose in the admissions process to support a claim for an Equal Protection Clause violation . . . against Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of Trustees." ECF No. 65 at 14-15.  Defendants contend that they oversaw, approved, and affirmed the integrity of a holistic admissions process.  But these are issues of fact that are in dispute and that Defendants cannot prove by attorney argument at the motion to dismiss stage.  Motion at 16-17.  Instead, granting Ms. Weiss all reasonable inferences from the facts alleged, it follows that an admissions process based on discriminatory intent is ***not*** holistic.  To the contrary, the practices administered and conducted by the Defendants ultimately resulted in the denial of Ms. Weiss' admission to the Silberman School on the bases of her Jewish ethnicity, race, color, religion, national origin and/or imputed political opinion. SAC at ¶93.  The individual and collective actions of the Defendants violated Ms. Weiss' clearly established right to be free from discrimination.

**B.      Reasonable University Officials Would Have Understood that They  Violated Plaintiff's Rights**

Reasonable university officials would have understood that the actions alleged by Ms. Weiss were violations of her constitutional rights. The Supreme Court has held that university admissions processes that treat race as "a relevant feature within the broader context of a candidate's application" may be found proper within the context of the Fourteenth Amendment if they are narrowly tailored and can withstand federal courts' strict scrutiny standard of review. *Grutter v. Bollinger*, 539 U.S. 306, 337 (2003); *Fisher v. University of Texas*, 136 S. Ct. 2198, 2207-08 (2016). In all other circumstances, consideration of an applicant's race in university admissions is unconstitutional. *Fisher v. University of* Texas, 570 U.S. 297, 311-12 (2013). "The unconstitutionality of [a] law or course of conduct will . . . be treated as clearly established if

15

decisions by this or other courts clearly foreshadow a particular ruling on the issue." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

Under this well-established precedent, reasonable university officials would have understood that Ms. Weiss' rights were violated by the actions of the Defendants. Defendants, however, attempt to focus the inquiry on only the questions that were asked of Ms. Weiss during the group interview. Motion at 17-18. Although Defendants attempt to explain away those questions as innocuous—which Ms. Weiss does not concede—they fail to address the other allegations in the complaint.[4] Significantly, Defendants do not identify what aspect of their "holistic" admissions process is served by "weed[ing] out conservatives" or making blanket statements about "Jews from religious backgrounds." ECF No. 104 at 16; SAC at ¶99.

Further, based on information from the Seals Dissertation and Hunter College Factbooks, the SAC analyzes applications and class composition data for several years. SAC at ¶¶113-127. The SAC alleges that CUNY's admissions process is discriminatory because, for example, it utilizes racial balancing and/or quotas to ensure an equal number of minority and non-minority students regardless of their proportion to applicants. *Id.* Reasonable university officials in Defendants' positions would have understood based on this data, that there was a pattern of discrimination and that the admissions process discriminated against Ms. Weiss and other similarly situated applicants.

## C.      Defendants Violated Plaintiff's Establishment Clause Rights

Defendants misconstrue federal precedent to argue that even if Ms. Weiss' religion was considered when her application was being evaluated, it did not violate a clearly established right

---

[4] Defendants' explanations raise factual issues as to the purpose of the questions asked during the group interview. Motion at 16. Defendants' explanations are unsupported attorney argument, which should be disregarded.

because government "is not precluded from taking religion into account." Motion at 18 (citing *Lee v. Weisman*, 505 U.S. 577, 627 (1992) (Souter, J. concurring). But read in context, *Lee* stands for the proposition that the reasonable accommodation of individuals' free exercise of religion by state actors does not violate the Establishment Clause. *Id. Lee* does not sanction improperly weighing Defendants' religious background to deny her admission because the school disfavors "Jews from religious backgrounds." SAC at ¶99. Indeed, the Court previously found that Ms. Weiss' "claims that admissions interviews were held, at least in part, to discern and weed out applicants based on religion" allege an Establishment Clause violation at this stage. ECF No. 65 at 18. Accordingly, Defendants violated Ms. Weiss' clearly established right.

Lastly, This Court has previously addressed the viability of Ms. Weiss' Fourteenth Amendment claims under a failure-to-plead challenge, finding that the facts alleged "plausibly [connect] the rejection of Plaintiff's application to the MSW Program to a discriminatory animus" based on race. ECF No. 65 at 13-15 (ECF No. 65). That the Defendants have put forth a new affirmative defense in the form of qualified immunity should not change the Court's rationale. Taking Ms. Weiss' allegations as true, as is required at this stage, the Court should find that the claims are sufficiently pleaded and that the Defendants are not entitled to qualified immunity.

