USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___7/2/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                 :

FAIGY RACHEL WEISS,         :
                                 :

                   Plaintiff,    :

                                 :           17-CV-3557 (VSB)

      - against -         :

                                 :        **OPINION & ORDER**

CITY UNIVERSITY OF NEW YORK, et al.,  :

                                 :

                  Defendants.  :

                                 :

--------------------------------------------------------X

<u>Appearances</u>:

Faigy Rachel Weiss
Brooklyn, NY
*Pro se Plaintiff*

Johane Severin
Erin Patricia Kandel
Steven Leon Banks
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Before me is Defendants' motion to dismiss pro se Plaintiff's Second Amended

Complaint. For the reasons set forth below, Defendant's motion to dismiss is GRANTED in part

and DENIED in part.

## I.    <u>Background[1] and Procedural History</u>

       Plaintiff commenced this action on May 11, 2017 by filing a request to proceed in forma

---

[1] I assume Plaintiff's allegations contained in the Second Amended Complaint, (Doc. 93), to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings. I assume familiarity with the facts as detailed in Section I of my Opinion & Order dated March 18, 2019. (Doc. 65.)

pauperis, (Doc. 1), and a complaint against the City University of New York ("CUNY"), the City University of New York Board of Trustees, Hunter College of the City University of New York, the Silberman School of Social Work at Hunter College, and four CUNY administrators, Nireata Seals, John Rose, Jennifer Raab, and Roberta Nord, alleging various claims of discrimination in connection with the rejection of her application for admission to the "Masters of Social Work" ("MSW") program at the Silberman School of Social Work at Hunter College, (Doc. 2).

As part of the Order of Service dated June 6, 2017, I reviewed the initial complaint based upon Plaintiff's in forma pauperis status, as authorized by 28 U.S.C. § 1915(e)(2)(B), and dismissed on the basis of Eleventh Amendment immunity Plaintiff's (1) § 1981 and § 1983 claims asserted against CUNY, the CUNY Board of Trustees ("CUNY Board"), Hunter College, and the Silberman School, and (2) the § 1981 and § 1983 claims for money damages asserted against Defendants Rose, Raab, Seals, and Nord in their official capacities. (Doc. 5.) I also dismissed Plaintiff's Title VI claims against Defendants Rose, Raab, Seals, and Nord, because as individuals they do not receive federal funding. (*Id.*)

After requesting and receiving several extensions, Plaintiff filed her Amended Complaint on April 13, 2018, against CUNY; the CUNY Board members in their official and individual capacities; Hunter College of CUNY; the Silberman School of Social Work at Hunter College; James Milliken, former chancellor of CUNY, in his individual capacity; and Nireata Seals, John Rose, Jennifer Raab, Roberta Nord, and Eric T. Schneiderman, in their official and individual capacities. (Doc. 31.) On June 19, 2018, CUNY, Milliken, Seals, Rose, Raab and Nord all moved to dismiss the Amended Complaint, (Doc. 36), noting, among other things, that Hunter College and the Silberman School are not suable entities and that CUNY is the only proper institutional defendant, (*id.* 2 n.2). On August 13, 2018, after being served, the CUNY Board

members in their official capacity, Eric T. Schneiderman in his individual capacity, and Barbara D. Underwood, then Acting Attorney General, in her official capacity, filed a motion to dismiss joining the June 19, 2018 motion to dismiss filed by the other Defendants. (Doc. 47.) By Opinion & Order dated March 18, 2019, I dismissed all of Plaintiff's claims except for her (1) Title VI claim against CUNY; (2) § 1983 claims against the CUNY Board, Milliken, Seals, Rose, Raab, and Nord in their individual capacities; and (3) § 1981 claims against the CUNY Board, Milliken, Seals, Rose, Raab, and Nord in their individual capacities ("March 18 Opinion & Order"). (Doc. 65.)

