UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                :

FAIGY RACHEL WEISS,              :
                                :

                Plaintiff,      :
                                :

         - against -       :    17 Civ. 3557 (VSB) (VF)
                                :

CITY UNIVERSITY OF NEW YORK ("CUNY"), :
MEMBERS OF THE CITY UNIVERSITY OF NEW :
YORK BOARD OF TRUSTEES in their official and :
individual capacity, HUNTER COLLEGE OF THE :
CITY UNIVERSITY OF NEW YORK, THE   :
SILBERMAN SCHOOL OF SOCIAL WORK AT :
HUNTER COLLEGE, JAMES MILLIKEN, in his :
individual and official capacity, NIREATA D. SEALS, :
in her individual and official capacity, JOHN ROSE, in :
his individual and official capacity, JENNIFER RAAB, :
in her individual and official capacity, and ROBERTA :
NORD, in her individual and official capacity,  :
LETITIA JAMES, in her individual and official :
capacity,

               Defendants.
------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**LETITIA JAMES**
Attorney General of the
State of New York
<u>Attorney for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416-6211

Eva L. Dietz
<u>Of Counsel</u>

**TABLE OF CONTENTS**

**Page (s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 1

               A.  The Admissions Process ..................................................................................... 1

               B.  Plaintiff's Application ......................................................................................... 3

               C.  Plaintiff's Complaints ......................................................................................... 5

PROCEDURAL HISTORY ...................................................................................................... 7

ARGUMENT .............................................................................................................................. 8

    POINT I    Plaintiff Cannot Sustain Her Title VI Claim Against CUNY ..................................... 9

               A.  Plaintiff Lacks Standing ...................................................................................... 9

               B.  Plaintiff Cannot Establish A Prima Facie Case .................................................. 10

               C.  Plaintiff Cannot Establish Pretext ...................................................................... 17

    POINT II    Plaintiff Cannot Sustain Her Section 1981 and 1983 Claims Against The Individual Defendants ................................................................................................. 19

               A.  Plaintiff Fails To Show Racial Discrimination .................................................. 20

               B.  Plaintiff Fails To Show Religious Discrimination Or An Establishment Clause Violation ................................................................................................ 20

               C.  Plaintiff Fails To Show Personal Involvement ................................................... 21

    POINT III    Plaintiff Is Not Credible ............................................................................................. 23

    POINT IV    The Individual Defendants Are Entitled to Qualified Immunity ................................ 24

CONCLUSION .......................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

Adams v. Andrews,
1999 WL 544727 (S.D.N.Y. July 27, 1999) .........................................................................17

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..............................................................................................................23

Babcock v. N.Y.S. Office of Mental Health,
2009 WL 1598796 (S.D.N.Y. June 8, 2009) ........................................................................13

Babiker v. Ross Univ. Sch. of Med.,
2000 WL 666342 (S.D.N.Y. May 19, 2000)..............................................................15, 16, 17

Back v. Hastings on Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004)..................................................................................................18

Blue v. Koren,
72 F.3d 1075 (2d Cir. 1995).............................................................................................25, 26

Bowles v. N.Y.C. Transit Auth.,
2006 WL 1418602 (S.D.N.Y. May 23, 2006) .......................................................................21

Brannon v. Delta Airlines, Inc.,
434 F. Supp. 3d 124 (S.D.N.Y. 2020)...................................................................................11

Calixte v. Susan Ray Equities Inc.,
2022 WL 118738 (E.D.N.Y. Jan. 12, 2022)..........................................................................14

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)................................................................................................................9

Commodari v. Long Island Univ.,
89 F. Supp. 2d 353 (E.D.N.Y. 2000)....................................................................................10

Davis v. Oyster Bay-East,
2006 WL 657038 (E.D.N.Y. Mar. 9, 2006), aff'd, 220 Fed. Appx. 59 (2d Cir. 2007)....................12

Destefano v. Emergency Housing Group, Inc.,
247 F.3d 397 (2d Cir. 2001)..................................................................................................21

Dickens v. Hudson Sheraton Corp.,LLC,
167 F. Supp. 3d 499 (S.D.N.Y. 2016)...................................................................................17

<u>Drummond v. IPC Internat'l, Inc.</u>,
  400 F. Supp. 2d 521 (E.D.N.Y. 2005)................................................................................ 16, 17

<u>Duckett v. Foxx</u>,
  2015 WL 4911160 (E.D.N.Y. Aug. 17, 2015)...................................................................... 14, 16

<u>Edwards v. William Raveis Real Estate, Inc.</u>,
  2010 WL 3829060 (D. Conn. Sept. 22, 2010)...........................................................................14

<u>Emengo v. Stark</u>,
  2018 WL 10879391 (S.D.N.Y. June 12, 2018).........................................................................22

<u>Emmanuel v. Cushman & Wakefield, Inc.</u>,
  2015 WL 5036970 (S.D.N.Y. Aug. 26, 2015)..................................................................... 12, 14

<u>Firgeleski v. Hubbell, Inc.</u>,
63 F. Supp. 2d 195 (D. Conn. 1999), <u>aff'd</u>, 213 F.3d 626 (2d Cir. 2000) ................................17

<u>Fortunati v. Vermont</u>,
  503 Fed. Appx. 78 (2d Cir. 2012) ...........................................................................................25

<u>Freckleton v. Mercy College NY</u>,
  2023 WL 2648827 (S.D.N.Y. Mar. 27, 2023)...........................................................................17

<u>Gilles v. Repicky</u>,
  511 F.3d 239 (2d Cir. 2007) ....................................................................................................25

<u>Goonewardena v. New York</u>,
  475 F. Supp. 2d 310 (S.D.N.Y. 2007).......................................................................................1

<u>Grady v. Affiliated Cent., Inc.</u>,
  130 F.3d 553 (2d Cir. 1997) ....................................................................................................14

<u>Gronowicz v. Bronx Community College</u>,
  2007 WL 2948339 (S.D.N.Y. Oct. 9, 2007) .............................................................................19

<u>Guardians Ass'n v. Civ. Serv. Comm.</u>,
  463 U.S. 582 (1983).................................................................................................................11

<u>Higgins v. Davis</u>,
  2001 WL 262930 (S.D.N.Y. Mar. 15, 2001) ............................................................................21

<u>Howard v. City of N.Y.</u>,
  602 Fed. Appx. 545 (2d Cir. 2015) ..........................................................................................13

<u>Jeffreys v. City of New York</u>,
  426 F.3d 549 (2d Cir. 2005) ....................................................................................................24

Jenkins v. N.Y.S. Banking Dept.,
    2010 WL 2382417 (S.D.N.Y. June 14, 2010) ...................................................................14

JF v. Carmel Central Sch. Dist.,
    168 F. Supp. 3d 609 (S.D.N.Y. 2016)...................................................................... 11, 16

Kirkland-Hudson v. Mt. Vernon City Sch. Dist.,
    2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) .................................................................23

Koumantaros v. City Univ. of N.Y.,
    2007 WL 840115 (S.D.N.Y. Mar. 19, 2007) ..................................................12, 15, 18, 19

Krulik v. Bd. of Educ. of City of N.Y.,
    781 F.2d 15 (2d Cir. 1986) ...........................................................................................20

Krys v. Ysrael A. Seinuk, P.C.,
    2010 WL 2654632 (S.D.N.Y. July 2, 2010) ...................................................................18

