UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
FAIGY RACHEL WEISS,                                         :
:
                     Plaintiff,                  :
:      17-CV-3557 (VSB) (VF)
      - against -                              :
:      **OPINION & ORDER**
:
CITY UNIVERSITY OF NEW YORK, *et al*.,          :
:
                     Defendants.                 :
:
-----------------------------------------------------------X

Appearances:

Faigy Rachel Weiss
Brooklyn, NY
*Pro se Plaintiff*

Eva Lenore Dietz
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Faigy Rachel Weiss, proceeding pro se, asserts that Defendants' denial of her application to a graduate program was discriminatory in various ways. Before me is Defendants' motion for summary judgment on Plaintiff's remaining claims. As discussed below, Plaintiff fails to identify any record evidence suggesting that Defendants intentionally discriminated against her in connection with her application for admission. Thus, and for the reasons that follow, Defendants' motion is GRANTED.

## I. Factual Background[1]

Plaintiff Faigy Rachel Weiss ("Weiss") is a Jewish woman raised in the Satmar Hasidic[2] community, which she describes as "private, insular," and lacking in educational opportunities for women. (Weiss Dep. 18; Weiss Application & Eval. 33.)[3] "Plaintiff's native language is Yiddish. English is her second language." (Opp'n 7.)[4] Prior to the events at issue in this litigation, Plaintiff ended her arranged marriage and distanced herself from the Satmar community, eventually receiving a Bachelor's degree in Jewish Psychology and going on to various professional positions in the social work field. (*See* Weiss Application & Eval. 29, 33–35, 49.)

Defendant City University of New York ("CUNY") "is a system of higher education" organized under the laws of New York. (CUNY 56.1 ¶ 2.)[5] Hunter College (the "College") and the Silberman School of Social Work (the "Silberman School") at Hunter College exist within the CUNY system and are part of the CUNY legal entity. (*See id*. ¶¶ 1–2.) During the relevant time period: Defendant James Milliken ("Milliken") was the Chancellor of CUNY, (*id*. ¶ 4); Defendant Nireata Seals ("Seals") was the Assistant Dean of Enrollment Management at the Silberman School, (*id*. ¶ 5); Defendant John Rose ("Rose") was Hunter College's Dean for

---

[1] The facts are undisputed unless otherwise noted. I recite the facts in the light most favorable to Plaintiff because she is the opponent of the summary-judgment motion. *See, e.g.*, *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

[2] Plaintiff sometimes spells "Hasidic" as "Chasidic." (*See* Doc. 264 at 7.)

[3] "Weiss Dep." refers to Plaintiff's deposition, attached as Exhibit 1 to the Declaration of Eva L. Dietz. (Doc. 246 at 4–36.) Pincites to the deposition refer to the internal pagination of the deposition. "Weiss Application & Eval." refers Weiss's application materials and Defendants' record of their review of Weiss's application, attached as Exhibit 2 to the Declaration of Nireata Seals. (Doc. 248 at 23–55.) Pincites to these materials refer to the PDF pagination of Doc. 248.

[4] "Opp'n" refers to Plaintiff's brief in opposition to Defendants' motion for summary judgment. (Doc. 264.) The fact that Yiddish is Plaintiff's native language is not referenced in the factual record and therefore may not be considered at summary judgment. *See* Fed. R. Civ. P. 56(c)(1). I provide this fact for purposes of background only.

[5] "CUNY 56.1" refers to Defendants' Statement of Material Undisputed Facts Pursuant to Local Civil Rule 56.1. (Doc. 243.)

Diversity and Compliance and Title IX Coordinator, (*id*. ¶ 6); Defendant Jennifer Raab ("Raab") was the President of Hunter College, (*id*. ¶ 7); and Defendant Roberta Nord ("Nord") was the Founding Director of CUNY's Office of Student Advocacy, (*id*. ¶ 8). Collectively, Milliken, Seals, Rose, Raab, and Nord are referred to as the "Individual Defendants."