## III.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR RELIEF AGAINST LETITIA JAMES

The Defendants cannot demonstrate that Ms. Weiss' complaint fails to plead sufficient facts to state a claim for relief against Letitia James. In support of their present motion, Defendants assert that Ms. Weiss has failed to affirmatively link Ms. James's individual liability with the discriminatory action alleged. Motion at 19-22. However, the facts stated on the face of the SAC, viewed in the light most favorable to Ms. Weiss, plainly allege enablement and

17

facilitation of discriminatory activity on the part of Ms. James which rises above the threshold required for pleadings. *See* SAC ¶¶50-57. Ms. James is "responsible to ensure compliance" with the law in the State of New York. *Id.* at ¶51. Ms. James "has not provided American born citizens with the same legal services provided to non-citizens/immigrants" and her representation of the Defendants in this action is "enabling CUNY to discriminate" as alleged by Ms. Weiss. *Id.* at ¶¶53-55.

Further, granting Defendants' motion at this early stage, before the parties have been able to conduct adequate discovery, would be premature. Ms. Weiss is confident that information produced in discovery will provide even more sufficient evidence to substantiate her claims for relief from Ms. James. Accordingly, the Court should deny Defendants' motion with respect to Ms. James.

## IV.   PLAINTIFF CLAIMS FOR RELIEF UNDER NEW YORK STATE HUMAN RIGHTS LAW SHOULD NOT BE DISMISSED

The SAC sufficiently states a claim that Defendants' conduct violated her rights under New York State Human Rights Law, Executive Law §§ 292 and 296. The Court previously dismissed Ms. Weiss' claims for discrimination and aiding and abetting discrimination under New York State Human Rights Law, noting "[w]hile the NYSHRL prohibits discriminatory practices by 'an education corporation or association,' N.Y. Exec. Law § 296(4), that provision applies only to private, non-sectarian education corporations and not public universities or colleges." ECF No. 65 at 23; *see also* ECF 100 at 11-12. However, due to an intervening change in the law, Ms. Weiss respectfully requests that the Court reconsider its prior opinion dismissing the NYSHRL claims which are reasserted in the SAC. *See, e.g.,* SAC at ¶¶169-170.

The law of the case doctrine "holds that when a court has ruled on an issue, that decision should [] be adhered to by that court in subsequent stages in the same case, unless cogent and

18

compelling reasons militate otherwise." *U.S. v. Quintieri*, 306 F.3d 1217, 12225 (2d Cir. 2002). "A court's reconsideration of its own earlier decision in a case may . . . be justified in compelling circumstances," including an intervening change in controlling law or the need to prevent manifest injustice. *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2000). Here, N.Y. EXEC LAW § 296 (4) prohibits any "educational institution" from "deny[ing] the use of its facilities to any person otherwise qualified . . . by reason of his race, color, religion, disability, national origin." N.Y. EXEC LAW § 296 (6). On July 25, 2019, the definition of "educational institution" was amended to include "any public school, including any school district, board of cooperative educational services, public college or public university" effective immediately. N.Y. EXEC LAW § 292 (37). Accordingly, in light of the intervening change in law, the Defendants' ongoing discriminatory practices, and in order to prevent manifest injustice, Ms. Weiss respectfully requests that the Court reconsider its prior dismissal of her claims under the NYSHRL. Ms. Weiss respectfully requests that the Court allow her claims against certain defendants for discrimination under the NYSHRL and for aiding and abetting the same to stand.[5] *See* SAC ¶¶169-70.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

---

[5] At least the following defendants are subject to claims of discrimination under NYSHRL and for aiding and abetting the same: the Members of the City University of New York Board of Trustees, Seals, Rose, Raab, Nord, Milliken, and James, each in their individual capacity.

DATED:  March 18, 2020

Prepared with the assistance of
counsel for submission by
Plaintiff Faigy Rachel Weiss (*Pro se*)

Respectfully submitted,

/s/ Faigy Rachel Weiss
Faigy Rachel Weiss
*Pro se Plaintiff*



# Express

Faisy Rachel Weiss
P.O.B 191104
Brooklyn NY 11219

Pro Se Unit
40 Foley Sq
NY NY

Judge Broderick
1:17-cv-03557-VSB

Small Pa



2020 MAR 19 AM 11:55

Align top of FedEx Express® shipping label her