CUNY, the CUNY Board, Milliken, Seals, Rose, Raab, and Nord filed an answer on April 8, 2019. (Doc. 67.) I then held an initial pretrial conference on May 14, 2019, at which Defendants stated their intent to move under Federal Rule of Civil Procedure 12(c) to dismiss most of the remaining claims against Defendants in their individual capacities. Plaintiff indicated a desire to (1) file a second amended complaint and (2) to seek recusal of the Attorney General's Office from this case. During the conference, and subsequently in a written order dated June 6, 2019, I directed Defendants to file their motion to dismiss by June 20, 2019 and granted Plaintiff leave to subsequently file a second amended complaint, and directed Plaintiff to submit a letter requesting the amount of time she would need to do so. (Doc. 75.) I also directed Plaintiff to inform me by letter whether she intended to file a motion seeking removal of the Attorney General's Office from this case, and if so, how much time she would need to file such a motion. (*Id.*) Finally, the parties were directed to meet and confer and submit a proposed case management plan and scheduling order. (*Id.*) On June 10, 2019, I issued an order directing the clerk to attempt to locate pro bono counsel to assist Plaintiff with propounding discovery, (Doc. 76), and on October 18, 2019, pro bono counsel filed their notices of limited appearance, (Docs.

95, 96).

On June 20, 2019, Defendants filed their motion to dismiss the Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 78.) On June 21, 2019, the parties submitted a proposed case management plan that scheduled the close of discovery for February 29, 2020. (Doc. 87.) Subsequently, Plaintiff submitted a letter informing me that she wished to amend her complaint and move for recusal of the Attorney General. (Doc. 88.) By order dated July 1, 2019, I directed Plaintiff to file her recusal motion by July 29, 2019, and her second amended complaint by August 29, 2019. (Doc. 89.)

On July 29, 2019, Plaintiff submitted a letter requesting "permission to attend the MSW graduate program at Hunter College Silberman School of Social Work as a full time student with full tuition waiver/scholarship, living stipend and medical/dental insurance as part of preliminary relief." (Pl.'s 7/29/19 Ltr.)[2] Plaintiff also asserted that it is "a conflict of interest for the attorney general to represent a state employee who has violated CUNY, state, city and federal laws as it contradicts the mission of the NYAG." (*Id.*) On August 5, 2019, Defendants filed a letter opposing this request on the grounds that Plaintiff failed to make the showing required for a preliminary injunction and that her motion to disqualify the Attorney General failed as a matter of law. (Defs.' Opp.)[3] On August 21, 2019, Plaintiff submitted a letter in further support of her request. ("Pl.'s 8/22/19 Ltr.")[4]

On August 29, 2019, Plaintiff filed a Second Amended Complaint that was virtually

---

[2] "Pl.'s 7/29/19 Ltr." refers to Plaintiff's July 29, 2019 letter requesting, among other things, admission to the MSW program at the Silberman School of Social Work. (Doc. 90.)

[3] "Defs.' Opp." refers to Defendants' August 5, 2019 letter in opposition to Plaintiff's July 29, 2019 letter. (Doc. 91.)

[4] "Pl.'s 8/22/19 Ltr." refers to Plaintiff's August 22, 2019 letter in further support of her July 29, 2019 letter requesting admission to the MSW program at the Silberman School of Social Work. (Doc. 92.)

identical to her Amended Complaint, except that references to Eric T. Schneiderman, the former Attorney General of New York, were replaced by references to Letitia James, the current Attorney General of New York. (*See generally* SAC.)[5]

On September 17, 2019, Defendants submitted a letter requesting that I dismiss the claims that I had previously dismissed and that Plaintiff reasserted in the Second Amended Complaint, and also asked that I set a briefing schedule for Defendants to renew their second motion to dismiss. (Defs.' 9/17/19 Ltr.)[6] By order dated October 11, 2019, I (1) denied Plaintiff's request for a preliminary injunction; (2) denied Plaintiff's request to disqualify the Attorney General's Office as counsel to Defendants; and (3) granted Defendants' request to dismiss reasserted causes of action in Plaintiff's Second Amended Complaint, but denied Defendants' request that I dismiss the newly asserted cause of action against Attorney General James. (Doc. 100.)

On December 6, 2019, Defendants filed the motion to dismiss Plaintiffs' Second Amended Complaint. (Docs. 101–105.) Plaintiff filed her opposition on March 18, 2020, (Doc. 113), and Defendants filed the reply on April 20, 2020, (Doc. 120).

## II. <u>Legal Standards</u>

### A. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff

---

[5] "SAC" refers to Plaintiff's second amended complaint, filed on August 29, 2019. (Doc. 93.)

[6] "Defs.' 9/17/19 Ltr." refers to Defendants' September 17, 2019 letter requesting, among other things, that I dismiss the re-asserted claims in the Second Amended Complaint that I had previously dismissed. (Doc. 94.)