Lanci v. Anderson,
    2000 WL 329226 (S.D.N.Y. Mar. 29, 2000) ............................................................ 13, 14

Littlejohn v. City of N.Y.,
    795 F.3d 297 (2d Cir. 2015)...........................................................................................22

Major League Baseball Properties, Inc. v. Salvino, Inc.,
    542 F.3d 290 (2d Cir. 2008) ..........................................................................................19

Man-of-Jerusalem v. Hill,
    769 F. Supp. 97 (E.D.N.Y. 1991) ..................................................................................20

Mandell v. County of Suffolk,
    316 F.3d 368 (2d Cir. 2003) ..........................................................................................16

Martin v. Queens Cnty. Civ. Ct.,
    2009 WL 3497489 ................................................................................................... 13, 19

Martin v. State Univ. of N.Y.,
    704 F. Supp. 2d 202 (E.D.N.Y. 2010)............................................................................10

McCall v. Genpak, LLC,
    2015 WL 5730352 (S.D.N.Y. Sept. 30, 2015) ...............................................................15

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).......................................................................................................17

McKinnon v. Patterson,
    568 F.2d 930 (2d Cir.1977) ...........................................................................................23

iv

Meiri v. Dacon,
   759 F.2d 989 (2d Cir. 1985) .................................................................................8, 9

Minton v. Lenox Hill Hosp.,
   160 F. Supp. 2d 687 (S.D.N.Y. 2001) ........................................................................19

Okolie v. Paikoff,
   589 F. Supp. 2d 204 (E.D.N.Y. 2008) ................................................................. 11, 20

Powell v. Nat'l Bd. of Med. Examiners,
   364 F.3d 79 (2d Cir. 2004) ......................................................................... 9, 15, 16

Price Waterhouse v. Hopkins,
   490 U.S. 228 (1989) ................................................................................................13

Regents of Univ. of Michigan v. Ewing,
   474 U.S. 214 (1985) ................................................................................................15

Rojas v. Roman Catholic Diocese of Rochester,
   660 F.3d 98 (2d Cir. 2011) ......................................................................................25

Samimy v. Cornell Univ.,
   961 F. Supp. 489 (W.D.N.Y. 1997) ..........................................................................17

Scelsa v. City Univ. of N.Y.,
   806 F. Supp. 1126 (S.D.N.Y. 1992) ..........................................................................10

Siegert v. Gilley,
   500 U.S. 226 (1991) (Kennedy, J., concurring) .........................................................25

Sosa v. N.Y.C. Dep't of Educ.,
   368 F. Supp. 3d 489 (E.D.N.Y. 2019) ......................................................................13

St. Mary's Honor Ctr. v. Hicks,
   509 U.S. 502 (1993) ................................................................................................18

Sumner v. McCall,
   2003 WL 23105225 (N.D.N.Y. Nov. 17, 2003) ........................................................21

Texas Dept. of Community Affairs v. Burdine,
   450 U.S. 248 (1981) ................................................................................................18

Tomassi v. Insignia Fin. Group,
   478 F.3d 111 (2d Cir. 2007), abrogated on other grounds, Gross v. FBL Fin.
   Servs., Inc., 557 U.S. 167 (2009) .............................................................................13

Tripp v. Long Island Univ.,
   48 F. Supp. 2d 220 (E.D.N.Y. 1999) ........................................................................11

Tucker v. New York City,
    376 Fed. Appx. 100 (2d Cir. 2010) .................................................................. 19

Ward v. N.Y. Univ.,
    2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) .............................................. 15

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000) ............................................................................ 18

Weser v. Glen,
    190 F. Supp. 2d 384 (E.D.N.Y. 2002) ......................................................... 18

Westbrook v. City Univ. of N.Y.,
    591 F. Supp. 2d 207 (E.D.N.Y. 2008) ......................................................... 23

Williams v. Pace Univ.,
    192 F. Supp. 3d 415 (S.D.N.Y. 2016) ............................................. 12, 15, 16

Wrenn v. Bd. of Directors,
    1989 WL 23135 (N.D.N.Y. Feb. 21, 1989) .................................................. 20

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ........................................................................................... 6, 21

## STATE STATUTES

N.Y. Educ. L.
    § 6203 ............................................................................................................... 1
    § 6205(5) ........................................................................................................... 1

## FEDERAL STATUTES

29 U.S.C. 621, et seq., ......................................................................................... 17

42 U.S.C.
    § 1981, et seq., ........................................................................................ passim
    § 1983, et seq., ........................................................................................ passim
    § 12101, et seq., ............................................................................................. 13
    § 2000d, et seq., ...................................................................................... passim

## RULES

Fed. R. Civ. P.
    56 ...................................................................................................................... 1
    56(c) .................................................................................................................. 9
    56.1(a) ............................................................................................................... 1

Defendants the City University of New York ("CUNY"),[1] Members of the CUNY Board of Trustees, James Milliken, Nireata D. Seals, John Rose, Jennifer Raab, and Roberta Nord (collectively, the "Individual Defendants"[2] and, together with CUNY, the "Defendants"), respectfully submit this memorandum of law in in support of their motion for summary judgment pursuant to Rule 56.[3]

## Preliminary Statement

Plaintiff alleges that the rejection – nearly a decade ago – of her application to Hunter College's Silberman School of Social Work was the result not of her own inadequacy as a candidate, but rather of animus against her race, national origin, skin color, religion, gender and/or speech. She filed the instant lawsuit purporting to assert discrimination claims under a host of federal and State civil rights statutes, most of which have already been dismissed. Her few remaining causes of action must now suffer the same fate because Plaintiff cannot establish several elements of her claims. Indeed, the undisputed evidence shows that she was not qualified for admission, that there is no inference of discrimination, and that the legitimate explanation for her rejection is not pretextual. Plaintiff likewise fails to demonstrate standing to assert her Title VI claim against CUNY or the personal involvement necessary to sustain her Section 1981 and Section 1983 claims against the Individual Defendants, who also have qualified immunity. Summary judgment should therefore be awarded to Defendants.

## Statement of Facts

A.  The Admissions Process

Admission to the Masters of Social Work ("MSW") Program at Hunter College's

---

[1] The only proper institutional defendant in this case is CUNY, as Hunter College and its component schools (including the Silberman School of Social Work) cannot be separately sued. See Goonewardena v. New York, 475 F. Supp. 2d 310, 316 n.1 (S.D.N.Y. 2007) ("It is undisputed that Hunter College, a senior college within the CUNY system, has no separate legal existence from CUNY.") (citing N.Y. Educ. L. §§ 6205(5), 6203).

[2] The claims against Attorney General Letitia James were dismissed by the Court on July 2, 2021 (ECF No. 135).

[3] The instant motion is also supported by: (i) Defendants' Statement Pursuant to Local Civil Rule 56.1(a) ("56.1 Stmt."); and (ii) the Declarations of Eva Dietz, Roberta Nord, John Rose, Nireata Seals and Robin Strauss, and the exhibits thereto.

Silberman School of Social Work (the "Silberman School") is a multi-step process requiring applicants to complete a Graduate Admission Application Form and to submit a statement of purpose, a resume, three letters of recommendation, and copies of their undergraduate transcripts. At the time Plaintiff applied for admission to the Silberman School, the applications were reviewed by a first reader and group interviews were conducted by a group interviewer. The first readers and group interviewers were selected from among a pool of adjunct faculty and experienced social workers to evaluate applications for admission to the Silberman School. See 56.1 Stmt. ¶¶ 9-10.