On February 1, 2015, Plaintiff applied for admission to the Master of Social Work ("MSW") program at the Silberman School. (*Id*. ¶ 21.) Components of the MSW application included a written statement of purpose, three letters of recommendation, and undergraduate transcripts. (*Id*. ¶ 9.) One of Plaintiff's recommendation letters rated her "promise for success in [her] chosen field" as "good," (Pl.'s Response to CUNY 56.1 ¶ 23),[6] "rated her promise for graduate study as 'Fair,' and "wrote 'Not Applicable' for the rating that asked how Plaintiff's personal qualities support academic and professional success," (CUNY 56.1 ¶ 23). Another of Plaintiff's recommendation letters rated her "promise for success in [her] chosen field" and "promise for graduate study" as "Excellent," (Pl.'s Response to CUNY 56.1 ¶ 24), "but fail[ed] to mention social work" or specifically discuss the reasons why Plaintiff had promise for success in her chosen field, (CUNY 56.1 ¶ 24). Plaintiff's resume included her experiences as a research assistant in a psychophysiology lab, as a psychology intern at a substance-abuse-treatment organization, and as a "specialist working with developmentally disabled children helping them integrate in their communities." (Pl.'s Response to CUNY 56.1 ¶ 22; *see* CUNY 56.1 ¶ 22.)

Part of the Silberman School's MSW application process includes a group interview of six to eight applicants per session, and prior to the interviews the interviewers do not review the applicants' materials. (CUNY 56.1 ¶ 13.) The interview consists of a writing exercise in

---

[6] "Pl.'s Response to CUNY 56.1" refers to Plaintiff's Response to Defendants' Local Rule 56.1 Statement and Further Statement of Material Facts in Opposition to the Defendants' Motion for Summary Judgment. (Doc. 272.)

3

response to an article followed by questioning designed for the interviewer to "assess [the candidates'] ability to engage in a group setting, articulate why they [wish] to pursue a career in social work, and demonstrate their commitment to social work values." (*Id*. ¶ 14.) After the group interview, the interviewer rates each candidate across a series of categories, noting each candidate's strengths and weakness. (*Id*. ¶ 15.) A higher combined interview score corresponds to a higher likelihood of admission, and applicants who received a score of 24 or lower will received a recommendation to be denied admission. (*Id*.)

        The first "reader" of Plaintiff's application materials rated them as "Good," deferring an admissions recommendation until after Plaintiff attended a group interview. (*Id*. ¶¶ 12, 25.) Plaintiff attended a group admissions interview conducted by Robin Strauss ("Strauss") on April 7, 2015. (*Id*. ¶ 26.) Contrary to Defendants' assertion that "Plaintiff was not asked any questions about her upbringing, her religious beliefs, or politics," (*id*.), Plaintiff claims that during the interview, Strauss "made a comment about the name Faigy," Plaintiff's first name, "being Hebrew and having the same meaning as the name Robin, which is bird," (Pl.'s Response to CUNY 56.1 ¶ 30). Plaintiff further states that "Faigy is actually a Yiddish name," and that Strauss "has a very different background and life experiences than Plaintiff." (*Id*.) Additionally, Plaintiff claims that she was singled-out during the interview for a follow-up question about "why she was not interested in special education." (*Id*. ¶ 40). Otherwise, the parties agree that during the interview, "Plaintiff introduced herself and discussed working with children with disabilities" in addition to completing the written submission. (CUNY 56.1 ¶ 30.)

        Strauss—who had previously conducted approximately 2,000 MSW group interviews—rated Plaintiff's performance during the group interview as "marginal[]" in six of the eleven categories, resulting in an overall score of twenty seven. (*Id*. ¶¶ 28, 31.) Strauss noted that

4

Plaintiff had "basic writing skills – but writes about HERSELF!" (Weiss Application & Eval. 24–25.) Strauss checked the box corresponding to "Tier III" in the "Overall Assessment" section, the lowest tier before a recommendation for an outright denial. (*Id*.) She also wrote a line over the "Tier III" and "Denied" boxes, and added a question mark above "Denied." (*Id*.)

Following Strauss' evaluation, it is undisputed that Weiss was denied admission to the MSW program and was notified of her rejection by email dated April 28, 2015. (CUNY 56.1 ¶ 33; Pl.'s Response to CUNY 56.1 ¶ 33 (not disputing these facts).) Defendants state that Seals decided to deny Plaintiff's application for admission to the MSW program based on her review of Plaintiff's application materials and the other reviewers' evaluations. (CUNY 56.1 ¶ 33.) Weiss submits that CUNY "did not follow established affirmative action laws . . . , does not have holistic reviews, racially profiled applicants, and placed them in racial categories based on interviewers' perceptions." (Pl.'s Response to CUNY 56.1 ¶ 33 (some punctuation altered).)