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Bennett v. City of New York*, 425 F. App'x 79, 80 (2d Cir 2011) (summary order) (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (citation omitted). Nevertheless, dismissal of a pro se complaint

is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).

## B.    *Fed. R. Civ. P. 21*

Pursuant to Rule 21 of the Federal Rules of Procedure, "on its own, the court may at any time, on just terms, add or drop a party. Fed. R. Civ. P. 21. The court may also sever any claim against a party." This rule "affords courts discretion to shape litigation in the interests of efficiency and justice." *Ponce-Melendres v. Doe Orange Cnty. Jail Admin. Off.*, 7:20-CV-7710 (VB), 2020 WL 7343025, at *1 (S.D.N.Y. Dec. 14, 2020) (quoting *Anwar v. Fairfield Greenwich, Ltd.*, 118 F. Supp. 3d 591, 618-19 (S.D.N.Y. 2015). "In determining whether to sever a claim, the court considers the two requirements of Rule 20 and additional factors, including":

> (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence . . . . Put another way, courts look to the logical relationship between the claims and determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

*Clay v. Doe*, No. 20-CV-07692 (PMH), 2020 WL 6151436, at *2 (S.D.N.Y. Oct. 20, 2020) (internal quotation marks omitted.)

### III.  Discussion

#### A.  *Sections 1981 & 1983*

##### 1.  Applicable Law

Section 1981 provides, in pertinent part, that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  To state a claim under § 1981, a plaintiff must allege facts showing that (1) the plaintiff is a member of a racial minority; (2) the defendant intentionally discriminated on the basis of race; and (3) the discrimination concerned one of the statute's enumerated activities.  *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).  It has been recognized that admission to an educational program is sufficiently contractual in nature to fall within the purview of § 1981.  *See Runyon v. McCrary*, 427 U.S. 160, 172 (1976).

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ."  42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."  *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014).  Section 1983 does not establish substantive rights, but provides a means of redress for the deprivation of rights established elsewhere.  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Courts within this Circuit have concluded that "[a]n individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation."

*Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks

omitted).  Personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

## 2. Application

Defendants argue that Plaintiff fails to allege claims for individual liability pursuant to §§

1981 and 1983 because Plaintiff cannot "demonstrate that any member of the CUNY Board,

Milliken, Raab, or Nord knew about, directly participated in, or helped create an admissions

policy with intent to discriminate," and as such, "should be dismissed from this action pursuant

to Rules 12(b)(6) and 21 of the Federal Rules of Civil Procedure because they are not proper

parties to this action."  (Defs.' Mem. 9.)[7]  I essentially rejected these arguments in my March 18,

2019 Opinion & Order.  (Doc. 65 at 20-21.)  However, Defendants ask that I reconsider my

decision to uphold Plaintiff's §§1981 and 1983 claims against Defendants because I relied

exclusively on *Colon v. Coughlin* and may not have sufficiently considered *Ashcroft v. Iqbal's*

heightening of the pleading standard for personal involvement.  (Defs.' Mem. 8–9; Defs.' Rpl.

Mem. 4–5.)[8]

Under the law of the case doctrine, "when a court has ruled on an issue, that decision

---

[7] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint, filed on December 6, 2019.  (Doc. 104.)

[8] "Defs.' Rpl. Mem." refers to the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on April 20, 2020.  (Doc. 120.)

should generally be adhered to by that court in subsequent stages in the same case." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (internal quotation marks omitted). This principle is motivated "by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *Id*. However, "a court's reconsideration of its own earlier decision in a case may . . . be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Id*. According to defendants, *Iqbal* heightened the standard established in *Colon*. Defendants rely primarily on *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) and *Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y 2009) to support their assertion. (Defs.' Mem. 8.)