After the admissions office received all of the required documents and an applicant's admissions file was complete, it was assigned to the first reader who reviewed the applicants' statement of purpose, transcripts and letters of recommendation. The first reader ensured that applicants met applicable GPA or work requirements and had some experience helping others. The first reader also evaluated the strength of the candidates' GPA and letters of recommendation, and their ability to articulate the reasons why they wished to pursue a MSW in their statement of purpose. After conducting this review, the first reader recommended whether to invite the candidate in for an interview. If the first reader was unsure of whether to recommend that an applicant be admitted to the MSW Program, they could opt not make any recommendation at all, choosing instead the "Pending Interview" option. See 56.1 Stmt. ¶ 12.

Applicants who were invited to a group interview were interviewed with six to eight other applicants. In order to get different perspectives, and more than one recommendation regarding whether an applicant should be offered admission to the Silberman School, applicants who were invited to a group interview were not interviewed by the first reader who reviewed and evaluated their application, and the group interviewer did not review the applicant's Graduate Admission Application Form, statement of purpose, resume, letters of recommendation, or undergraduate transcripts prior to the group interview. See 56.1 Stmt. ¶ 13.

At the group interview, applicants were required to complete a writing exercise in which they responded to an article. The writing exercise allowed the group interviewer to evaluate the applicant's reading comprehension and to gauge the applicant's writing skills. The group interviewer also asked questions in order to assess the applicants' ability to engage in a group setting, articulate why they wanted to pursue a career in social work, and demonstrate their commitment to social work values. See 56.1 Stmt. ¶ 14.

Interviewers completed an evaluation form after each group interview. The form included a rating scale from 1-5, with 1 signifying no evidence of proficiency and 5 signifying exceeding proficiency. Each applicant was given a total overall score based on their ratings in each of the individual categories. The overall score determined in which of three tiers candidates fell. Candidates with an overall score of 45 to 55 fell into Tier I; candidates with an overall score of 35 to 44 fell into Tier II; those with scores of 25 to 34 fell into Tier III. Candidates recommended for admission by the first reader and whose overall score from the group interview placed them in Tier I had a statistically higher chance of being admitted than candidates not recommended for admission by the first reader and whose overall score from the group interview placed them in Tier II or III. If an applicant's score was below 24, the recommendation was to deny their application. See 56.1 Stmt. ¶ 15.

B.   Plaintiff's Application

On February 1, 2015, Plaintiff, who self-identifies as Jewish, applied for admission to the MSW Program at the Silberman School. Plaintiff's application stated that during the immediately preceding eight months, she had worked nine hours a week as a research assistant in a psychophysiology lab. Plaintiff's application also stated that she had three months of experience as a psychology intern at an organization serving individuals with substance abuse disorders. In her statement of purpose, Plaintiff wrote about being raised in the Satmar community. See 56.1 Stmt. ¶¶ 21-22.

3

Plaintiff submitted a letter of recommendation from her supervisor at the psychophysiology lab. Plaintiff's supervisor rated Plaintiff's promise for graduate study as "Fair," and also wrote "Not Applicable" for the rating that asked how Plaintiff's personal qualities support academic and professional success. The letter of recommendation makes no mention of social work, instead focusing on Plaintiff's "strong interests in psychology and religion." A second letter of recommendation was submitted by Plaintiff's mentor from the individualized program through which she had earned her bachelor's degree. The letter of recommendation, which consists of only five sentences, also fails to mention social work or Plaintiff's ability to succeed in the field, instead highlighting Plaintiff's enthusiasm for completing projects she undertakes, capacity for integrating data and interpreting facts, and determination to achieve her academic goals. See 56.1 Stmt. ¶¶ 23-24.

The first reader who reviewed Plaintiff's application rated Plaintiff's GPA, statement of purpose, and letters of recommendation as "Good" but did not make a recommendation regarding whether Plaintiff should be admitted to the MSW Program, opting instead to defer to the group interviewer's recommendation. Plaintiff attended a group interview that was conducted by Robin Strauss on April 7, 2015. Ms. Strauss was not the first reader of Plaintiff's application, nor did she review Plaintiff's application prior to Plaintiff's group interview. See 56.1 Stmt. ¶¶ 25-27.

Ms. Strauss completed a written evaluation of Plaintiff's performance during the group interview in which she assessed Plaintiff as only marginally proficient in six of the 11 categories, including Plaintiff's understanding of the Silberman School's program, her critical/conceptual thinking, and her level of self-awareness. Ms. Strauss rated Plaintiff's ability to work with vulnerable populations and her commitment to social work values to be proficient but noted that Plaintiff had only "basic writing skills," and wrote mostly about herself in the writing sample she prepared during her interview, "focus[ing] on her own needs and journey." Plaintiff's overall rating score of 27 out of 55 placed her in the bottom of the lowest tier for admission. Ms. Strauss' rating was based on Plaintiff's

self-focus, which is contrary to the Silberman School's community-based focus, as well as Plaintiff's

writing sample, which raised concerns about whether she was academically prepared for graduate level

work. See 56.1 Stmt. ¶¶ 31-32.

Given these concerns, the Silberman School's Director of Admissions, Dr. Nireata Seals,

denied Plaintiff's application for admission. Plaintiff was informed of the decision in an email, dated

April 28, 2015. See 56.1 Stmt. ¶ 33.

C.   Plaintiff's Complaints

On December 7, 2015, Plaintiff emailed John Rose, the Dean for Diversity and Compliance

at Hunter College, a complaint alleging that the denial of her application for admission to the

Silberman School was the result of discrimination based on her religion and an unspecified disability.[4]

According to Plaintiff, she was denied admission to the MSW Program after discussing her upbringing

in the Satmar community in the personal statement she submitted as part of her application and after

attending a group interview. On December 23, 2015, Plaintiff met with Dean Rose and Sandra Nunez,

Associate Legal Counsel in Hunter College's Office of General Counsel, to discuss her complaint.

Plaintiff said that she had been singled out for questioning during the group interview. Plaintiff

subsequently amended her complaint to include an allegation that requiring interviews as part of the

admission process violates the First Amendment because applicants who expressed a viewpoint with

which the interviewer disagreed could receive lower scores in certain categories. See 56.1 Stmt. ¶¶ 39-

40, 44.

After meeting with Plaintiff, Dean Rose contacted the Silberman School to obtain information

about the admissions process, and Plaintiff's application in particular. In addition, Dean Rose and Ms.

Nunez met with Robin Strauss on January 15, 2016 to hear her account of the group interview that

---

[4] Plaintiff has not asserted any claim of disability discrimination in this lawsuit.

Plaintiff had attended. Although Ms. Strauss did not specifically remember Plaintiff or her interview, which had taken place nine months earlier, she described her usual method of conducting group interviews and evaluating candidates. Ms. Strauss also informed Dean Rose and Ms. Nunez that applicants who were denied admission to the MSW Program could take a course as a non-matriculated student to demonstrate their commitment and readiness for the Program. If an applicant did well as a non-matriculated student, their chances of being admitted to the Program would be higher. Silberman School officials subsequently confirmed this and, at Dean Rose's request, agreed to waive the tuition for such a non-matriculated course for Plaintiff. Despite the tuition waiver, Plaintiff declined the offer to take a course at the Silberman School as a non-matriculated student. See 56.1 Stmt. ¶¶ 41-43.