On December 7, 2015, Weiss emailed Rose—the diversity and Title IX dean at Hunter College—stating that "it [had] recently come to [Weiss's] attention that the [MSW] program has a very low acceptance rate for women from [Weiss's] background," and that Weiss "therefore believe[d] that [she] was discriminated against on the basis of religion and disability by being denied entry into the [MSW] program." (Rose Decl., Ex. 1.)[7] Rose met with Weiss and Sandra Nunez—a member of the College's legal department—on December 23, 2015. (CUNY 56.1 ¶ 40.) During the meeting, the parties agree that Weiss told Rose and Nunez "that she had been singled out during the group interview because she was the only applicant who was asked why she was not interested in special education and how she would handle working with people who are different from her." (*Id*.) Weiss asserts, but Rose and Nunez deny, that during the meeting

---

[7] "Rose Decl." refers to the Declaration of John Rose. (Doc. 247.)

5

Weiss also said that during the interview "she and another candidate had both discussed their experience working with children with disabilities during the group interview, though only [Plaintiff] was asked a follow-up question about why she was not interested in special education." (Pl. Response to CUNY 56.1 ¶ 40; *see also* CUNY 56.1 ¶ 40.)

On January 15, 2016, Roze and Nunez met with Strauss to discuss Weiss's complaint about the interview. (CUNY 56.1 ¶ 42.) Strauss stated she did not recall asking Weiss about her interest in special education during the interview, but that if she did, it may have been in response to something that Weiss said in the interview. (*Id*.) Silberman's guidelines for the group interview state that it is a "face-to-face conversation," and lists questions to ask applicants; one question relates to the applicant's "thoughts about being different from people in [their] class." (Interview and Essay Guidelines 16.)[8] Weiss notes that these "guidelines do not have" a specific provision allowing for "follow-up questions." (Pl. Response to CUNY 56.1 ¶ 45.) After this meeting and at Strauss and Rose's requests, Weiss was offered the ability to take classes at Silberman as a non-matriculated student without paying tuition; Weiss declined this offer. (CUNY 56.1 ¶ 43.)

On February 2, 2016, Weiss emailed Rose, alleging that in addition to her prior complaint, she believed that "the interview portion of the [MSW] admissions process is unconstitutional . . . because applicants could potentially say something that the interviewer does not like and/or agree with and that could be the reason why the applicant was/is denied entrance to [the MSW program]." (Rose Decl., Ex. 3.) Rose and Nunez thereafter investigated this aspect of Weiss's complaint and drafted a memo dated February 11, 2016 concluding that "the group

---

[8] "Interview and Essay Guidelines" refers to the documents attached as Exhibit 1 to the Declaration of Nireata Seals. (Doc. 248 at 10–22.) Pincites refer to the internal PDF pagination of Doc. 248.

6

interview process" in general and as applied to Weiss "is guided by specific objective guidelines that are uniformly applied to all [MSW] applicants and that are legitimately related to assessing an applicant's preparation for graduate-level work in the field of social work." (CUNY 56.1 ¶ 45.) Rose sent the memo to Raab—the Hunter College President—who forwarded it to Weiss. (*Id*.) Weiss disagrees with the conclusion of the memo, claiming that Strauss singled her out for questioning during the group interview. (Pl. Response to CUNY 56.1 ¶ 45.)

On April 26, 2016, Weiss emailed the CUNY Chancellor's Office asking it to investigate her claims of discrimination during her application process to the Silberman MSW program. (*Id*. ¶ 46.) Nord investigated Weiss's claim, concluding that "the decision to deny Plaintiff's application to the Silberman School was based on the academic judgment of the admissions officials who had evaluated her application materials and interviewed her, and there was no basis to overrule their decision." (*Id*. ¶¶ 46–48.) Nord emailed Weiss to inform her of this conclusion on April 28, 2016, reiterating the offer that Weiss take MSW classes for free as a non-matriculated student. (*Id*. ¶ 49.) Weiss did not respond. (*Id*.)

## II. **Procedural History**

On May 11, 2017, Weiss initiated this action pro se by filing a complaint. (*See* Doc. 1.) For purposes of this Opinion & Order, I omit the procedural history preceding my July 2, 2021 Opinion & Order granting in part and denying in part Defendants' motion to dismiss. (*See* Doc. 135.)[9] Defendants answered Plaintiff's operative complaint on August 31, 2021. (*See* Doc. 141.) Between approximately October 2021 and February 2023, the parties engaged in discovery and court-ordered mediation; Plaintiff was represented by pro bono counsel for a

---

[9] *See also Weiss v. City U. of N.Y.*, No. 17-CV-3557, 2021 WL 2784446 (S.D.N.Y. July 2, 2021). Further procedural details are available in previous Opinions & Orders. *See Weiss v. City U. of N.Y.*, No. 17-CV-3557, 2019 WL 5891894 (S.D.N.Y. Nov. 10, 2019); *Weiss v. City U. of N.Y.*, No. 17-CV-3557, 2019 WL 1244508 (S.D.N.Y. Mar. 18, 2019).