Although the Second Circuit has acknowledged that the standard articulated in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," *Grullon*, 720 F.3d at 139 (2d Cir. 2013), it "[has] not yet determined the contours of the supervisory liability test . . . after *Iqbal*." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014). In light of this, district courts in this Circuit have not consistently applied the heightened standard Defendants claim has superseded the *Colon* factors. Some District Courts in this Circuit have continued applying all five *Colon* factors. *See Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *El–Hanafi v. United States*, No. 1:13–cv–2072–GHW., 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (On balance, "the majority of the district courts . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent."); *K.A. v. City of New York*, 413 F. Supp. 3d 282, 300 (S.D.N.Y. 2019) (applying all five *Colon* factors in determining

that Plaintiffs failed to adequately allege that individual defendants directly denied their request to be treated by women physicians); *Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2018 WL 4572971, at *8 (S.D.N.Y. Sept. 24, 2018) (applying all five *Colon* factors in determining Plaintiff failed to allege supervisory liability). Other courts have determined that the *Colon* factors apply "where the claim does not require a showing of discriminatory intent . . . insofar as it is 'consistent with the particular constitutional provision alleged to have been violated.'" *Delgado v. Bezio*, No. 09 CIV. 6899(LTS), 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (quoting *Qasem v. Toro*, 737 F. Supp. 2d 147, 151–52 (S.D.N.Y. 2010)); *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) ("The Court agrees with those cases holding that *Colon* still controls with respect to claims that do not require a showing of discriminatory intent."). Other courts first evaluate the claim under the *Colon* standard and, if the claim fails under the *Colon* factors, there is no need to proceed to *Iqbal's* heightened standard. *See Valverde v. Folks*, No. 1:19-cv-08080-MKV, 2020 WL 5849515, at *6 (S.D.N.Y. Sept. 30, 2020).

Defendants have failed to demonstrate that the pleading standards articulated in *Iqbal* constitute an intervening change in law. As noted, many courts in this district continue to apply all five *Colon* factors after *Iqbal*. Therefore, I decline to reverse my prior finding that Plaintiff has sufficiently alleged facts demonstrating that Defendants Rose, Raab, Milliken, Seal, Nord and members of the CUNY Board of Trustees were personally involved in implementing, reforming, and/or overseeing the admissions process.

### B. *Joinder*

Next, Defendants argue that dismissal of the CUNY Board of Trustees, Milliken, Raab and Nord "would not require joinder of other former CUNY Board members or any additional

parties", under Fed. R. Civ. P. 19. (Defs.' Mem. 14.) Defendants argue that none of the factors taken into consideration under Rule 19 are applicable here, because any remaining defendants "can effectively defend the matters at issue in this case and Plaintiff can be made whole without the addition of further defendants." *Id.*

Because I decline to dismiss any of the aforementioned parties from this suit, I need not consider Defendants' Rule 19 arguments.

### C. *Qualified Immunity*

Defendants contend that the CUNY Board Members, Milliken, Raab and Nord are entitled to qualified immunity because 1) Plaintiff has not established a right to an admissions procedure of her choosing or that a holistic admissions procedure violates a clearly established constitutional right; and 2) no reasonable person in Defendants' position would have understood their conduct to be in violation of such a right. *Id.* at 15. For the reasons stated below, I conclude that based upon the allegations in the Second Amended Complaint Defendants are not entitled to qualified immunity.

### 1. Applicable Law

"The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) (internal quotation marks omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent . . . [such] that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018). The Supreme Court has repeatedly cautioned courts "not to define clearly established

law at a high level of generality," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted), but rather to formulate the relevant legal principle with a "high degree of specificity" so that it "clearly prohibit[s] the officer's conduct in the particular circumstances before him," *Wesby*, 138 S. Ct. at 590 (internal quotation mark omitted). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

The applicability of qualified immunity is a fact-specific inquiry, and may only be established at the motion to dismiss stage if it is "based on facts appearing on the face of the complaint." *Felix v. New York Dep't of Corr. & Cmty. Supervision*, No. 16-CV-7978 (CS), 2018 WL 3542859, at *7 (S.D.N.Y. July 23, 2018) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Courts conduct a two-pronged analysis to determine whether qualified immunity applies. *Francis*, 942 F.3d at 139. A plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (internal quotation marks omitted). The district court is within its "sound discretion" to tackle these prongs in the order it deems appropriate. *Id.* at 140.

### 2. Discussion

#### a. Plaintiff's Fourteenth Amendment Claim

First, Defendants contend that Plaintiff's right to equal protection under the Fourteenth Amendment was not violated by the MSW Program's decision to deny her admission. Defendants describe CUNY's admissions policies as the kind of holistic process that is lawful under the Fourteenth Amendment. (Defs.' Mem. 15–16.) Defendants further assert that the admissions process was, as is required by law, narrowly tailored to "the twin goals of providing equal access and opportunity to prospective social work students and creating a pipeline of social

workers who reflect New York's diverse communities." *Id.* at 16.