On February 11, 2016, Dean Rose submitted a memorandum to the President of Hunter College, Jennifer Raab, which described the investigation of Plaintiff's complaint and concluded that her claim was not substantiated. In short, Dean Rose and Ms. Nunez did not find any evidence even suggesting that Plaintiff had been discriminated against or that her group interview was conducted in an unconstitutional manner. President Raab subsequently adopted the findings of the report and sent Plaintiff a letter informing her of the findings of the investigation. See 56.1 Stmt. ¶ 45.

On April 26, 2016, Plaintiff sent an email to CUNY's Chancellor's Office reiterating her complaint to Hunter College. The Chancellor's Office asked Roberta Nord, the Director of CUNY's Office of Student Advocacy, to conduct an investigation. Ms. Nord promptly reviewed Hunter College's investigative file and spoke to Dean Rose to better understand how Plaintiff's complaint had been handled. Ms. Nord thereafter concluded that the denial of Plaintiff's application was based on the academic judgement of the admissions officials who had evaluated Plaintiff's application materials and interviewed her, and she found no basis to overrule their decision. On April 28, 2016, Ms. Nord informed Plaintiff by email that she agreed with Hunter College's determination that the denial of her application was not discriminatory. Ms. Nord also reiterated the Silberman School's offer for Plaintiff

to take a class as a non-matriculated student and noted that she would be reconsidered for admission if she did well. Plaintiff never responded. See 56.1 Stmt. ¶¶ 46-49.

### Procedural History

Proceeding pro se, Plaintiff commenced this action on May 11, 2017 (ECF Nos. 1, 2). Her initial complaint asserted claims of discrimination on various grounds under Title VI, Section 1981 and Section 1983 against CUNY, the CUNY Board of Trustees, Rose, Raab, Seals and Nord (ECF No. 2). On June 6, 2017, this Court, sua sponte, dismissed Plaintiff's Section 1981 and Section 1983 claims against CUNY and the individuals in their official capacities, as well as Plaintiff's Title VI claims against the individuals (ECF No. 5). Plaintiff filed an Amended Complaint on April 13, 2018, which added a host of claims under various federal, State and City statutes, and also added James Milliken and then-New York State Attorney General Eric Schneiderman as defendants (ECF No. 31). Defendants moved to dismiss the Amended Complaint on June 19, 2018 (ECF Nos. 36-38), and the motion was fully-briefed on December 7, 2018 (ECF Nos. 57, 60-61).

On March 18, 2019, the Court issued an Opinion & Order granting in part and denying in part Defendants' motion to dismiss (ECF No. 65). "Specifically, all of Plaintiff's claims [were] dismissed except the following claims: (1) Title VI claim against CUNY; (2) § 1983 claims against the CUNY Board of Trustees, Milliken, Seals, Rose, Raab, and Nord in their individual capacities; and (3) § 1981 claims against the CUNY Board of Trustees, Milliken, Seals, Rose, Raab, and Nord in their individual capacities." Id. at 26. Moreover, while the Court allowed these claims to proceed based on race, national origin, skin color and religion, Plaintiff's claims based on gender and speech were dismissed. Id. at 16-17, 18-19. Plaintiff then filed the Second Amended Complaint ("SAC") on August 29, 2019, which was virtually identical to the Amended Complaint, except that she replaced former Attorney General Schneiderman with current Attorney General Letitia James (ECF No. 93). On October 11,

2019, the Court granted Defendants' request to dismiss any claims Plaintiff reasserted in the SAC after they had already been dismissed (ECF No. 100).[5]

In the meantime, on June 25, 2019, the Court issued a case management plan and discovery commenced (ECF Nos. 86-87). The Court also granted Plaintiff's request for pro bono counsel "for the purpose of propounding document discovery and taking depositions" (ECF No. 76). Accordingly, on October 18, 2019, the law firm Baker Botts LLP appeared for Plaintiff in this case (ECF Nos. 95-96). Discovery closed on March 18, 2022 (ECF Nos. 170, 178), and on May 17, 2022, Baker Botts concluded its representation of Plaintiff (ECF Nos. 176-177). As reflected in dozens of entries on the case docket, over the course of its two-and-a-half year representation of Plaintiff in this case, Baker Botts served discovery requests, took depositions, and raised discovery issues with the Court.[6]

## Argument

"[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases. Given the ease with which these suits may be brought and the energy and expense required to defend such actions," summary judgment is appropriate when certain conditions are satisfied. Id.

Specifically, "[s]ummary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 84 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(c)). Accordingly, "[t]his form of

---

[5] Defendants then moved to dismiss the remainder of the SAC on December 6, 2019 (ECF Nos. 101-105), and the motion was fully-briefed on April 20, 2020 (ECF Nos. 113, 120). On July 2, 2021, the Court issued an Opinion & Order granting in part and denying in part Defendants' motion (ECF No. 135).

[6] In addition, Plaintiff was represented at her own deposition by the New York Legal Assistance Group (ECF No. 154).

relief is appropriate when, after discovery, the party—here plaintiff—against whom summary judgment is sought, has not shown that evidence of an essential element of her case—one on which she has the burden of proof—exists. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). That is exactly the situation here. After more than two years of discovery, during which she was represented by a large law firm, Plaintiff has failed to uncover one iota of evidence to support her allegation that her application for admission to the Silberman School was rejected "for discriminatory reasons, specifically because she is Jewish, an American born citizen, female, has white skin, and the political opinion imputed to her on the basis of her skin color and Jewish identity." See SAC ¶ 141.

As a result, Plaintiff lacks evidence of essential elements of her remaining claims, which are brought under Title VI, Section 1981 and Section 1983. In particular, Plaintiff cannot demonstrate that she was qualified for admission to the Silberman School, that her rejection supports an inference of discrimination, or that the legitimate explanation for her rejection is pretextual. Each of these fundamental failures of proof is fatal to her claims under all three statutes at issue, and all Defendants should be awarded summary judgment on that basis alone. Moreover, Plaintiff fails to show that she has standing to assert her sole claim against CUNY under Title VI because she does not establish that she was an intended beneficiary of federal spending. Finally, Plaintiff is unable to demonstrate the personal involvement necessary to sustain her Section 1981 and Section 1983 claims against the Individual Defendants, who are also entitled to qualified immunity with respect to the matters at issue here. All of Plaintiff's remaining claims should therefore be dismissed.

## POINT I
## Plaintiff Cannot Sustain Her Title VI Claim Against CUNY

### A. Plaintiff Lacks Standing

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.
"In order to establish standing to sue under this statute plaintiffs must be the intended beneficiaries
of the federal spending program. While this need not be pleaded in plaintiff's filings, it must eventually
be proven in order for plaintiffs to recover under this section." Scelsa v. City Univ. of N.Y., 806 F.
Supp. 1126, (S.D.N.Y. 1992); see also Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 378
(E.D.N.Y. 2000) ("[i]n order to have standing to bring a claim against [CUNY] for violation of Title
VI," plaintiff must show, inter alia, that CUNY "received federal financial assistance" and that plaintiff
"was an intended beneficiary of the program or activity receiving the assistance").