7

substantial portion of the discovery proceedings. (*See, e.g.*, Docs. 136, 142, 153, 154, 193, 234, 238.)

Defendants filed a motion for summary judgment on June 30, 2023, (Doc. 242), along with a supporting memorandum of law, (Doc. 249 ("MSJ Mem.")), a Local Rule 56.1 Statement, (Doc. 243), and supporting declarations, (Docs. 244–48). Plaintiff submitted a memorandum of law in opposition to Defendants' motion on November 30, 2023, (Doc. 264 ("Opp'n")), along with a supporting declaration, (Doc. 265 ("Weiss Decl.")). Defendants submitted a reply brief on January 18, 2024. (Doc. 267 ("Reply").) With the Court's leave, Plaintiff submitted a response to Defendants' Local Rule 56.1 Statement on February 16, 2024, (Doc. 272), and Defendant submitted its response to Plaintiff's submission on March 5, 2024, (Doc. 275).

## III. Legal Standard

To prevail on a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions . . . or declarations," or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). "Once the moving party has carried its burden" of citing

portions of the record evincing no genuine dispute as to any material fact, "the nonmoving party 'must come forward with specific facts showing there is a genuine issue for trial,' bearing in mind that 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" *Barr v. City of New York*, No. 16-CV-5266, 2018 WL 3407705, at *3 (S.D.N.Y. July 2, 2018) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and then quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, viewing the evidence in the light most favorable to the non-moving party means that I may not "weigh the evidence" and must "eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

As Plaintiff is a pro se litigant, I am mindful of my obligation to "afford [her] a special solicitude . . . particularly where motions for summary judgment are concerned." *Youngblood v. City of New York*, No. 15-CV-3541, 2019 WL 6216498, at *4 (S.D.N.Y. Nov. 21, 2019) (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam)). "Courts read the pleadings, briefs, and opposition papers of pro se litigants liberally and interpret them to raise the strongest arguments that they suggest." *Id.* (quoting *Rivera v. Goulart*, No. 15-CV-2197, 2018 WL 4609106, at *3 (S.D.N.Y. Sept. 25, 2018)) (cleaned up). "This special solicitude is not unlimited, however, and does not relieve a [pro se] party of his or her duty to meet the requirements necessary to defeat a motion for summary judgment." *Murray v. Dabo*, No. 22-CV-4026, 2024 WL 1421119, at *4 (S.D.N.Y. Feb. 2, 2024) (internal quotation marks omitted), *report and recommendation adopted*, 2024 WL 964599 (S.D.N.Y. Mar. 5, 2024). "Like any other litigant, 'a pro se plaintiff cannot defeat a motion for summary judgment by simply relying on the allegations of [her] complaint; [s]he must present admissible evidence from which a reasonable

9

jury could find in [her] favor.'" *Id*. (quoting *Minus v. City of New York*, 488 F. Supp. 3d 58, 60 n.2 (S.D.N.Y. 2020)).

### IV.   Discussion

The three of Plaintiff's surviving claims are: (1) a discrimination claim against CUNY under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; (2) a claim against the Individual Defendants that they discriminated against her in violation of 42 U.S.C. § 1981; and (3) a claim against the Individual Defendants for discrimination in violation of 42 U.S.C. § 1983. (*See* Doc. 135 at 3, 21; *see also* Opp'n 2.) I address these claims in turn.

#### A.   *Title VI Claims Against CUNY*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. At summary judgment, to prevail on a "claim under Title VI, Plaintiff must show that: (1) [CUNY] received federal financial assistance, (2) Plaintiff was an intended beneficiary of the program or activity receiving the assistance, and (3) [CUNY] discriminated against Plaintiff on the basis of race, color, or national origin in connection with that program or activity." *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 138 (S.D.N.Y. 2020) (internal quotation marks and emphasis omitted).

#### 1. Federal Financial Aid

Defendants first argue that Plaintiff has not identified record evidence that CUNY receives federal funding of which Plaintiff was the intended beneficiary.[10] (MSJ Mem. 9–10.)