Next, Defendants argue that no reasonable university official would have understood that requiring Plaintiff to disclose her citizenship, country of birth and native language in her admission application, asking her how she would deal with people who are different from her, or whether she was considering a degree in special education violated Plaintiff's rights. The questions regarding Plaintiff's citizenship, country of birth and native language are, according to Defendants, used to determine an applicant's eligibility for federal financial aid and whether an applicant should be required to submit scores from the Test of English as a Foreign Language. Defendants assert that the question about how Plaintiff would interact with people who are different from her makes sense in the context of the nature of social work and the legislative mandate governing CUNY. The question regarding Plaintiff's potential interest in special education is, in Defendants' estimation, not related to her being white, Jewish or female, and could have plausibly come up in a number of permissible contexts. *Id.* at 17.

As I did in my March 18, 2019 Opinion & Order, I conclude once again that Plaintiff has plausibly alleged that CUNY officials violated her rights under the Equal Protection Clause.[9] The Equal Protection Clause of the Fourteenth Amendment prohibits intentional discrimination by state actors based on race, national origin, and skin color. To establish a violation of the Equal Protection Clause, Plaintiff must provide "proof of racially discriminatory intent or purpose." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (internal quotation marks omitted). Considerations of racial classifications in the admissions context must be "narrowly tailored to further compelling governmental interests" to survive an Equal Protection challenge.

---

[9] I note that Plaintiff's Second Amended Complaint relies on the same facts that I found sufficient to support her claim of a Fourteenth Amendment violation in my March 18 Opinion & Order.

*Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013) (internal quotation marks omitted).

The admissions process in place must be "flexible enough to ensure that each applicant is

evaluated as an individual and not in a way that makes race or ethnicity the defining feature of

the application." *Grutter v. Bollinger*, 539 U.S. 306, 309 (2003).

As I determined in my March 18 Opinion & Order, Plaintiff sufficiently alleged that

CUNY Defendants, all of whom had control and influence over the MSW Program's admissions

procedures and policies, "either directly established an unconstitutional admissions process, or

allowed its continuance." (Doc. 65 at 14). I noted that Dean Rose's alleged comments regarding

Plaintiff's ethnicity, specifically his statements asserting that "[t]he Silberman School conducted

the group admissions interviews to weed out conservatives, because Trumps and Cruzes can't be

social workers" and that "Jews from religious backgrounds are too conservative to be social

workers," (SAC ¶ 99), "sufficiently demonstrate a racially discriminatory intent or purpose in the

admissions process to support a claim for an Equal Protection Clause violation based on race,

national origin, and/or skin color against Defendants Rose, Raab, Milliken, Seal, Nord and

members of the CUNY Board of Trustees." (Doc. 65 at 15.)

I also conclude that Plaintiff's right was a clearly established one of which a reasonable

official would have known. A right is clearly established where the "contours of the right [are]

sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014) (internal quotation

marks omitted). "The salient question . . . is whether the case law at the time in question would

have put reasonable officers on fair warning that their conduct violated the plaintiff's rights." *Id.*

(internal quotation marks omitted). As I noted above, the Supreme Court has consistently

determined that admissions processes must be "narrowly tailored to further compelling

governmental interests" to survive an Equal Protection challenge. *Fisher*, 570 U.S. at 310; *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007) (concluding that "school districts must demonstrate that their use of such classifications is narrowly tailored to achieve a compelling government interest.") (internal quotation marks omitted). Reasonable CUNY officials would have been on notice that an admissions interview intended to "weed out conservatives, because Trumps and Cruzes can't be social workers" and the assertion that "Jews from religious backgrounds are too conservative to be social workers" violated Plaintiff's right under the Equal Protection Clause. (SAC ¶ 99.)

### b. Plaintiff's Establishment Clause Claim

Defendants also argue that Plaintiff's rights under the Establishment Clause were not violated because Defendants considered her religion and religious upbringing. (Defs.' Mem. 18.) Defendants note that Plaintiff herself disclosed this information in her personal statement. Defendants argue that even if they considered religion, they did so while considering Plaintiff's application, and did not violate any clearly established right. *Id.* Although Defendants believe Plaintiff has failed to demonstrate that her religion or religious upbringing resulted in her being denied admission to the MSW program, they contend that even if Defendants did consider both, it is reasonable for a university official to consider any information an applicant submits to demonstrate that she qualifies for admission. *Id.* at 19.