Plaintiff has entirely failed to satisfy these requirements. Indeed, she does not even allege,
much less offer any evidence to prove, that CUNY receives federal financial assistance in connection
with the MSW Program at the Silberman School, or that she was an intended beneficiary thereof. In
other words, both the SAC and the evidentiary record in this case are silent with respect to the
elements necessary for Plaintiff to establish standing under Title VI. Plaintiff's lack of standing alone
warrants summary judgment in favor of CUNY on her Title VI claim. See Martin v. State Univ. of
N.Y., 704 F. Supp. 2d 202, 233-34 (E.D.N.Y. 2010) (granting summary judgment to defendants on
Title VI claim for lack of standing because "plaintiffs have failed to produce sufficient evidence for a
rational trier of fact to conclude they were themselves intended beneficiaries of federal funds"); see
also Brannon v. Delta Airlines, Inc., 434 F. Supp. 3d 124, 138-39 (S.D.N.Y. 2020) (granting summary
judgment to defendants on Title VI claim because "Plaintiff's failure to establish that Delta receives
the necessary federal funding is fatal to his Title VI claim").

B. Plaintiff Cannot Establish A Prima Facie Case

Aside from Plaintiff's lack of standing, CUNY is also entitled to summary judgment on her
Title VI claim because she fails to establish a prima facie case. "To establish a claim under Title VI, a
plaintiff must show: (1) that the entity involved engaged in racial or national origin discrimination; (2)

the entity involved is receiving federal financial aid; and (3) plaintiff was an entitled beneficiary of the program or activity receiving the aid." JF v. Carmel Central Sch. Dist., 168 F. Supp. 3d 609, 623 (S.D.N.Y. 2016) (citations omitted). As demonstrated in Section A above, Plaintiff cannot establish either of the last two elements, and her claim should be dismissed on that basis alone.

In any event, Plaintiff cannot establish the first element of her prima facie case either. "[T]he Supreme Court held that [Title VI] prohibits only intentional discrimination." Tripp v. Long Island Univ., 48 F. Supp. 2d 220, 225 (E.D.N.Y. 1999) (citing Guardians Ass'n v. Civ. Serv. Comm., 463 U.S. 582 (1983); see also Okolie v. Paikoff, 589 F. Supp. 2d 204, 217 (E.D.N.Y. 2008) (noting that a Title VI claim "requires proof of intentional discrimination"). Accordingly, "[i]n order to satisfy the first element of a Title VI claim, Plaintiff[] must demonstrate that the defendant discriminated against [her] on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." JF, 168 F. Supp. 3d at 623 (citations omitted). "Plaintiff may show a *prima facie* case under Title VI through direct evidence of discriminatory conduct, or where direct evidence is unavailable, as it is here, through indirect evidence, by demonstrating that: (1) she is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who are not members of the protected class; and (4) she was qualified to continue in her educational pursuit." Koumantaros v. City Univ. of N.Y., 2007 WL 840115, at *8 n.12 (S.D.N.Y. Mar. 19, 2007); see also Williams v. Pace Univ., 192 F. Supp. 3d 415, 422 (S.D.N.Y. 2016) (same). Plaintiff has failed to present any direct or indirect evidence of intentional discrimination by CUNY.

"Direct evidence of discrimination includes, *inter alia,* policy documents and evidence of statements or actions by decisionmakers that may be viewed as *directly reflecting* the alleged discriminatory attitude." Emmanuel v. Cushman & Wakefield, Inc., 2015 WL 5036970, at *4

(S.D.N.Y. Aug. 26, 2015) (citations omitted) (emphasis in original).[7] No such direct evidence exists in this case. To the contrary, Plaintiff relies almost entirely on her own self-serving description of a meeting with John Rose during which he allegedly stated that the Silberman School used group admissions interviews to "weed out conservatives" because "Jews from religious backgrounds are too conservative to be social workers." See SAC ¶ 99. Conveniently, Plaintiff alleges that "[t]here was no one else present" when Mr. Rose supposedly made these statements to her. Id. at ¶ 98

As an initial matter, John Rose vehemently denies making this alleged statement in his accompanying declaration and, for the reasons set forth in Section III below, the Court can (and should) disregard Plaintiff's version of events. However, even if Plaintiff's allegations are accepted as true for purposes of this motion, Mr. Rose's purported statement is insufficient to establish a prima facie case of discrimination because he played no role whatsoever in the decision not to admit Plaintiff to the Silberman School. Indeed, it is undisputed that Mr. Rose was not involved in admissions decisions at the Silberman School at all, much less the specific decision to reject Plaintiff's application for admission. See 56.1 Stmt. ¶¶ 18, 36.

"'The relevance of discrimination-related remarks depends on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.'" Babcock v. N.Y.S. Office of Mental Health, 2009 WL 1598796, at *13 (S.D.N.Y. June 8, 2009) (quoting Tomassi v. Insignia Fin. Group, 478 F.3d 111, 116 (2d Cir. 2007), abrogated on other grounds, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)). Accordingly, "[t]he Supreme Court has held that 'statements made by non-decision makers…will not satisfy the plaintiff's burden to establish discrimination.'"

---

[7] Cases brought under Title VII, such as Emmanuel, are applicable here because Plaintiff's Title VI claim is subject to the same analysis as Title VII claims. Koumantaros, 2007 WL 840115, at *7 ("In determining whether plaintiff's dismissal from the Program violated Title VI, the Court is guided by the analysis developed under Title VII."). The same analysis is also applicable to Plaintiff's Section 1981 and Section 1983 claims. Davis v. Oyster Bay-East, 2006 WL 657038, at *8 n.12 (E.D.N.Y. Mar. 9, 2006) ("discrimination claims under Title VII, 42 U.S.C. §§ 1981 and 1983…are analyzed together, as the same analytic framework applies to each"), aff'd, 220 Fed. Appx. 59 (2d Cir. 2007).

Martin v. Queens Cnty. Civ. Ct., 2009 WL 3497489, at *15 (E.D.N.Y. Oct. 28, 2009 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)). Plaintiff's description of John Rose's alleged statement is thus patently insufficient to overcome Defendants' motion for summary judgment. See, e.g., Howard v. City of N.Y., 602 Fed. Appx. 545, 547 (2d Cir. 2015) (summary order) ("[A]s the district court correctly concluded, the park attendant's alleged racial comment did not raise a triable issue of discrimination because the attendant had no decision-making authority in terminating Howard's permit and Howard proffered no evidence beyond mere speculation tying this statement to any decision maker.").

Moreover, it is undisputed that John Rose offered to let Plaintiff attend the Silberman School as a non-matriculated student, and even agreed to waive the attendant tuition, in order to increase her chances of being admitted to the MSW Program. See 56.1 Stmt. ¶ 43. As a result, a "strong presumption against discrimination exist[s] in this case by virtue of the same actor inference." Lanci v. Anderson, 2000 WL 329226, at *7 (S.D.N.Y. Mar. 29, 2000).[8] Indeed, "'it is difficult to impute to [John Rose] an invidious motivation'" when he is the very person who tried to help Plaintiff get into the Silberman School. Id. (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)).