---

[10] Courts sometimes refer to the federal-financial-assistance element of a Title VI claim as a plaintiff's "standing" to bring a Title VI claim. *See, e.g.*, *Nektalov v. Kuwait Airways Corp.*, No. 15-CV-33, 2016 WL 5678549, at *7 (E.D.N.Y. Sept. 30, 2016).

In response, Plaintiff does not cite record evidence, instead referring to a portion of Defendants' brief in support of their motion to dismiss Plaintiff's second amended complaint stating that certain questions in the MSW admissions process are designed to evaluate an applicant's eligibility for federal financial aid. (Opp'n 7 (citing Doc. 83 at 17).) Generally, at summary judgment, a plaintiff's failure to identify record evidence to demonstrating a genuine dispute of material fact entitles a defendant to summary judgment. *See* Fed. R. Civ. P. 56(c)(1). Given the "special solicitude" owed to Plaintiff as a pro se litigant, however, I decline to grant summary judgment on this ground. *Youngblood*, 2019 WL 6216498, at *4 (internal quotation marks omitted). There is no dispute that Defendant Rose is Hunter College's Title IX coordinator, and Title IX is a statute that applies to "federally funded education programs." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022) (internal quotation marks omitted). Viewing the record in the light most favorable to Plaintiff, there is at least a dispute of fact as to whether CUNY receives federal funds that Plaintiff might have benefitted from as an MSW student. Indeed, courts generally resolve Title VI actions against federally funded universities on the discrimination inquiry. *See, e.g.*, *id.* at 109–11; *Scelsa v. City Univ. of N.Y.*, 806 F. Supp. 1126, 1140–42 (S.D.N.Y. 1992) (granting preliminary injunction on discrimination and retaliation claims without evaluating federal-funding question). Further, one in-District court has noted that "CUNY's federal funding" could be aimed at "purposes . . . such as . . . student financial aid." *Miller-Sethi v. City Univ. of N.Y.*, No. 21-CV-8591, 2023 WL 419277, at *8 (S.D.N.Y. Jan. 26, 2023).

### 2. Discrimination

I next address Defendants' contention they are entitled to summary judgment because Plaintiff cannot show that CUNY discriminated against her in violation of Title VI. *See*

11

*Brannon*, 434 F. Supp. 3d at 138. Construing Plaintiff's briefing to raise the strongest arguments it suggests, *see Youngblood*, 2019 WL 6216498, at *4, Plaintiff asserts that being denied admission to the MSW program was discriminatory because (1) CUNY uses racial quotas in its MSW admissions, and might have admitted Plaintiff if she had not been categorized as a white applicant, and (2) the group interview process permitted CUNY to impose false stereotypes on Plaintiff, harming her chances for admission, (*see* Opp'n 2–3, 7–14).[11] I conclude that summary judgment on this claim is appropriate, as Plaintiff musters no record evidence to support either argument.

Courts look to caselaw involving "Title VII's discrimination prohibition" to evaluate the discrimination element of Title VI claims. *Vengalattore*, 36 F.4th at 103. "A plaintiff can prove intentional discrimination through either direct or circumstantial evidence." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 244 (S.D.N.Y. 2014) (internal quotation marks omitted). "'Direct evidence' of discrimination 'includes, *inter alia*, policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Emmanuel v. Cushman & Wakefield, Inc.*, No. 13-CV-2894, 2015 WL 5036970, at *4 (S.D.N.Y. Aug. 26, 2015) (second emphasis omitted) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 173–74 (2d Cir. 2006)). "Direct evidence may also include evidence of discriminatory statements or actions by employees." *Id*. Since such direct evidence of discrimination "is often lacking," a purported "victim of discrimination . . . is usually constrained

---

[11] In Defendants' opening brief, they discuss Plaintiff's prior assertion that Defendant Rose told her that "the Silberman School used group admissions interviews to 'weed out conservatives' because 'Jews from religious backgrounds are too conservative to be social workers.'" (MSJ Mem. 12 (quoting Doc. 93 ¶ 99).) Plaintiff, however, waived any argument based on this assertion by declining to discuss it in her opposition brief. (*See generally* Opp'n). *See also, e.g.*, *Lee v. Mondelez Int'l*, 637 F. Supp. 3d 116, 140 (S.D.N.Y. 2022) (concluding that a plaintiff "expressly waived" an argument "by failing to raise it in his opposition brief").

to reply on the cumulative weight of circumstantial evidence." *Whitehurst*, 998 F. Supp. 2d at 245 (internal quotation marks omitted).