I find that Plaintiff has plausibly alleged that Defendants violated her rights under the Establishment Clause. The First Amendment provides that "Congress shall make no law respecting an establishment of religion." The Establishment Clause prohibits "excessive government entanglement with religion." *Rweyemamu v. Cote*, 520 F.3d 198, 208 (2d Cir. 2008) (citation omitted). "The Establishment Clause requires that government programs remain neutral

16

toward religion," and the "First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general." *Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995) (citation omitted).

In my March 18 Opinion & Order, I concluded that Plaintiff plausibly alleged an Establishment Clause claim. (Doc. 65 at 18.) Plaintiff relies on the same facts in in her Second Amended Complaint to allege that religion was a factor in the MSW Program's admissions decision and that the school is less inclined to admit "Jews from religious backgrounds" because they are "too conservative to be social workers." (SAC ¶ 99.)

I also find that reasonable university officials would have understood that they were violating Plaintiff's First Amendment Rights. Although, as Defendants argue, Plaintiff may have voluntarily disclosed her religion, (Defs.' Mem. 19), such a disclosure did not open the door for Defendants to consider her religion in a manner that controverts the First Amendment. A reasonable official would have known that disfavoring an applicant because she is Jewish would fly in the face of the Establishment Clause's mandate that government entities "remain neutral toward religion." *Muhammad*, 904 F. Supp. at 197.

### D. *Plaintiff's Claims Against AG James*

Plaintiff sues AG James in both her official and individual capacity. For the reasons set forth below, Plaintiff's claims against AG James are dismissed.

#### 1. Official Capacity Claims

##### a. Applicable Law

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogated the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)

(internal quotation marks omitted). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). The Eleventh Amendment further extends sovereign immunity to actions against state officials sued in their official capacities "where the relief granted would bind the state or where the state is the real party in interest." *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir.1990); *McAllan v. Malatzky*, No. 97 Civ. 8291 (JGK), 1998 WL 24369, at *4 (S.D.N.Y. Jan. 22, 1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999); *see, e.g., Gollomp*, 568 F.3d at 366 ("[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents.") (internal quotation marks omitted).

b. Application

Defendants assert that Plaintiff's claims against AG James in her official capacity are barred under the Eleventh Amendment. Defendants contend that New York has not consented to be sued under § 1983, and that Congress did not intend for § 1983 to override states' sovereign immunity. (Defs.' Mem. 20.) Next, Defendants argue that the exception to state officials' immunity under the Eleventh Amendment does not apply in this instance because 1) Plaintiff does not allege an ongoing violation of federal law; and 2) the relief sought against AG James is invalid because "mandamus is not available to compel a discretionary act," and compelling the NYAG to investigate CUNY's allegedly discriminatory conduct would interfere with AG James' prosecutorial discretion." (Defs.' Mem 21.)

Plaintiff claims that, viewed in the light most favorable to her, the facts stated in her Second Amended Complaint sufficiently allege that AG James aided in the discriminatory activity. Plaintiff also contends that dismissing the claims against AG James at this stage would

be premature, as the parties have not engaged in adequate discovery. Plaintiff believes further discovery will bolster her claims against AG James. (Pl. Opp. 17–18.)

On the basis of New York State's Eleventh Amendment immunity, I bar Plaintiff's damages claims brought under § 1981 and § 1983 against AG James. However, Plaintiff's claims for injunctive relieve require a closer look. Plaintiff requests that I "[e]nsure that Ms. James recuses herself from defending CUNY et. al. and provide the same legal services to American born citizens that is provided to non-citizens/immigrants/DACA recipients" and "[e]nsure that Ms. James investigate[s[ the discriminatory activities of CUNY employees and stop the discriminatory activities." (SAC at 21.) "The Eleventh Amendment does not bar claims for prospective injunctive relief against state officials." *Taylor v. NYC*, 20-cv-5036 (MKV), 2020 WL 4369602, at *3 (S.D.N.Y. July 30, 2020). Although Plaintiff may seek prospective injunctive relief, "federal courts have no general power to compel action by state officials." *Tatum v. City of New York*, 104 F.3d 351 (2d Cir. 1996). As such, the injunctive relief Plaintiff seeks against AG James in unavailable. *See Smith v. United States*, No. 1:12–CV–00846 (LEK/RFT), 2014 WL 1312137, at *5 (N.D.N.Y. Mar. 31, 2014) (concluding that "Plaintiff's claims against Defendant . . . the New York State Attorney General fall under the ambit of suits precluded by these well-established principles of sovereign immunity and are therefore barred by the Eleventh Amendment.")