Like John Rose's alleged statements, Plaintiff's conclusory allegations about the Silberman School's supposedly discriminatory admissions policy are also insufficient to constitute direct evidence of intentional discrimination. "Typically direct evidence will consist of an admission by the defendant through a facially discriminatory policy or in an official piece of writing." Edwards v. William Raveis Real Estate, Inc., 2010 WL 3829060, at *5 (D. Conn. Sept. 22, 2010). Plaintiff provides no evidence whatsoever, much less direct evidence, that any discriminatory admissions policy exists at the Silberman School. Rather, she relies solely on her own conclusory assertions and speculation "on

---

[8] Cases brought under the Americans with Disabilities Act ("ADA"), such as Lanci, are applicable here because "[d]iscrimination claims brought under the ADA are analyzed in the same way as such claims brought under § 1981 and Title VII." Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489, 523 (E.D.N.Y. 2019).

information and belief" that "the Silberman School applies a substantially lower standard of admission" to applicants who "self-identify and/or are identified by the interviewers at the interview as a member of a racial and/or ethnic group that the Silberman School considers to be an 'under-represented' minority, such as African-American or Hispanic." See SAC ¶¶ 113-114. However, such baseless, conclusory statements do not constitute evidence of discrimination at all, much less direct evidence thereof. Duckett v. Foxx, 2015 WL 4911160, at *6 (E.D.N.Y. Aug. 17, 2015); see also Jenkins v. N.Y.S. Banking Dept., 2010 WL 2382417, at *10 (S.D.N.Y. June 14, 2010) ("The plaintiff simply makes conclusory statements that everything disadvantageous happened to her because of her race, age, gender, and religion but fails to point to any direct evidence of discrimination, or even any circumstantial evidence of discrimination.").

Plaintiff has thus failed to identify any discriminatory "policy documents" or discriminatory "statements or actions by decisionmakers" that could constitute direct evidence of intentional discrimination in this case. Emmanuel, 2015 WL 5036970, at *4; see also Calixte v. Susan Ray Equities Inc., 2022 WL 118738, at *2 (E.D.N.Y. Jan. 12, 2022) (Plaintiff "alleges no direct evidence of discrimination, since he does not allege facts, such as statements or written policies, that directly show that defendant treated him as it did because of his race."). Indeed, "[t]he Second Circuit has noted that 'direct evidence' would roughly equate to a 'smoking gun' indicating" discrimination. McCall v. Genpak, LLC, 2015 WL 5730352, at *11 (S.D.N.Y. Sept. 30, 2015) (citations omitted). Plaintiff has not even come close to satisfying this standard.

Indirect evidence of intentional discrimination is also lacking here. As an initial matter, Plaintiff has not demonstrated that she "was objectively qualified to continue in her education" at the Silberman School. Koumantaros, 2007 WL 840115, at *8 n.12. Indeed, the only evidence in the record is that Plaintiff was not qualified for admission to the MSW Program. Specifically, there were substantial deficiencies in Plaintiff's letters of recommendation, writing sample, and group interview

14

(among other things). <u>See</u> 56.1 Stmt. ¶¶ 22-25, 31-33. Accordingly, Plaintiff's overall rating score of 27 out of 55 placed her in the bottom of the lowest tier for admission. <u>Id.</u> ¶ 31.

"These facts suggest that she did not meet the essential eligibility requirements for participation in [the] program." <u>Powell</u>, 364 F.3d at 87. Moreover, CUNY's determination that Plaintiff did not meet the qualifications for admission to the MSW Program is entitled to great weight because "[e]ducational institutions are afforded considerable deference when making decisions concerning academic standards." <u>Ward v. N.Y. Univ.</u>, 2000 WL 1448641, at *3 (S.D.N.Y. Sept. 28, 2000); <u>see also</u> <u>Williams</u>, 192 F. Supp. 3d at 424 ("'When judges are asked to review the substance of a genuinely academic decision…they should show great respect for the faculty's professional judgment.'") (quoting <u>Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985)</u>); <u>Babiker v. Ross Univ. Sch. of Med.</u>, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000) ("[B]ecause the decisions that educational institutions make about academic standards involve the subjective judgment of professional educators, claims regarding such matters are subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.") (citations omitted). Plaintiff has thus "failed to carry her burden to demonstrate she was otherwise qualified, as she needed to in order to establish her *prima facie* case and move forward to trial." <u>Powell</u>, 364 F.3d at 87 (affirming award of summary judgment to defendants because, inter alia, plaintiff "did not present evidence showing she was otherwise qualified to continue to be a medical student at UConn").

Plaintiff has likewise "failed to come forward with evidence showing that she was treated differently than other similarly situated students." <u>Williams</u>, 192 F. Supp. 3d at 422. "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003). Plaintiff here has not even "identified any similarly situated individuals of a different

race or national origin than [her]self who were treated more favorably," much less made the requisite evidentiary showing. Babiker, 2000 WL 666342, at *5. Plaintiff's "failure to identify a sufficient comparator…makes it impossible for [her] to demonstrate an essential element of [her] Title VI claim—that [she] was treated differently from similarly situated students who were not members of the protected class." JF, 168 F. Supp. 3d at 624 (citations omitted) (granting summary judgment to defendants on Title VI claim).

Rather than make this essential showing, Plaintiff merely alleges that she was "singled out" for questioning during her group interview. See SAC ¶¶ 82-90. However, "Plaintiff's objections to the interview procedure—and [her] conclusory belief that the selection of particular interview questions reflected some sort of [] race discrimination that disadvantaged [her] and advantaged [the other candidate]—simply do not indicate circumstances that give rise to an inference of discrimination." Duckett, 2015 WL 4911160, at *6. Moreover, it is undisputed that the interviewer – Robin Strauss – identifies as Jewish. See 56.1 Stmt. ¶ 26. This fact fatally undermines Plaintiff's claims because "a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." Drummond v. IPC Internat'l, Inc., 400 F. Supp. 2d 521, 531 (E.D.N.Y. 2005).[9] The lack of any evidence of intentional discrimination, "together with the inference against discrimination that is present in this case," warrants summary judgment in favor of Defendants. Id. at 533-34.

In sum, "conclusory allegations are insufficient, as a matter of law, to give rise to an inference of discrimination" against CUNY. Babiker, 2000 WL 666342, at *4; see also Adams v. Andrews, 1999 WL 544727, at *2 (S.D.N.Y. July 27, 1999) ("Conclusory allegations do not a cause of action make"

---

[9] Cases brought under the Age Discrimination in Employment Act ("ADEA"), such as Drummond, are applicable here because "[i]n connection with discrimination claims under Title VII, the ADEA and § 1981 the Second Circuit applies the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green." Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 510 (S.D.N.Y. 2016).

under Title VI.). Thus, "a plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions." Freckleton v. Mercy College NY, 2023 WL 2648827, at *6 (S.D.N.Y. Mar. 27, 2023) (citations omitted).  Yet conclusory assertions are all Plaintiff has to offer here. Indeed, her case rests entirely on a "subjective belief that [s]he was discriminated against [which] is insufficient to support a discrimination claim." Firgeleski v. Hubbell, Inc., 63 F. Supp. 2d 195, 197 (D. Conn. 1999), aff'd, 213 F.3d 626 (2d Cir. 2000). Accordingly, "[t]here is simply no basis on which a jury could reasonably conclude that plaintiff was treated less favorably because of [her] race or national origin. Because plaintiff's claim of discrimination rests entirely on conclusory allegations, summary judgment is appropriate" on her Title VI claim. Id.; see also Dickens, 167 F. Supp. 3d at 510 (summary judgment warranted when defendant "provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination").