When relying on circumstantial evidence of discrimination, courts use "the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Vengalattore*, 36 F.4th at 103. Under the framework, Plaintiff "first" must "assert a prima facie claim" of discrimination against Defendants. *JF v. Carmel C. Sch. Dist.*, 168 F. Supp. 3d 609, 623 (S.D.N.Y. 2016) (internal quotation marks omitted). To meet the "minimal" burden of establishing a prima facie case, *Whitehurst*, 998 F. Supp. 2d at 245 (internal quotation marks omitted), Plaintiff must show that "similarly situated individuals" outside of Plaintiff's protected class "were treated more favorably" than her, or some other "circumstance[] giving rise to a plausible inference of racially discriminatory intent," *Brannon*, 434 F. Supp. 3d at 133, 136 (internal quotation marks omitted); *see also, e.g.*, *JF*, 168 F. Supp. 3d at 623.

"If [Plaintiff] makes out a prima facie case, the burden shifts to [Defendants] to show a legitimate, nondiscriminatory reason for its conduct." *JF*, 168 F. Supp. 3d at 623 (internal quotation marks omitted). "Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [Defendants] were not [the] true reasons, but were a pretext for discrimination." *Id*. (internal quotation marks omitted). "Plaintiffs may establish pretext and thereby successfully oppose summary judgment, by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action." *Whitehurst*, 998 F. Supp. 2d at 246 (internal quotation marks omitted and alterations adopted).

13

a. <u>Racial Quotas</u>

Plaintiff contends that racial quotas in the MSW admissions process caused her not to receive admission to the Silberman School. Since at least the Supreme Court's 2003 decision *Grutter v. Bollinger*, it has been impermissible discrimination for an institute of education to "establish quotas for members of certain racial or ethnic groups or put them on separate admissions tracks." 539 U.S. 306, 334 (2003). Evidence of such a quota system in the Silberman School MSW program therefore might be thought of as direct evidence of discrimination, because such quotas would "directly reflect[] [a] . . . discriminatory attitude." *Emmanuel*, 2015 WL 5036970, at *4 (internal quotation marks and emphasis omitted).

Plaintiff, however, identifies no evidence in the record to suggest that CUNY employs such a quota system. Instead, she directs me to her "preliminary" analysis of CUNY's admissions data, which purportedly shows that "[w]hite students were in the minority at the program even though white applicants had the highest application rate," and that "[w]hite applicants were rejected at a higher rate than minority applicants." (Weiss Decl. ¶ 15 (citing Weiss Decl., Exs. B, C).) Even if I were to accept this "preliminary" analysis as true, (*id*.), it would not establish a Title VI violation, because the text of the statute "only prohibits intentional discrimination, not actions that have a disparate impact upon" different racial or ethnic groups,[12] *Brannon*, 434 F. Supp. 3d at 138 (emphasis omitted) (quoting *N.Y. Urban League, Inc. v. New York*, 71 F.3d 1031, 1036 (2d Cir. 1995)). It is true that "Title VI delegate[s] to federal agencies the authority to promulgate regulations incorporating a disparate impact standard," *N.Y. Urban*

---

[12] Relatedly, Plaintiff contends that she "had a 0% chance of getting into the [MSW] program" because she is a Yiddish speaker, and a Yiddish speaker did not appear on "the list of applicants given to Plaintiff by Defendants." (Opp'n 10.) Plaintiff identifies no evidence that Defendants intentionally discriminated against Yiddish speakers. Although the ability to speak a language other than English is sometimes relevant to "national origin or race discrimination," it is not on its own a protected category under Title VI. *Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-CV-10941, 2022 WL 13808524, at *4–5 (S.D.N.Y. Oct. 21, 2022) (internal quotation marks omitted).

14

*League*, 41 F.3d at 1036 (citing, *inter alia*, *Alexander v. Choate*, 469 U.S. 287, 293, 293 nn. 8–9 (1985)), and that the Department of Justice has promulgated such a regulation, *see* 28 C.F.R. § 42.104(b)(2).  However, in *Alexander v. Sandoval*, the Supreme Court held that Title VI does not "create a freestanding private right of action to enforce regulations promulgated under [the statute]," including the disparate-impact regulation in 28 C.F.R. § 42.104(b)(2).  532 U.S. 275, 293 (2001).  Weiss may therefore not bring a disparate-impact claim in this private suit.