### 2. Individual Capacity Claims

Defendants also argue that Plaintiff failed to state a cognizable claim against AG James in her individual capacity. Plaintiff cannot, according to Defendants, demonstrate a causal link between AG James and the alleged discriminatory action, nor can she establish that AG James was personally involved in the alleged violations. (Defs.' Mem. 22.) With regard to Plaintiff's

claim that AG James was the Attorney General of New York during the relevant time period, Defendants contend that the mere fact that AG James is currently the Attorney General of New York is insufficient to demonstrate liability, and also allege the events took place before AG James was elected. *Id.* at 22–23.

I rely on the same *Colon* factors enumerated above to determine that Plaintiff has failed to state a claim against AG James in her individual capacity. Plaintiff's claims do not satisfy any of the *Colon* factors. While AG James is a state official, Plaintiff cannot demonstrate that (1) AG James had any part in denying her admission to the MSW Program; (2) AG James was involved in crafting the admissions policy under which Plaintiff was denied admission; or (3) that AG James had any role in supervising the CUNY officials involved in denying Plaintiff admission to the MSW Program. For these reasons, Defendants' motion is GRANTED, and Plaintiff's claims against AG James in her individual capacity are dismissed.

### E.    *New York State Human Rights Law Claims*

Plaintiff argues that her claims under New York State Human Rights Law §§ 292 and 296—which I dismissed in my March 18 Opinion & Order—should be reconsidered in light of an intervening change in the law. (Pl.' Rlp. 18.) Plaintiff contends that N.Y. Exec Law § 296 (6) was amended on July 26, 2019 to define educational institutions to include public colleges and universities. *Id* at 19. As such, Plaintiff argues that New York State Human Rights Law §§ 292 and 296, which I held applied only to private educational institutions, should be understood to apply to public universities and colleges as well. *Id.*

I decline Plaintiff's request to reinstate her claims under New York State Human Rights Law §§ 292 and 296. As Defendants point out, "it takes a clear expression of the legislative purpose . . . to justify a retroactive application of a statute." *Regina Metro. Co., LLC v. New*

*York State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 992 (N.Y. 2020), *reargument denied sub nom. Raden v. W7879, LLC*, 154 N.E.3d 12 (N.Y. 2020), *and Taylor v. 72A Realty Assocs.*, *L.P.,* 154 N.E.3d 14 (N.Y. 2020) (international quotation marks omitted). While § 292 now defines educational institutions to include public institutions, it expresses no intent to apply the amendment retroactively. Further, "courts to date have held that the 2019 NYSHRL amendments are not retroactive." *McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294 (PAE), 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020); *Deveaux v. Skechers USA, Inc.*, No. 19CV9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020) (quoting *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013)) ("Because neither the text nor the legislative history of the statute mentions retroactivity, there is no 'clear expression of the legislative purpose to justify a retroactive application' of the [NYSHRL amendments].") Therefore, I will not reinstate Plaintiff's claims under New York State Human Rights Law §§ 292 and 296.

### IV.    Conclusion

For the reasons stated herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Defendants' motion to dismiss Plaintiff's claims against AG James in her official and individual capacities is GRANTED and those claims are dismissed. Defendant's motion to dismiss Plaintiff's § 1981 and § 1983 claims against the CUNY Board of Trustees, Milliken, Raab, and Nord is DENIED. I decline to revive Plaintiff's claims under New York State Human Rights Law §§ 292 and 296.

The Clerk of Court is respectfully directed to terminate the open motion at Doc. 101 and mail a copy of this Opinion & Order to the pro se Plaintiff.

Defendants shall file an Answer to the Second Amended Complaint within twenty-one days of the date of this Opinion & Order.

SO ORDERED.

Dated: July 2, 2021
        New York, New York

Vernon S. Broderick
United States District Judge