C. Plaintiff Cannot Establish Pretext

Even if Plaintiff could establish a prima facie case under Title VI (which she cannot, for the reasons set forth in Section B above), CUNY would still be entitled to summary judgment because she cannot establish pretext. See Samimy v. Cornell Univ., 961 F. Supp. 489, 496 (W.D.N.Y. 1997) ("In any event, even assuming arguendo that Samimy has met his prima facie burden…Cornell has presented legitimate non-discriminatory reasons for its actions which Samimy has failed to show are pretextual."). "If plaintiff makes out a prima facie case, the burden shifts to the defendant to show a 'legitimate, nondiscriminatory reason for' its conduct. Plaintiff then has the opportunity to prove 'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Koumantaros, 2007 WL 840115, at *7 (citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004)). Significantly, "if a legitimate reason is provided, the plaintiff must prove not only that the proffered nondiscriminatory reason was pretextual but also discriminatory animus." Krys v. Ysrael A. Seinuk, P.C., 2010 WL

17

2654632, at *4 (S.D.N.Y. July 2, 2010).  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, 'it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.'" Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993)). Thus, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

CUNY has satisfied its burden to provide a legitimate, nondiscriminatory reason for rejecting Plaintiff's application for admission to the Silberman School. Specifically, the undisputed evidence shows that Plaintiff was rejected from the Silberman School because of numerous deficiencies in her application, including her letters of recommendation and writing sample, as well as her substandard performance during the group interview. See 56.1 Stmt. ¶¶ 22-25, 31-33. There is no question that this constitutes a legitimate, non-discriminatory reason for rejecting Plaintiff's application. See, e.g., Weser v. Glen, 190 F. Supp. 2d 384, 400 (E.D.N.Y. 2002) ("[D]efendants contend that plaintiff was rejected [by law school] because his academic qualifications and demonstrated commitment to public service were inadequate—also a legitimate, nondiscriminatory reason."); see also Weinstock, 224 F.3d at 43 (finding "the legitimate, non-discriminatory reason that [plaintiff] was not academically qualified" for tenure sufficient to satisfy defendant university's burden); Gronowicz v. Bronx Community College, 2007 WL 2948339, at *2 (S.D.N.Y. Oct. 9, 2007) ("dissatisfaction with [plaintiff's] lesson and interview" was "a legitimate non-discriminatory reason justifying the decision not to offer plaintiff a tenure-track position"); Tucker v. New York City, 376 Fed. Appx. 100, 102 (2d Cir. 2010) ("There is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview.") (citations omitted).

Plaintiff is entirely unable to show, much less by a preponderance of the evidence, that CUNY's legitimate basis for denying her application is actually a pretext for intentional discrimination. Indeed, there is no evidence in the record that could support a finding of pretext at all. Any attempt by Plaintiff to rely on John Rose's alleged statements is unavailing because "proof of pretext cannot rest upon statements by non-decision makers." Minton v. Lenox Hill Hosp., 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (citations omitted). Likewise, Plaintiff cannot establish pretext "'merely by making assertions that are conclusory, or based on speculation.'" Martin, 2009 WL 3497489, at *14 (quoting Major League Baseball Properties v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008)). Yet baseless conclusions and speculation are all Plaintiff has to offer here. Indeed, Plaintiff's allegations of discrimination "are not supported by any admissible evidence, but rather by her subjective opinions, bolstered by hearsay and rumor." Koumantaros, 2007 WL 840115, at *8. Since this is patently insufficient to establish pretext, Plaintiff's claim fails as a matter of law. Id. at *9 & n.21 (granting summary judgment to CUNY on Title VI discrimination claim because, inter alia, "plaintiff has failed to present admissible evidence raising a question of fact as to whether [CUNY's] justification was pretextual").

## POINT II
### Plaintiff Cannot Sustain Her Section 1981 and 1983 Claims Against
### The Individual Defendants

A. Plaintiff Fails To Show Racial Discrimination

For the reasons described in Point I above, Plaintiff's Title VI claim cannot survive the instant motion for summary judgment because, inter alia, she fails to present any evidence of intentional discrimination on the basis of race, color and/or national origin (or, for that matter, any other impermissible consideration). That failure is also fatal for Plaintiff's Section 1981 claims, as well as her Section 1983 claims of discrimination on the same grounds, because Sections 1981 and 1983, like Title

VI, "require[] proof of intentional discrimination." Okolie v. Paikoff, 589 F. Supp. 2d 204, 217 (E.D.N.Y. 2008).

In other words, Plaintiff's Sections 1981 and 1983 claims of discrimination on the basis of race, color and/or national origin are doomed by the same lack of evidence of intentional discrimination as her Title VI claim. See, e.g., id. at 218-220 ("defendants' motion for summary judgment on all intentional discrimination claims is granted and [plaintiff's] § 1983 equal protection claim and claims under sections 1981…and Title VI are dismissed" because "there is not a shred of credible evidence in the record to support…a jury finding of intentional discrimination"); see also Wrenn v. Bd. of Directors, 1989 WL 23135, at *13-14 (N.D.N.Y. Feb. 21, 1989) (granting "defendants' motion for summary judgment dismissing plaintiff's claims brought under §§ 1981 and 1983 and Title VI" because "Plaintiff has not raised a material issue of fact as relates to discriminatory intent").

B.   Plaintiff Fails To Show Religious Discrimination Or An Establishment Clause Violation

In order to sustain her Section 1983 claim for religious discrimination, "[P]laintiff must show intentional discrimination on the basis of religion." Man-of-Jerusalem v. Hill, 769 F. Supp. 97, 102 (E.D.N.Y. 1991). However, as demonstrated above, Plaintiff fails to offer any evidence of intentional discrimination whatsoever in this case. This lack of evidence is fatal for her Section 1983 religious discrimination claim as well. See, e.g., Krulik v. Bd. of Educ. of City of N.Y., 781 F.2d 15, 23 (2d Cir. 1986) (affirming grant of judgment n.o.v. to defendant on claims under Sections 1981 and 1983 because "the record is barren of any evidence of intentional discrimination on the basis of [plaintiff's] race or religion").

Plaintiff's Section 1983 establishment clause claim, which is based on the same allegations as her religious discrimination claim, fares no better. See, e.g., Bowles v. N.Y.C. Transit Auth., 2006 WL 1418602, at *15-16 & n.29 (S.D.N.Y. May 23, 2006) (religious discrimination claim "might also logically sound under the Establishment Clause of the First Amendment but, even so considered,

cannot survive summary judgment for the [same] reasons"). In any event, "[t]he Establishment Clause guarantees that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion." Higgins v. Davis, 2001 WL 262930, at *5 (S.D.N.Y. Mar. 15, 2001) (citations omitted). "Accordingly, when faced with challenges to the Establishment Clause, District Courts in the Second Circuit must determine 'whether the government acted with the purpose of advancing or inhibiting religion and whether the aid has the effect of advancing or inhibiting religion.'" Sumner v. McCall, 2003 WL 23105225, at *2 (N.D.N.Y. Nov. 17, 2003) (quoting Destefano v. Emergency Housing Group, Inc., 247 F.3d 397, 406 (2d Cir. 2001)). "When applying the 'advancing' and 'inhibiting' prong of this test, the Court determines if the action or program; (i) results in government indoctrination; (ii) defines its recipients by reference to religion; or (iii) creates an excessive entanglement between the state and religion." Id. It is Plaintiff's burden to show that one of these factors is present in this case, and her utter failure to do so is fatal to her establishment clause claim as a matter of law. Id. at *3-4 (granting summary judgment to defendant on establishment clause claim because plaintiffs presented "insufficient evidence to show that the program has the effect of advancing or inhibiting religion, or that it fosters an excessive entanglement with religion").