The type of evidence that might sustain a discrimination-in-admissions claim is evidence that in "rating" applicants, "readers can and do take an applicant's race into account," that "readers may offer students a plus based on their race" in the admissions process, and the like. *Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*, 600 U.S. 181, 194–96 (2023) (internal quotation marks omitted).  The closest evidence in the record Plaintiff identifies as approximating intentional racial discrimination is Defendant Seals's statement in her deposition that the Silberman School investigated the reasons that individuals "who identified as minority students" might decide not to attend the MSW program after being admitted to it. (Seals Dep. 27:7-25.)[13]  However, Plaintiff was never admitted to the MSW program, so evidence of Defendants' potential consideration of race when a candidate decides not to attend the MSW despite being admitted is irrelevant to this claim.  Plaintiff does not meaningfully contest that Silberman's internal admissions criteria do not turn on or require consideration of an applicant's race, and instead evaluate race-neutral considerations such as undergraduate grades, relevant work experience, demonstrated interest in an MSW career, and interpersonal skills.  (*See*

---

[13] "Seals Dep." refers to the Deposition of Defendant Seals, attached as an exhibit to the Weiss Declaration.  (Doc. 265 at 106.)

CUNY 56.1 ¶¶ 9–15.) In short, Plaintiff fails to show that being denied admission to the MSW program was at all connected to any system of racial quotas or preferences.

### b. Group Interviews

Alternatively, Plaintiff argues that she experienced discrimination during her group admissions interview. During the interview, Defendant Robin Strauss allegedly said that Plaintiff's first name, "Faigy," was "Hebrew and [had] the same meaning as the name Robin, which is bird." (Pl.'s Response to CUNY 56.1 ¶ 30.) In fact, "Faigy . . . is a Yiddish name," and Strauss "has a very different background and life experiences than Plaintiff." (*Id.*) Plaintiff also states that she was "singled out" during the interview, (Opp'n 12), for a follow up question about "why she was not interested in special education." (Pl.'s Response to CUNY 56.1 ¶ 40.)

These aspects of Plaintiff's group interview do not meet the "minimal" burden of establishing a prima facie case of discrimination. *Whitehurst*, 998 F. Supp. 2d at 245 (internal quotation marks omitted). Given "the context" and "content" of Strauss's remark about Plaintiff's first name, a reasonable jury would view it as a mistaken attempt to find common ground in a potentially stressful situation, not a comment raising "a plausible inference of discriminatory intent." *Desrosiers v. Summit Sec. Services, Inc.*, No. 21-CV-10941, 2022 WL 13808524, at *3 (S.D.N.Y. Oct. 21, 2022). In other words, Strauss's unsolicited observation about Plaintiff's background was perhaps an unforced social error, but it was not a "discriminatory statement[]," *Emmanuel*, 2015 WL 5036970, at *4—that is, a statement evidencing an intent to "treat worse . . . based on [a protected characteristic]," *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Further, Strauss's comment was completely "[un]related to the decision-making process." *Desrosiers*, 2022 WL 13808524, at *3 (quoting *Henry v. Wyeth Pharmaceuticals*, 616 F.3d 134, 149 (2d Cir. 2010)). Nothing about Strauss's evaluation of

Plaintiff's interview can be read to refer to Plaintiff's first name or her ethnic/religious background.  (*See* Weiss Application & Eval. 24–25.)  It is understandable that Plaintiff would be frustrated by Strauss's misunderstanding and perceive it as presumptuous; Plaintiff explains that "there is substantial diversity, and prejudice, within the Jewish community, especially towards the type of community that Plaintiff is from."  (Opp'n 3.)  However, Plaintiff offers nothing but "speculation and conclusory allegations of discrimination" to connect the comment to the ultimate decision to deny Plaintiff admission to the MSW program.  *Urquhart v. Metro. Transp. Auth.*, 975 F. Supp. 2d 320, 334 (S.D.N.Y. 2013) (internal quotation marks omitted).  This is "insufficient to meet [Plaintiff's] burden of establishing a prima facie case." *Id.*; *cf. Brannon*, 434 F. Supp. 3d at 134 (concluding that a plaintiff's "pure speculation and conjecture . . . that, because he is an African-American man, the [defendants'] actions in response to his behavior must have been motivated by their discriminatory biases" was insufficient to establish a prima facie case of discrimination).