C.   Plaintiff Fails To Show Personal Involvement

"An individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation" of a constitutional right. Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015) (citations omitted). Yet Plaintiff fails to even allege, much less set forth evidence to demonstrate, that any of the Individual Defendants were personally involved in any constitutional violation. To the contrary, "the unrebutted evidence shows that no defendants had any personal involvement in any of the alleged unlawful activities." Emengo v. Stark, 2018 WL 10879391, at *4 (S.D.N.Y. June 12, 2018).

Specifically, it is undisputed that, with the exception of Nireata Seals, none of the Individual Defendants were involved in admissions decisions at the Silberman School at all, much less the specific decision to reject Plaintiff's application. See 56.1 Stmt. ¶¶ 16-20, 34-38. It is also undisputed that the allegedly discriminatory admissions interview was conducted by Robin Strauss, who is not a party to this case. Id. ¶ 26. Thus, the only evidence in the record shows that none of the Individual Defendants were personally involved in the allegedly unlawful conduct at issue in this case. See Emengo, 2018 WL 10879391, at *4 (finding "no plausible cause of action against any of the defendants" under Sections 1981 or 1983 because "there is no evidence that any of these defendants were personally involved…in the decision to not promote Plaintiff").

Indeed, there are no allegations whatsoever regarding any involvement by the Members of the CUNY Board of Trustees, former CUNY Chancellor James Milliken or Hunter College President Jennifer Raab in denying Plaintiff's application for admission to the Silberman School. To the contrary, none of them even work at the Silberman School in the first place, much less in the admissions office, and they appear to have been named as defendants solely because of their respective positions at CUNY and/or Hunter College. However, the fact "[t]hat an individual occupies 'a high position of authority is an insufficient basis for the imposition of personal liability'" under Sections 1981 and 1983. Westbrook v. City Univ. of N.Y., 591 F. Supp. 2d 207, 224 (E.D.N.Y. 2008) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977)); see also Kirkland-Hudson v. Mt. Vernon City Sch. Dist., 2023 WL 2691622, at *30 (S.D.N.Y. Mar. 29, 2023) ("under § 1981 and § 1983, an individual may not be held liable merely because he held a high position of authority") (citations omitted).

It is also undisputed that Roberta Nord and John Rose, neither of whom work at the Silberman School either, much less in its admissions office, first became aware of Plaintiff only after her application for admission to the Silberman School had already been rejected. See 56.1 Stmt. ¶¶ 39, 46. Indeed, Ms. Nord and Mr. Rose were enlisted precisely to investigate that very rejection. Id. Thus, the

undisputed facts demonstrate that it was impossible for either Ms. Nord or Mr. Rose to have been involved in the denial of Plaintiff's application for admission to the Silberman School.

This brings us to Nireata Seals, the only Individual Defendant who actually worked in the admissions office at the Silberman School. However, it is undisputed that Ms. Seals was not involved in conducting Plaintiff's allegedly discriminatory admissions interview. Id. ¶ 26. There is also no evidence that Ms. Seals harbored any discriminatory animus based on any protected class. Thus, Plaintiff fails to show that Ms. Seals, "through [her] own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Indeed, it appears that Ms. Seals was named as a defendant solely because she was the Director of Admissions at the Silberman School at the time of Plaintiff's application. However, as noted above, a high position of authority is insufficient to establish personal involvement under Sections 1981 or 1983. Westbrook, 591 F. Supp. 2d at 224.

Plaintiff has thus failed to establish personal involvement by any of the Individual Defendants. On that basis alone, the Section 1981 and Section 1983 claims against them fail as a matter of law. Id. (claims "pursuant to §§ 1981 and 1983….cannot survive defendant's motion for summary judgment because plaintiff fails to establish the 'personal involvement' or 'active participation' necessary to impose liability under these statutes").

## POINT III
### Plaintiff Is Not Credible

For the reasons set forth above, summary judgment should be granted to Defendants for a wide variety of reasons that are entirely unrelated to the parties' respective credibility. The inclusion of this Point should not, therefore, be interpreted to imply that the Court must make a credibility determination to decide the instant motion.

However, should it choose to do so, the Court can consider Plaintiff's lack of credibility because this case represents the "rare circumstance where the plaintiff relies almost exclusively on

[her] own testimony, much of which is contradictory and incomplete." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005). Indeed, aside from her own self-serving and baseless testimony, Plaintiff offers no support whatsoever for her allegations in this case. Specifically, as noted previously, Plaintiff's case rests almost entirely on her description of an alleged conversation between herself and John Rose, in which Mr. Rose supposedly confessed for no reason whatsoever that the Silberman School employs a discriminatory admissions policy. SAC ¶ 99.

This testimony is simply too incredible to be believed. Indeed, as Mr. Rose states in his sworn declaration denying that this conversation ever took place, "[a]nyone who has ever met me knows that I would never make such statements because they are not true. Moreover, anyone who understands the nature of my role at Hunter knows that I could not have retained my position for nearly 16 years by demonstrating such a glaring lack of judgment and exhibiting such bias." <u>See</u> Rose Decl. ¶ 16. It is thus evident that "no reasonable person could believe Plaintiff's testimony" and "permitting [her] to present such incredulous testimony at trial would be a terrible waste of judicial resources and a fraud on the court." <u>Jeffries</u>, 426 F.3d at 553, 555. The Court is therefore free to consider Plaintiff's lack of credibility when deciding the instant motion. Indeed, "[t]o hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings…would license the mendacious to seek windfalls in the litigation lottery." <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 106 (2d Cir. 2011) (citations omitted).

### POINT IV
### The Individual Defendants Are Entitled to Qualified Immunity

"'Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Fortunati v. Vermont</u>, 503 Fed. Appx. 78, 80 (2d Cir. 2012) (quoting <u>Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007)</u>). "Where, as here, a constitutional claim contains a subjective

component, many courts have imposed on plaintiffs what they describe as a heightened standard, requiring them to provide specific allegations or direct evidence of the required state of mind in order to avoid summary judgment based on the defense of qualified immunity." Blue v. Koren, 72 F.3d 1075, 1082-83 (2d Cir. 1995) (citing Siegert v. Gilley, 500 U.S. 226, 235-36 (1991) (Kennedy, J., concurring)). The Second Circuit "agree[s] with this approach" and, accordingly, "plaintiffs must offer specific evidence of improper motivation" to defeat an assertion of qualified immunity at the summary judgment stage. Id. at 1083. More specifically, "the particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." Id. at 1084.

Plaintiff utterly fails to satisfy these standards. To the contrary, as described above, she entirely fails to present any evidence of personal involvement, much less intentional discrimination, by any of the Individual Defendants. Plaintiff thus fails to defeat their assertion of qualified immunity. Id. at 1082 (finding plaintiff "has not provided legally sufficient evidence of [improper] motive to survive a motion for summary judgment based on the defense of qualified immunity").

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor, and order such other and further relief as it deems to be just and proper.

Dated: New York, New York
     June 30, 2023

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants

By:     /s/ Eva L. Dietz

25

Eva L. Dietz
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6211