      Plaintiff also attempts to make a prima facie case by arguing that Strauss's follow-up question during the interview shows that Plaintiff was treated differently than similarly situated candidates in the interview outside of Plaintiff's protected class.  *See, e.g.*, *JF*, 168 F. Supp. 3d at 623.  Specifically, Plaintiff asserts that "she and another candidate had both discussed their experience working with children with disabilities during the group interview, though only [Plaintiff] was asked a follow-up question about why she was not interested in special education."  (Pl. Response to CUNY 56.1 ¶ 40.)  As an initial matter, nothing about this follow-up question directly or indirectly relates to Plaintiff's protected status.  In any event, Strauss's asking Plaintiff a follow-up question during a group interview that is meant to be a "conversation," (Interview and Essay Guidelines 16), was not less "favorabl[e]" treatment than

17

not being asked a follow-up question, and therefore does not establish "an inference of discrimination," *Brannon*, 434 F. Supp. 3d at 136.  To the contrary, and even assuming that Plaintiff was the only person in the group interview asked a follow-up question, this question is better understood as more favorable treatment—an additional opportunity for Plaintiff, and not other candidates, to demonstrate why she should be admitted to the MSW program.  In short, a reasonable jury would not conclude that Strauss's asking Plaintiff a follow-up question in the group interview was a discriminatory act.

Thus, Plaintiff has not established a prima facie case of discrimination.  Plaintiff's Title VI claim against CUNY therefore fails, and Defendants' motion for summary judgment is GRANTED.

### B. *Section 1981 and 1983 Claims against the Individual Defendants*

Plaintiff also asserts discrimination claims under 42 U.S.C. § 1981 and § 1983 against the Individual Defendants.  These claims are based on the same events underlying Plaintiff's Title VI claim.  (*See* Opp'n 15–18.)  "While the elements of these claims vary, each requires proof of intentional discrimination." *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 217 (E.D.N.Y. 2008) (collecting cases).  As discussed, Plaintiff identifies no record evidence to support an inference of intentional discrimination in connection with her application to the MSW program.  *See supra* § IV.A.  Defendants' motion for summary judgment as to Plaintiff's § 1981 and § 1983 claims is therefore GRANTED.  *Cf. Brannon*, 434 F. Supp. 3d at 133–38 (dismissing Section 1981 and Title VI claims based on the same analysis); *JF*, 168 F. Supp. 3d at 620–24 (same for § 1983 equal-protection claim and Title VI claim).

### C. *Leave to Conduct Further Discovery*

In her opposition brief, Plaintiff states that "[i]n the alternative" to denying Defendants' summary judgment motions, she seeks "the opportunity for further discovery." (Opp'n 4.) Specifically, Plaintiff seeks further information of applicants to the MSW program in addition to the information of the 1,078 applicants she received, and "evidence showing that defendants have changed the admissions process to ensure compliance in the laws." (*Id*. 4–5.)

Federal Rule of Civil Procedure 56(d) "requires the opponent of a motion for summary judgment who seeks discovery to file an affidavit explaining: (1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful." *Newton v. City of New York*, 640 F. Supp. 2d 426, 443 (S.D.N.Y. 2009) (quoting *Sage Realty Corp. v. Insurance Co. of N. Am.*, 34 F.3d 124, 128 (2d Cir. 1994)). As a preliminary matter, Plaintiff has not submitted a Rule 56(d) affidavit, and this failure "is sufficient grounds for denying" a pro se litigant's "discovery request." *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *17 (E.D.N.Y. Aug. 26, 2012).[14] Moreover, Plaintiff "only states in general, conclusory terms" how the information she seeks would allow her to prevail on her claims; these "bare assertion[s]" do not meet the requirements of Rule 56(d). *Id*. (internal quotation marks omitted). Finally, Plaintiff fails to describe her prior efforts to obtain this discovery and why such efforts were unsuccessful; this is perhaps unsurprising given that no fewer than five attorneys from Baker Botts LLP appeared as pro bono discovery counsel on her

---

[14] Plaintiff was on notice of the Rule 56(d) affidavit requirement, as it was included in the Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment. (*See* Doc. 250 at 4.)

behalf.  (*See* Docs. 95, 96, 127, 136, 142.)  Because Plaintiff has not established an entitlement to further discovery under Rule 56(d), her request is DENIED.

### V. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. Plaintiff is DENIED leave to seek further discovery.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 242, to mail a copy of this Opinion & Order to Plaintiff at the address on file, and to close the case.

SO ORDERED.

Dated: June 23, 2025
      New York, New York

Vernon S. Broderick
United States District Judge