**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
**FAIGY RACHEL WEISS**,
Plaintiff,
-v-
**CITY UNIVERSITY OF NEW YORK, et al.,**
Defendants.
------------------------------------------------------------X
1:17-cv-03557 (vsb)

## NOTICE OF MOTION AND MOTION FOR RECONSIDERATION PURSUANT TO LOCAL CIVIL RULE 6.3 AND FEDERAL RULE 59(e)

PLEASE TAKE NOTICE that Plaintiff Faigy Rachel Weiss respectfully moves this Court for reconsideration of its June 23, 2025 Opinion and Order (ECF No. 276), pursuant to Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e). Plaintiff seeks reconsideration of the Court's grant of summary judgment in favor of Defendants and denial of Plaintiff's request for further discovery and allow this case to go to trial.

## PRELIMINARY STATEMENT

Reconsideration is warranted where a court has "overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is also appropriate to "correct clear error or prevent manifest injustice." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

The Court's Opinion and Order:

1. Erroneously deemed certain arguments waived;

2. Misapplied the standards governing summary judgment;

3. Improperly weighed evidence and drew inferences against the non-movant;

4. Misapplied the McDonnell Douglas burden-shifting framework;

5. Misunderstood the legal relevance of Plaintiff's religious and linguistic identity;

6. Improperly denied Plaintiff's request for discovery under Rule 56(d); and

7. Overlooked controlling precedent and evidence establishing genuine disputes of material fact. Made sua sponta arguments for the defendants that the defendants or their lawyers did not make.

Plaintiff respectfully submits the following additional arguments and legal errors that were either omitted or underdeveloped in the original motion for reconsideration. These arguments further support reconsideration of the Court's June 23, 2025 Opinion and Order (ECF No. 276).

## 1. Improper Judicial Factfinding at Summary Judgment

The Court made factual determinations and inferences against Plaintiff, including that Plaintiff had "distanced herself" from her Satmar background. This constitutes improper factfinding and credibility assessment, which is prohibited at the summary judgment stage. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## 2. Overlooked Statistical Evidence of Racial Balancing

Plaintiff presented evidence that the admitted class mirrored the general population in racial composition, indicating impermissible racial balancing rather than holistic review. This supports a claim of intentional discrimination. "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 723 (2007).

## 3. Incomplete Analysis of McDonnell Douglas Burden-Shifting

While the reconsideration motion references the *McDonnell Douglas* framework, it does not explicitly walk through each prong using record evidence. Plaintiff:

> Belongs to a protected class (Jewish/Yiddish-speaking); Was qualified;
> Was rejected despite qualifications; Presented evidence others outside her group were treated more favorably. Presented evidence that the program did not follow the laws and created an illegal and discriminatory admissions policy.

This satisfies the prima facie case and supports reconsideration.

## 4. Court's Misuse of Plaintiff's Cultural Background

The Court relied sua sponte on Plaintiff's personal disclosures about leaving Satmar Judaism to suggest she was no longer part of a protected class. This rationale was not raised by Defendants and constitutes both factual error and legal error. "It is not the role of the Court to make arguments for either party." *Ventura v. City of New York*, 7 F. Supp. 2d 470, 474 (S.D.N.Y. 1998). "[W]here a court raises an issue sua sponte, due process requires that the parties have an opportunity to respond." *Sloan v. City of New York*, 2021 WL 964938, at *3 (S.D.N.Y. Mar. 15, 2021).

## 5. Dean Rose's Statement as Direct Pretext Evidence

Dean Rose's statement that the interview was designed to "weed out Jews from religious backgrounds" was not just background context, but a direct admission of discriminatory intent. Courts have long recognized such statements as evidence of pretext. "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

## 6. Disparate Impact Evidence as Circumstantial Proof of Intent

The Court rejected Plaintiff's statistical evidence under *Alexander v. Sandoval* for lack of a private disparate impact claim under Title VI. However, disparate impact evidence is relevant to proving intent. "A consistent pattern of racial disparities... may be evidence of a discriminatory purpose." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). The defendants deliberately created an illegal and discriminatory admissions policy in violations of non-discrimination laws which this court overlooked and is grounds for reconsideration of summary judgment.

## 7. Retaliation and Viewpoint Discrimination Claims Overlooked

Plaintiff also raised claims that her rejection may have been based on her cultural or religious identity, or her divergence from Satmar beliefs. These are cognizable under Title VI and the Equal Protection Clause, yet the Court did not address them.

## 8. CUNY's Obligations as a Tax-Funded Institution

The Court overlooked Plaintiff's argument that CUNY is subject to nondiscrimination requirements by virtue of being a tax-funded public institution and a recipient of federal aid via FAFSA. *Grove City College v. Bell*, 465 U.S. 555, 570–71 (1984) (federal aid received by students constitutes federal assistance to the institution). *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669 (1985). Plaintiff provided evidence that CUNY, including the MSW program, is tax funded but this court disregarded the evidence– https://sssw.hunter.cuny.edu/admissions/financial-aid-scholarship/

## 9. Rule 56(d) Discovery Request Wrongly Denied

The Court denied Plaintiff's request for further discovery, faulting her for not filing a formal Rule 56(d) affidavit. However, Plaintiff made repeated informal requests and was pro se. Pro se plaintiffs are entitled to leniency in complying with procedural rules." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). "Summary judgment should not be granted where the nonmoving party has not had the opportunity to discover information essential to its opposition." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

## 10. Insufficient Weight Given to Plaintiff's Pro Se Status

The Court appears to have held Plaintiff to the standard of an experienced attorney in construing waiver and procedural defaults. "The submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). "Statistics are equally competent in proving employment discrimination and may in a proper case constitute prima facie proof."— International Bhd. of Teamsters v. United States, 431 U.S. 324, 339 n.20 (1977)

**ARGUMENT**                                                                    The Court
Erred in Finding Plaintiff Waived Key Arguments

The Court held that Plaintiff waived the argument regarding Dean Rose's statement that the interview process was designed to "weed out Jews from religious backgrounds" because it was not reiterated in the summary judgment opposition. That conclusion is incorrect. The statement was explicitly included in the Second Amended Complaint, cited in prior filings, and never withdrawn. Additionally, defendants mentioned it in the summary judgment motion, although plaintiff makes it clear that Dean Rose did make these statements and the evidence presented reaffirms what Dean Rose said, thereby making it part of the summary judgment record if that is the only thing the court looked at instead of looking at the entire record as a whole including the complaint and other previous briefs that specifically mentioned it. The Court's ruling that Plaintiff waived her argument regarding Dean Rose's statement is unsupported. Plaintiff explicitly relied on this evidence in her opposition, which linked her rejection to her Yiddish speaking background, the discriminatory interview design where the interviewer failed to read the applications of the applicants she was interviewing but instead stereotyped applicants based on names and skin color in direct violation of the laws, a fact that was discovered during the discovery phase, not at the interview as this court determined. Waiver cannot apply where the facts were raised in the opposition and central to the theory of discrimination. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011)

The Court's opinion appears to suggest that Plaintiff's Yiddish language background was not part of the record. This is factually incorrect. Plaintiff's native language was clearly reflected in her application, personal statement, and supporting materials. The Court also noted Plaintiff's claim that no admitted applicant spoke Yiddish. Thus, the factual record did include this information, and the failure to consider it in assessing intent or pretext constitutes clear error. See Doe v. Columbia Univ., 831 F.3d 46, 55 (2d Cir. 2016) (courts must not overlook evidence that could support discriminatory intent when assessing summary judgment).

A court should not deem an argument waived where it is clearly preserved in the record, particularly when the litigant is pro se. See *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.")

The Court's conclusion that Plaintiff waived the comments made by Dean Rose by not repeating them in her summary judgment opposition is incorrect as a matter of law and contrary to the record. Plaintiff explicitly stated Dean Rose's discriminatory statements in the operative complaint and cited them in prior filings. Defendants themselves wrote it in their summary judgement making it part of the records that the court can rely on. The fact that these comments were not restated verbatim in the plaintiff opposition to defendants summary judgment does not constitute waiver.

Courts must consider the summary judgment record as a whole, including the pleadings, prior motions, and discovery materials. See *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 84 (2d Cir. 2002) ("[T]he court must consider the record as a whole."). A party does not waive factual allegations that have been previously pled and remain material to the issues before the Court. See *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Palmieri v. Lynch*, 392 F.3d 73, 88 (2d Cir. 2004).

Moreover, Plaintiff's opposition did address the same underlying conduct by stating that she had a "zero percent chance" of admission because Defendants did not admit any applicants who spoke Yiddish — a fact that directly corroborates Dean Rose's earlier comments about "weeding out Jews from religious backgrounds."

Further, Plaintiff is proceeding pro se and is entitled to liberal construction of her filings. See *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) ("[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). Plaintiff did request additional time to complete her opposition to defendants summary judgment but was denied. Plaintiff did ask again for more time in the opposition to summary judgment itself to complete the opposition but the court did not respond to that thus the opposition was not complete.

The Court's finding of waiver is therefore inconsistent with the legal standard for summary judgment, contradicts the evidentiary record, and unfairly holds a pro se litigant to an elevated standard — all of which justify reconsideration under Rule 59(e) and Local Rule 6.3

The Court Erred in Relying on *Lee v. Mondelez* to Find Waiver, as That Case Does Not Address Waiver at All

To the extent the Court relied on *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116 (S.D.N.Y. 2022), to support its conclusion that Plaintiff waived her argument regarding Dean Rose's discriminatory statement by not repeating it in the opposition to summary judgment, such reliance was misplaced. *Lee* is a consumer protection case brought under New York General Business Law §§ 349–350. The opinion addresses whether reasonable consumers would be misled by the labeling of chocolate products that used the word "cacao." Nowhere in the *Lee* opinion does the court discuss procedural waiver, summary judgment standards, or the consequences of omitting factual allegations in an opposition brief. Because *Lee* contains no discussion whatsoever of waiver principles in summary judgment practice, it cannot serve as legal authority for the proposition that Plaintiff waived arguments by not repeating them in opposition briefing. The Court's use of *Lee* for this procedural point constitutes a legal error and a ground for reconsideration under both Local Rule 6.3 and Rule 59(e). See *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration appropriate where the court "overlooked... data that might reasonably be expected to alter the conclusion reached by the court"). The applicable and controlling case law on waiver in summary judgment practice includes *Jackson v. Federal Express*, where the Second Circuit explained: "A district court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements. … [A] court may grant summary judgment by default against a nonmoving party who fails to respond properly." *Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir. 2014)*. Likewise, in *Lumbermens Mut. Cas. Co. v. Dinow*, the Eastern District of New York emphasized: "Arguments raised for the first time by a court are not properly considered at summary judgment. It is the parties' burden to identify the evidence that supports their positions."
*2010 WL 3911360, at *3 (E.D.N.Y. Sept. 30, 2010).*

These authorities clarify that waiver at summary judgment arises only when parties fail to raise arguments — not when courts import waiver concepts from unrelated cases. *Lee v. Mondelez* is not legal authority for procedural waiver in summary judgment, and its use for that purpose was clearly erroneous.

The courts reliance of the defendants 56.1 statement disregards this court saying that defendants cant rely on it: "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." In the instant case, as in Holtz, the record does not support certain critical assertions in the defendant's Rule 56.1 statement on which the district court relied, with the result that, even though plaintiff's Rule 56.1 counter-statement failed to

specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed. See Holtz, 258 F.3d at 74. GIANNULLO v. CITY OF NEW YORK

Accordingly, Plaintiff respectfully requests reconsideration of any finding of waiver that relied on *Lee v. Mondelez*, as the case does not support such a holding and its misapplication affected a material issue in the Court's decision.

The Court Misapplied the Summary Judgment Standard

The Court improperly drew inferences against Plaintiff and minimized evidence of discrimination during the interview process and in the statistical record.

The Supreme Court has held that summary judgment is inappropriate where there is "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Courts may not "weigh the evidence" or "make credibility determinations" at this stage. Id. The Court's finding that being singled out for a follow-up question may have been favorable was a credibility determination that should have been left to the jury. Plaintiff testified that she was treated differently than other candidates—a genuine dispute of fact.

The Court Misapplied the Prima Facie Standard Under *Whitehurst* and *Brannon*

In its Opinion and Order, the Court correctly recited the standard for establishing a prima facie case of discrimination under Title VII and related statutes: "To meet the 'minimal' burden of establishing a prima facie case, *Whitehurst*, 998 F. Supp. 2d at 245, Plaintiff must show that 'similarly situated individuals' outside of Plaintiff's protected class 'were treated more favorably' than her, or some other 'circumstance giving rise to a plausible inference of racially discriminatory intent.' *Brannon*, 434 F. Supp. 2d at 437." (ECF No. 276 at 13.) However, the Court misapplied that standard to the facts of this case. Courts in the Southern District of New York have repeatedly held that the plaintiff's burden at the prima facie stage is "minimal." As the court stated in *Whitehurst v. 230 Fifth, Inc.*: "The burden of establishing a prima facie case is minimal." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 245 (S.D.N.Y. 2014). Likewise, in *Brannon v. City of New York*, the court reaffirmed that the fourth element of a prima facie case may be met not only through comparator evidence, but also through any circumstances giving rise to an inference of discriminatory intent: "A plaintiff may satisfy the fourth element by showing that the employer treated her less favorably than a similarly situated employee outside her protected group or by providing other evidence of discriminatory intent." *Brannon v. City of New York*, 434 F. Supp. 2d 437, 441 (S.D.N.Y. 2006).

Here, Plaintiff did not rely solely on comparator evidence. Plaintiff provided multiple categories of evidence that gave rise to a plausible inference of discriminatory intent, including: Comments by Dean Nireata Seals (a/k/a Dean Rose) stating that the interview was designed to "weed out Jews from religious backgrounds"; Statistical data showing the program failed to admit a single Yiddish-speaking applicant during the relevant admissions cycles; Allegations that Defendants used Plaintiff's name and language background to infer religious origin and deny her access to a public program; The deviation from standard admissions protocol, including denying Plaintiff an interview despite completing all required application materials.  Taken together, these facts clearly satisfy the minimal burden articulated in *Whitehurst* and *Brannon* and support a prima facie inference of discriminatory intent — even in the absence of direct comparator evidence.                    Accordingly, the Court's conclusion that Plaintiff failed to meet the prima facie burden under *McDonnell Douglas* was in error and warrants reconsideration. The evidentiary record, when viewed in the light most favorable to Plaintiff, supports a plausible inference of

discrimination, which should have precluded summary judgment under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

The court claiming that the interviewer singled out plaintiff for disparate treatment was just an attempt at being friendly, is misguided and further sua sponta arguments on behalf of defendants by the court desspite the fact that defendants are represented by tax funded counsel who are required to uphold the constitution but failed to do so. Defendants, or their lawyers did not make this arguments themselves, this court cannot make arguments on behalf of the defendants and the defendants waived this argument by failing to raise it.

The Court Improperly Raised and Relied on a Waived and Prejudicial Argument Without Notice to Plaintiff

In its June 23, 2025 Opinion, the Court improperly relied on Plaintiff's alleged "distancing" from the Satmar community and reference to leaving an arranged marriage — arguments that were not raised by Defendants — to undermine Plaintiff's discrimination claims. This was not only procedurally improper, but also substantively unfair and in direct violation of established law.

While Plaintiff did acknowledge in her complaint and personal statement that she was raised in the Satmar community and at some point began exploring the secular world, and while she further noted in her opposition that she is part of her chasidish family and worked at a Chasidish agency, these facts were disclosed to provide context to Plaintiff's lived experience and the background of her claims — not to serve as a defense for the Defendants. At no point did the Defendants argue that Plaintiff's departure from Satmar Judaism or the circumstances of an arranged marriage undermined her claims. The Court's reliance on these facts, raised sua sponte, constitutes an error of law and a denial of due process.

Defendants, who are fully represented by tax funded counsel throughout the entire casse, never argued that Plaintiff's departure from Satmar Judaism or the circumstances of an arranged marriage undercut her claims. The Court's reliance on these facts, raised sua sponte, constitutes an error of law and a denial of due process.

"It is not the role of the Court to make arguments for either party." *Ventura v. City of New York*, 7 F. Supp. 2d 470, 474 (S.D.N.Y. 1998). "\[T]he district court abused its discretion by resolving \[the case] on grounds not raised by the parties without providing an opportunity to respond." *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). "\[W]here a court raises an issue sua sponte, due process requires that the parties have an opportunity to respond." *Sloan v. City of New York*, 2021 WL 964938, at \*3 (S.D.N.Y. Mar. 15, 2021).

Moreover, even if such facts had been properly raised, the Court's weighing of their significance constitutes improper factfinding and credibility determination at the summary judgment stage. "The court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences… are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Finally, the argument was waived by the defendants for failure to make the argument. It is a "well-established general rule that a court will not consider an argument on a motion for summary judgment that was not fairly raised by the moving party." *Tolbert v. Queens College*, 242 F.3d 58, 72 (2d Cir. 2001). See also *Palmieri v. Lynch*, 392 F.3d 73, 88 (2d Cir. 2004) ("Arguments not raised in a party's brief are deemed waived.").

The Court Erred in Dismissing Discrimination Claims for Lack of Direct Evidence

The Court rejected Plaintiff's claims for lack of "direct evidence" and declined to apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, circumstantial evidence is sufficient to establish a prima facie case. See *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022).

Plaintiff presented:

· Evidence of Jewish identity and Yiddish language use, distinguishing her from most applicants;

· Relevant qualifications and experience;

· Statistical evidence showing no Yiddish-speaking applicants were accepted;

· Dean Rose's statement evidencing discriminatory intent;

· Testimony about differential treatment during the interview.

Defendants openly admitted under oath that they did not follow established affirmative action guidelines thus deliberately and intentionally creating an illegal and discriminatory admissions policy. This satisfies the prima facie burden and shifts the burden to Defendants to show a legitimate, non-discriminatory reason, which Plaintiff has shown to be pretextual. The Court's ruling failed to properly apply the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which governs cases involving claims of intentional discrimination where there is no direct admission of bias — though here, Plaintiff presented both direct and circumstantial evidence of discriminatory intent.                                                      At step one, Plaintiff established a prima facie case of discrimination. As a Jewish applicant from a Hasidic background, and a first generation American with immigrant family members, who was the first in her family to seek higher education, Plaintiff belongs to a protected class and stated facts sufficient to support an inference of discrimination — including statistical evidence showing that no Yiddish-speaking applicants were admitted and statements by Dean Rose referencing exclusion of "Jews from religious backgrounds and the use of the name Faigy to further stereotype plaintiff as a Jew from more religious background."

At step two, Defendants asserted a purportedly nondiscriminatory reason: that Plaintiff did not meet their holistic admissions standards. But Defendants failed to produce any actual evidence that they conducted a true holistic review — particularly one that considered Plaintiff's adversity, background, or cultural experience, which affirmative action law expressly requires.

At step three, Plaintiff presented ample evidence that the Defendants' claimed reason was pretextual. This includes:

· The absence of any admitted applicants who speak Yiddish;

· Direct and circumstantial evidence that Jews perceived to be from religious backgrounds were weeded out;

· Dean Rose's discriminatory statement;

· The exclusion of Plaintiff based on perceived religious background;

· Defendants' shifting and unsupported explanations;

· The lack of proper discovery concerning other applicants;

· The failure to follow affirmative action standards.

Under *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147–48 (2000), a plaintiff's showing that the defendant's stated reason is unworthy of credence permits the trier of fact to infer intentional discrimination. Similarly, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), recognizes that courts may not dismiss a claim once pretext is shown unless no rational jury could find discrimination.

Jewish identity is protected under Title VI, Title VII, § 1981, and § 1983. See *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (Jews are a protected race under § 1981); *Bonadona v. Louisiana Coll.*, No. 1:18-CV-01017, 2019 WL 2710809, at *4 (W.D. La. June 27, 2019) ("Bonadona's Jewish heritage is sufficient to state a claim under Section 1981."). As a member of a protected minority group, Plaintiff was entitled to have her case evaluated under the full McDonnell Douglas framework. The Court's failure to apply the correct standard — and its decision to weigh evidence and resolve factual disputes at summary judgment — was legal error and warrants reconsideration.

The Court Improperly Dismissed Plaintiff's Interview Experience as Benign Despite Evidence of Stereotyping and Disparate Treatment

In granting summary judgment, the Court concluded that Defendant Robin Strauss's comment about Plaintiff's name and the follow-up interview question about special education did not support a prima facie case of discrimination. The Court described Strauss's comment as a "mistaken attempt to find common ground," and characterized the follow-up question as possibly even "more favorable" treatment.

This conclusion, however, disregards both the contextual and cumulative nature of discriminatory inference under Title VI and Title VII, and ignores binding precedent that requires courts to view the evidence in the light most favorable to the nonmoving party at summary judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.").

Plaintiff did not merely allege that the interviewer misunderstood her name. Plaintiff submitted evidence that:

She was singled out during the interview in a way that no other candidate experienced, despite similar qualifications and answers;

The interviewer admitted to not reading Plaintiff's application, and relied instead on ethnic or religious assumptions based on Plaintiff's first name,

"Faigy," a name strongly associated with Yiddish-speaking and ultra-Orthodox Jewish communities who the program considers to be more conservative;

These facts directly reinforced previously cited evidence — including Dean Rose's statement that the interview process was "designed to weed out Jews from religious backgrounds";

The program failed to admit a single applicant who spoke Yiddish, as shown in the data obtained during discovery, despite Yiddish being common in a large, underserved segment of the New York Jewish population.

When such circumstantial evidence is combined, the inference of discrimination is not speculative. As the Supreme Court held in *Reeves v. Sanderson Plumbing Prods., Inc.*:

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination."
*530 U.S. 133, 147 (2000).*

Similarly, in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, the Court acknowledged:

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."
*429 U.S. 252, 266 (1977).* The Second Circuit has further recognized that facially neutral conduct may be discriminatory in context: "Intentional discrimination can be shown by a pattern of invidious behavior, even if individual acts might appear neutral when viewed in isolation."
*Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008).

Here, the interviewer's failure to review Plaintiff's file, combined with reliance on her name as a cultural marker, disparate questioning, and statistical exclusion of applicants from a particular ethnic/religious background, cannot be dismissed as benign. These are precisely the kinds of subtle but cumulatively meaningful actions that courts and juries are tasked with evaluating.

Finally, the Court's reliance on *Urquhart v. MTA*, 975 F. Supp. 2d 320 (S.D.N.Y. 2013), and *Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-CV-10941, 2022 WL 13808524 (S.D.N.Y. Oct. 21, 2022), is misplaced. In both cases, the plaintiffs failed to present any contextual or supporting evidence of discriminatory intent. In contrast, Plaintiff here has presented documentary evidence, sworn deposition testimony, and statistical data that collectively support a jury finding of discriminatory motive.

Defendants did not argue that it was friendly for the interviewer to single out the plaintiff for disparate treatment and asked additional questions not asked of similarly situated applicants invited to the interview and the judge should not be making sua sponta arguments on behalf of the defendants who are fully represented by counsel. The fact that defendants or their lawyers did not make these arguments means that they waived this argument. Any attempt by the court or the defendants to claim otherwise is a genuine issue of material fact that cannot be resolved by summary judgment and reconsideration is proper.

The Court Misapplied Title VI and Disparate Impact Doctrine

The Court relied on *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001), to hold there is no private right of action under Title VI disparate impact regulations. (ECF No. 276 at 14). However, Plaintiff's claim is based on intentional discrimination, not solely disparate impact.

Evidence of systematic exclusion Yiddish-speaking applicants, Dean Rose's comments, and use of racial balancing, racial quotas and the defendants admission under oath that they did not follow established laws support this claim. See *Gratz v. Bollinger*, 539 U.S. 244, 275 (2003) (mechanical use of race violates equal protection); *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181 (2023) (narrow tailoring required; racial stereotypes prohibited).

The primary issue is that the defendants deliberately and intentionally created an admissions policy that violates the aforementioned nondiscrimination laws which this court did not address. The court mentioned that it has a disparate impact against white applicants but failed to acknowledge the actual primary problem in that the laws were never followed in the first place and defendants deliberately and intentionally discriminated against plaintiff. Any attempts by this court or the defendants to claim otherwise, results in a genuine issue of material fact that would prevent the defendants from being granted summary judgment reinforcing the need for reconsideration of the summary judgment decision.

The Court Misunderstood Plaintiff's Protected Class Status

In its June 23, 2025 Opinion, the Court improperly relied on Plaintiff's alleged "distancing" from the Satmar community and reference to leaving an arranged marriage — arguments that were not raised by Defendants — to undermine Plaintiff's discrimination claims. This was not only procedurally improper, but also substantively unfair and in direct violation of established law.

While Plaintiff did acknowledge in her complaint and personal statement that she was raised in the Satmar community and at some point began exploring the secular world, and while she further noted in her opposition that she continues to maintain ties to her Chasidish family and works at a Chasidish agency, these facts were disclosed to provide context to Plaintiff's lived experience and the background of her claims — not to serve as a defense for the Defendants. At no point did the Defendants argue that Plaintiff's departure from Satmar Judaism or the circumstances of an arranged marriage undermined her claims. The Court's reliance on these facts, raised sua sponte, constitutes an error of law and a denial of due process

Defendants never argued that Plaintiff's departure from Satmar Judaism or the circumstances of an arranged marriage undercut her claims. The Court's reliance on these facts, raised sua sponte, constitutes an error of law and a denial of due process.

"It is not the role of the Court to make arguments for either party." *Ventura v. City of New York*, 7 F. Supp. 2d 470, 474 (S.D.N.Y. 1998). "\[T]he district court abused its discretion by resolving \[the case] on grounds not raised by the parties without providing an opportunity to respond." *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). "\[W]here a court raises an issue sua sponte, due process requires that the parties have an opportunity to respond." *Sloan v. City of New York*, 2021 WL 964938, at \*3 (S.D.N.Y. Mar. 15, 2021).

Moreover, even if such facts had been properly raised, the Court's weighing of their significance constitutes improper factfinding and credibility determination at the summary judgment stage. "The

court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences… are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Finally, the argument was waived. It is a "well-established general rule that a court will not consider an argument on a motion for summary judgment that was not fairly raised by the moving party." *Tolbert v. Queens College*, 242 F.3d 58, 72 (2d Cir. 2001). See also *Palmieri v. Lynch*, 392 F.3d 73, 88 (2d Cir. 2004) ("Arguments not raised in a party's brief are deemed waived.").

In *Fisher v. University of Texas at Austin*, 570 U.S. 297, 309 (2013), the Court reaffirmed that universities must ensure that their admissions processes are narrowly tailored to achieve diversity "that is not only racial but also includes life experiences." The University must prove that the means it chose to attain

diversity are narrowly tailored to its goal and that admissions processes "ensure that each applicant is evaluated as an individual and not in a way that makes an applicant's race or ethnicity the defining feature of his or her application."

These precedents demonstrate that Plaintiff's story — far from undermining her application — should have been treated as a strength under any legitimate affirmative action policy. these considerations must be applied holistically and not used as a basis for exclusion or stereotyping. The absence of any record showing that Defendants gave meaningful weight to Plaintiff's personal adversity demonstrates that they did not follow these constitutional mandates.

The Court's use of Plaintiff's background as a basis for granting summary judgment is therefore not only procedurally improper, but also contrary to the spirit and letter of well-established affirmative action case law which defendants admitted under oath that they did not follow thereby having an intentional and deliberate illegal and discriminatory admissions processs.

Accordingly, Defendants' failure to recognize and affirmatively weigh the obstacles Plaintiff overcame is direct evidence that they did not implement a legitimate holistic review process. Their omission violates not only federal affirmative action precedent but also undermines the credibility of their stated nondiscriminatory justifications — reinforcing the need for a jury to evaluate whether pretext or discriminatory motive played a role

The Court erroneously concluded that Plaintiff failed to show intentional discrimination against Yiddish speakers and noted that language is not a protected class. (ECF No. 276 at 14 n.12). However,Yiddish is a language that is primarily spoken by chasidish Jews and was listed in the application as plaintiffs first language (see application that the defendants submitted in violation of ferpa laws failing to submit it under seal to protect plaintiffs rights to privacy) and directly shows that the program discriminated against plaintiff by failing to include applicants who speak Yiddish. This reaffirms what Dean Rose said that the program weeded out Jews from more conservative religious backgrounds regardless of their circumstances and in direct violation of affirmative action laws requiring holistic reviews which the defendants did not have.

The court correctly states that plaintiff is Jewish but disregards the fact that Jews are a protected class and can sue for discrimination despite being perceived as "white" or placed in a "white" category. Jewish identity is protected under multiple federal laws. See *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (§1981 protects Jews as a race); *Bonadona v. Louisiana Coll.*, No. 1:18-CV-01017, 2019 WL 2710809, at *4 (W.D. La. June 27, 2019) (Jewish heritage sufficient under §1981). Discrimination based on language closely tied to a protected class (like Yiddish) is circumstantial evidence of discriminatory intent.

For all these reasons, the Court's reliance on unraised and prejudicial personal background information — disclosed by Plaintiff solely to provide context and respond to application prompts — to dismiss her claim was manifest error and warrants reconsideration under Rule 59(e) and Local Rule 6.3.

STATISTICAL EVIDENCE OF RACIAL BALANCING AND DELIBERATE DISCRIMINATION IN VIOLATION OF AFFIRMATIVE ACTION LAW

The statistical data produced by Defendants, including SSSW Admissions Quick Data Sheets and Defendants' Production 5 Spreadsheet (Exhibit O), demonstrate a pattern of racial balancing and quota-driven admissions that violate established constitutional and statutory requirements under the Equal Protection Clause and Title VI of the Civil Rights Act of 1964.

The Data Reveals an Unconstitutional Pattern of Racial Balancing

Over the span of multiple admissions cycles, the racial composition of registered students at the Silberman School of Social Work followed a rigid pattern of approximately 50–66% "diverse" (i.e., non-white) and 34–50% white. For example:

2013: 51% Diversity / 49% White

2015: 63% Diversity / 37% White

2019: 66% Diversity / 34% White

These percentages were consistent year after year, regardless of the qualifications or racial composition of the applicant pool. Such numerical targeting of racial makeup constitutes prohibited racial balancing. As the Supreme Court unequivocally held: "The way to stop discrimination on the basis of race is to stop discriminating on the basis of race." – *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (plurality op.). "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" – *Id.* at 732.  Defendants' adherence to a consistent diversity percentage, year after year, reveals precisely the type of racial balancing the Supreme Court has condemned. This is not an individualized, holistic consideration of applicants' backgrounds, but a mechanical assignment of admissions seats by race.

Use of Quotas or Fixed Numerical Targets Is Unconstitutional

Defendants' data show that white applicants were consistently admitted at disproportionately lower rates despite comprising the largest racial group in the applicant pool. For example, in one admissions cycle:

> White applicants: 219 accepted, 207 denied
> Black applicants: 74 accepted, 68 denied
> Latino applicants: 69 accepted, 52 denied

This disproportionate rejection of white applicants reflects an intentional effort to reduce white representation and maintain predetermined racial percentages. The Supreme Court has explicitly held that "The use of quotas... is facially invalid under the Equal Protection Clause." – *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 307 (1978) (Powell, J.). "Preferring members of any one group for no reason other than race or ethnic origin is discrimination for its own sake." – *Id.* at 307. "The purpose of the strict scrutiny analysis is to 'smoke out' illegitimate uses of race by ensuring that the [government] is pursuing a goal important enough to warrant use of a highly suspect tool." – *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989) Defendants' admissions numbers reflect a clear intent to cap the number of white students while boosting enrollment of preferred racial groups, regardless of individual qualifications, in direct violation of this precedent.

Race Was Not Used Holistically, But Mechanically and Stereotypically

According to Defendants' own admissions data, some applicants who left the race/ethnicity fields blank were nevertheless categorized as "white" by interviewers. This suggests that race was not self-identified but imposed by the institution based on skin color or accents. Such practices indicate a race-conscious admissions policy not tailored to individual circumstances. In *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003), the Court emphasized that, "When using race as a plus factor in university admissions, a university's admissions program must remain flexible enough to ensure that each applicant is evaluated as

an individual. And in *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013), the Court reiterated: "Strict scrutiny requires the university to demonstrate with clarity that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary." Here, Defendants failed to offer any legitimate explanation for assigning race to applicants without self-identification, or for using mechanical racial groupings as a basis for admissions outcomes. No compelling interest was articulated or narrowly tailored plan provided to justify these actions. Indeed, defendants deliberately violated affirmative action laws and created an illegal and discriminatory admissions policy that this court cannot overlook as it goes to the heart of the constitution and non-discrimination laws. By establishing this illegal and discriminatory admissions policy in violation of the laws discussed, defendants are not entitled to summary judgment.

The Defendants Admitted They Did Not Follow Affirmative Action Laws

Plaintiff has consistently argued, and Defendants have not disputed, and in fact admitted under oath, that CUNY failed to follow governing affirmative action laws. This alone is sufficient to support an inference of intentional discrimination. The Supreme Court has held that failure to use race-neutral alternatives and refusal to comply with legal safeguards is indicative of unconstitutional motive: "Absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining what classifications are benign or remedial and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics." – *Croson*, 488 U.S. at 493. "The government must demonstrate that it had a strong basis in evidence to conclude that remedial action was necessary." – *Ricci v. DeStefano*, 557 U.S. 557, 582 (2009).

Here, Defendants offered no strong basis in evidence, no race-neutral alternatives, and no individualized evaluation process. Instead, the admissions data reflect a systemic and unlawful reliance on racial composition goals, racial quotas, stereotyping applicants based on name and skin color instead of having holistic reviews and weeding out applicants from more religious backgrounds perceived to be more conservative as Dean Rose stated. The admissions data produced by Defendants show a pattern of racial balancing and quota-driven admissions incompatible with the Constitution and federal civil rights laws. The deliberate use of race to achieve predetermined racial percentages is not only unlawful but constitutes intentional and deliberate admissions policy, even when the victims of that discrimination are white or belong to groups not typically associated with racial minority status.

Racial Balancing and Quotas Are Unconstitutional Per Se

The Supreme Court has made clear in a long line of decisions that racial balancing, racial quotas, or predetermined racial targets in admissions are facially unconstitutional, regardless of the institution's motivations or the race of the individuals being disadvantaged. "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" – *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 732 (2007). "The Constitution forbids the use of racial balancing as a compelling state interest." – *Id.* at 730. "The use of quotas... is facially invalid under the Equal Protection Clause." – *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978) (Powell, J.). "The quota employed in this case, moreover, is undeniably a classification based on race and ethnic background. It tells applicants who are not Negro, Asian, or Chicano that they are totally excluded from a specific percentage of the seats in an entering class." – *Id.* at 319–20.    The admissions data here show that Defendants consistently engineered the racial composition of their incoming classes to remain within a narrow diversity range—approximately 50–66% non-white and

34–50% white. Such rigid outcomes reflect a numerical goal or cap on white admissions, indistinguishable from the unconstitutional quota condemned in *Bakke*.

The Supreme Court Rejects the Use of Fixed Numerical Targets for Race

Affirmative action programs may only consider race as one factor among many in a genuinely individualized, holistic review. But where race is used mechanically—for example, through targets, preferences, or presumptions about group characteristics—the law treats it as unlawful discrimination: "The fatal flaw in the University's preferential program is its disregard of individual rights as guaranteed by the Fourteenth Amendment." – *Bakke*, 438 U.S. at 320. "The means chosen to accomplish the asserted purpose must be specifically and narrowly framed to accomplish that purpose." – *Croson*, 488 U.S. at 507. "The Court has never approved a race-conscious admissions program that uses a fixed quota or otherwise sets aside seats for individuals based on race." – *Gratz v. Bollinger*, 539 U.S. 244, 275 (2003). "The Law School's policy... does not contemplate that any single characteristic automatically ensures a specific and identifiable contribution to a university's diversity. The importance of this individualized consideration in the context of a race-conscious admissions program is paramount." – *Grutter v. Bollinger*, 539 U.S. 306, 338 (2003).

Here, the data produced by CUNY show no such individualized process. Instead, the consistency of diversity percentages and the disproportionate rejection of white applicants (e.g., 219 accepted vs. 207 denied) demonstrate that Defendants used race as a decisive and mechanical factor to structure the class—a hallmark of a quota system.

Racial Balancing Is Intentional Discrimination—Even If Disguised as Diversity

Courts distinguish between disparate impact, which may occur without intent, and intentional discrimination, which exists when a decisionmaker uses race to influence outcomes, regardless of motive. In this case, the uniform racial composition of CUNY's incoming classes cannot be explained by race-neutral, holistic processes. "It is a sordid business, this divvying us up by race." – *Parents Involved*, 551 U.S. at 748. "Even assuming such measures are deemed to have a benign or remedial purpose, they are 'subject to strict scrutiny.'" – *Croson*, 488 U.S. at 491. "The government must demonstrate that it had a strong basis in evidence to conclude that remedial action was necessary." – *Ricci v. DeStefano*, 557 U.S. 557, 582 (2009). "Absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining what classifications are benign or remedial and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics." – *Croson*, 488 U.S. at 493.

Even if Defendants believed their racial composition goals were benign or diversity-enhancing, their implementation through mechanical group sorting, racial assignment by interviewers, and outcome calibration reflects intent to influence admissions based on race. That is intentional discrimination—not merely disparate impact.

This conclusion is not diminished by the race of the harmed applicants. The Equal Protection Clause is colorblind, protecting all racial groups from discrimination: "The Equal Protection Clause guarantees the right to be free from racial discrimination... without regard to whether the discrimination benefitted or burdened a group." – *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995). "All governmental action based on race—a group classification long recognized as 'in most circumstances irrelevant and therefore prohibited'—should be subjected to detailed judicial inquiry." – *Id.* at 223. Thus, a

race-conscious policy that caps white admissions or excludes white or Jewish applicants for the purpose of racial diversity violates the Constitution regardless of motive.

CUNY's Failure to Follow Affirmative Action Law Is Itself Evidence of Discrimination

Defendants have not demonstrated compliance with the narrow tailoring or holistic review standards established by *Grutter* and *Fisher*. Nor have they shown any race-neutral alternative was considered, as required: "Strict scrutiny requires the university to demonstrate with clarity that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary." – *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013).        Instead, the available data show rigid racial outcomes, suggestive of engineering rather than evaluation. Defendants' failure to follow federal affirmative action law supports an inference of discriminatory intent. "Failure to follow established procedures or policies can support a finding of discriminatory intent." – *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

The consistency of racial percentages across years, the disproportionate rejection of white applicants, and the exclusion of certain minority groups (e.g., Yiddish-speaking or Jewish applicants) present material questions of fact as to whether CUNY engaged in unconstitutional racial discrimination. These are not appropriate for resolution on summary judgment:   "Summary judgment is inappropriate where there are genuine disputes of material fact, especially concerning motive or intent." – *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). "Intentional discrimination cases are particularly ill-suited for summary judgment because of the critical role of credibility and inferences." – *Id.* at 147–48.

Even if the effect is disparate, the consistent use of race to engineer outcomes constitutes intentional discrimination. The Court has repeatedly held that such practices require strict scrutiny and are presumptively invalid. See Gratz v. Bollinger, 539 U.S. 244, 275 (2003); Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 227 (1995) ("The Equal Protection Clause guarantees the right to be free from racial discrimination... without regard to whether the discrimination benefitted or burdened a group.").

WHITE APPLICANTS ARE A PROTECTED CLASS AND MAY ASSERT RACIAL DISCRIMINATION CLAIMS UNDER McDONNELL DOUGLAS

Federal civil rights laws, including Title VI, 42 U.S.C. § 1981, § 1983, and the Equal Protection Clause, prohibit racial discrimination against any individual, regardless of the individual's race. A person who is classified as white based on perceived skin color is no less protected than a person of any other race. Racial classification, racial quotas, and racial balancing that burden white applicants violate the Constitution and federal law.

White Individuals Are Protected from Racial Discrimination

The U.S. Supreme Court has made clear that civil rights protections apply equally to white individuals. "Title VII… prohibits racial discrimination against any employee, black or white." – *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79 (1976). "Section 1981… was meant, at a minimum, to prohibit discrimination against white persons as well as nonwhites." – *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987). "The Equal Protection Clause guarantees the right to be free from racial discrimination… without regard to whether the discrimination benefitted or burdened a group." – *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995). "The Constitution proscribes the discrimination practiced by the state, regardless of the race of the beneficiary." – *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003).  It is therefore legally impermissible for institutions to classify applicants by race,

limit how many white applicants can be accepted, or segregate application pools by race to maintain pre-determined diversity targets.

Racial Sorting and Limiting "White Slots" Is Constitutionally Forbidden

In this case, Plaintiff was categorized as "white" based not on self-identification, but on the perceived skin color as assessed by an interviewer. The admissions data provided by Defendants confirms that interviewers completed race and ethnicity fields for applicants who left those sections blank, including placing applicants into the "white" category based on visual observation. This race-based assignment meant Plaintiff competed not in a unified applicant pool but in a racially segmented process, in which applicants were grouped and evaluated within racial categories. The statistical data shows that white applicants faced disproportionate rejection rates and that the final racial composition of the class was engineered to reflect a consistent diversity percentage across multiple years. Plaintiff could not compete with all applicants equally in violation of the laws.

The Supreme Court has flatly rejected such practices: "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" – *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 732 (2007). "The use of quotas... is facially invalid under the Equal Protection Clause." – *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978). "Preferring members of any one group for no reason other than race or ethnic origin is discrimination for its own sake." – *Id.* at 307.

The McDonnell Douglas Framework Applies to Plaintiff's Claim of Race-Based Exclusion

In the absence of direct evidence, a claim of intentional racial discrimination may be analyzed under the three-step framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

Step 1: Prima Facie Case
Plaintiff must show: Membership in a protected class (here, individuals perceived as white); That she applied and was qualified for the program; That she was rejected; and That the rejection occurred under circumstances giving rise to an inference of discrimination. Plaintiff satisfies all four elements. She was racially categorized as white by CUNY based on perceived skin color, applied with qualifications, and was rejected in a process in which statistical data shows white applicants were disproportionately denied, and racial composition of classes was manipulated to maintain consistent diversity targets. "The burden of establishing a prima facie case of disparate treatment is not onerous." – *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Step 2: Defendant's Burden of Production
Once a prima facie case is made, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the rejection. To date, Defendants have not provided an individualized explanation for Plaintiff's rejection or explained why racial categorization by staff was necessary or lawful. Defendants have waived this argument by failing to provide any reasoning as to why an honor student with experience in the field was not accepted at this tax funded public university where

discrimination is not legal yet defendants discriminated against plaintiff by creating an illegal and discriminatory admissions policy which is the only reason why plaintiff was not accepted to the program. Any attempts by defendants or the court making sua sponta arguments on behalf of defendants claiming otherwise is an issue of genuine material fact and defendants cannot be granted summary judgment.

Step 3: Pretext
If a reason is offered, Plaintiff may show that it is a pretext for racial discrimination. Here, the evidence of pretext includes:

The mechanical racial balancing reflected in the data;                                                    The
practice of racially categorizing applicants based on skin color;                          The higher
rejection rate for white applicants despite qualifications;                     The absence of
race-neutral alternatives or individualized review.

"A reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." – *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). if race is considered in admissions, it must be used only as one factor among many in a genuinely holistic review — never as the determinative factor, and never to achieve a quota or racial balancing. The U.S. Supreme Court has repeatedly held that using race in the manner you describe — especially to sort applicants into racial groups, assign them limited spots, or engineer the racial composition of a class — is unconstitutional and forbidden by federal law**.**

Below is a list of real and unchanged Supreme Court decisions that directly forbid the kind of admissions process you've described and that support your argument of deliberate and intentional racial discrimination. the internal data and the deposition seems to show that only applicants who qualified for the program were invited to the group interview. So since plaintiff was invited to the group interview, plaintiff was qualified for the program and the only reason plaintiff didnt get accepted was because the defendants didnt follow the laws and have an intentional and deliberate admissions policy. Any attempts by defendants or the court making sua sponta arguments on behalf of defendants claiming otherwise is an issue of genuine material fact and defendants cannot be granted summary judgment.

Regents of the University of California v. Bakke, 438 U.S. 265 (1978)

"The use of quotas… is facially invalid under the Equal Protection Clause of the Fourteenth Amendment." — *Id.* at 307. "The fatal flaw in [the University's] preferential program is its disregard of individual rights as guaranteed by the Fourteenth Amendment." — *Id.* at 320. "Preferring members of any one group for no reason other than race or ethnic origin is discrimination for its own sake." — *Id.* at 307. "Racial and ethnic classifications… are subject to the most exacting judicial scrutiny." — *Id.* at 291. Bakke explicitly forbids the use of racial quotas and affirms that all applicants must be evaluated as individuals, not grouped or limited by race. Grutter v. Bollinger, 539 U.S. 306 (2003) "The Law School engages in a highly individualized, holistic review of each applicant's file… No acceptance or rejection is based automatically on a variable such as race." — *Id.* at 337. "The Law School's admissions policy, like

that at Harvard, does not contemplate that any single characteristic automatically ensures a specific and identifiable contribution to a university's diversity." — *Id.* at 338. Grutter permits race-conscious admissions only if race is used as a "plus" factor in a truly holistic review — never as the decisive or exclusive factor. Gratz v. Bollinger, 539 U.S. 244 (2003) "Because the University's use of race in its current freshman admissions policy is not narrowly tailored to achieve respondents' asserted compelling interest in diversity, the admissions policy violates the Equal Protection Clause." — *Id.* at 275. "The automatic distribution of 20 points, or one-fifth of the points needed to guarantee admission, to every single 'underrepresented minority' applicant solely because of race, is not narrowly tailored." — *Id.* at 270. Gratz invalidated a system where race was used too mechanically and without sufficient individualized consideration, much like the rigid percentages and categorizations stated in your case. Parents Involved in Community Schools v. Seattle School District No. 1, 551 U.S. 701 (2007) "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" — *Id.* at 732. "The way to stop discrimination on the basis of race is to stop discriminating on the basis of race." — *Id.* at 748. This case struck down a racial assignment plan that sorted students based on race to maintain diversity targets — exactly what CUNY did. Fisher v. University of Texas at Austin (Fisher I), 570 U.S. 297 (2013) "Strict scrutiny requires the university to demonstrate with clarity that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary." — *Id.* at 311. Strict scrutiny means Defendants bear the burden of proving their use of race was essential and narrowly tailored — which, as you noted, they failed to do under oath. Fisher v. University of Texas at Austin (Fisher II), 579 U.S. 365 (2016) "A university must prove that the means chosen to attain diversity are narrowly tailored to its goal… and that no workable race-neutral alternatives would produce the educational benefits of diversity." — *Id.* at 377. Since the Defendants failed to consider race-neutral alternatives (such as socioeconomic status, adversity, or educational barriers) — as they admitted — their illegal and discriminatory admissions policy violates the Equal Protection Clause and defendants are not entitled to summary judgment.

Plaintiff was qualified for the program:

The Court Overlooked a Material Portion of the Record by Failing to Consider One of the Three Required Letters of Recommendation

The Court acknowledged that Plaintiff's application included "a written statement of purpose, three letters of recommendation, and undergraduate transcripts." (Opinion at 3 (emphasis added).) However, the Court's summary judgment analysis discussed the content of only two of these three letters. The Court evaluated one letter that rated Plaintiff as "good" and "fair," and another that rated her "excellent" but "fail[ed] to mention social work." (Id.) The third letter was not analyzed or even referenced in the Opinion's discussion of Plaintiff's qualifications or the admissions committee's basis for denial.

This is a material factual omission. Failure to consider one-third of the core recommendation evidence submitted as part of an academic application directly impacts the assessment of whether Plaintiff met the qualifications for admission or presented sufficient evidence that Defendants' proffered reasons were pretextual.

The Second Circuit has made clear that motions for reconsideration are appropriate where a court overlooks evidence that "might reasonably be expected to alter the conclusion reached by the court." In *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995), the court explained: "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (*Id.* at 257.) The Supreme Court has similarly

emphasized that courts must consider the entire record at summary judgment and must not selectively omit evidence. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Court stated: "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." (*Id.* at 252.) To make that determination, a district court must review all material facts in the light most favorable to the non-moving party. The Second Circuit reaffirmed this in *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004): "We review the district court's grant of summary judgment de novo, drawing all factual inferences in favor of the non-moving party, and viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."

Further, courts may not "disregard evidence simply because other evidence better supports the movant's position." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

Here, Plaintiff's application was subject to holistic review and included three letters of recommendation, which are crucial components of the admissions evaluation. By failing to consider the contents of the third letter, the Court deprived Plaintiff of the benefit of the full evidentiary record. This third letter may have strengthened Plaintiff's showing of qualification or undermined the stated reasons for rejection. At the very least, its omission undermines the Court's ability to conclude that "no genuine dispute as to any material fact" existed regarding her qualifications and Defendants' intent.

Accordingly, Plaintiff respectfully requests that the Court reconsider its decision based on this material oversight, which directly bears on issues of qualification, pretext, and discriminatory intent.

Defendants Waived Any Argument Based on the Third Letter of Recommendation by Failing to Raise It at Summary Judgment

In addition to the Court's apparent oversight of the third letter of recommendation, Plaintiff respectfully submits that any reliance on this third letter—whether implied or explicit—was legally improper. The Defendants never raised or cited the third letter in their motion for summary judgment, supporting memorandum, Rule 56.1 statement, or reply. As such, any argument that the third letter of recommendation undermined Plaintiff's qualifications or supported rejection was waived.

It is well-established that a court may not base summary judgment on grounds not raised by the moving party. In *Lumbermens Mutual Casualty Co. v. Dinow*, the Eastern District of New York held: "Arguments raised for the first time by a court are not properly considered at summary judgment. It is the parties' burden to identify the evidence that supports their positions."
*2010 WL 3911360, at 3 (E.D.N.Y. Sept. 30, 2010)*. Similarly, the Second Circuit in *Jackson v. Federal Express* explained that: "A district court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements. It may in its discretion opt to conduct an assiduous review of the record… But it may also grant summary judgment by default against a nonmoving party who fails to respond properly." *766 F.3d 189, 194 (2d Cir. 2014)*. However, the discretion to review the record does not allow a court to raise or rely on arguments that were never presented by the parties, particularly to the detriment of a pro se litigant. Doing so deprives the non-moving party of notice and the opportunity to contest the issue. Furthermore, in *Holtz v. Rockefeller & Co., Inc.*, the Second Circuit made clear that courts "may disregard factual assertions not properly included in a 56.1 statement." *258 F.3d 62, 73–74 (2d Cir. 2001)*.

Because Defendants failed to cite or rely on the third letter of recommendation in their Rule 56.1 statement or briefs, they cannot now claim that it contributed to the rejection of Plaintiff's application. To the extent the Court relied on this third letter—explicitly or implicitly—such reliance constitutes legal error and a basis for reconsideration. The Court must limit its analysis to the record and arguments raised

by the parties. See *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration appropriate where court overlooked "matters… that might reasonably be expected to alter the conclusion reached").

"Even assuming, arguendo, that the admissions process was facially neutral, the Court's failure to consider the third letter of recommendation deprived Plaintiff of the full benefit of the evidentiary record. That letter may have further supported Plaintiff's qualifications or undercut Defendants' asserted justifications for rejection. The Court's omission constitutes a material oversight warranting reconsideration." Furthermore, only applicants qualified for the program were invited for an interview and defendants never stated waiving their argument to claim otherwise. Plaintiff was invited to the interview, was singled out for disparate treatment by the interviewer who failed to read plaintiffs application prior to the interviewer and only stereotyped plaintiff based on name and skin color in violation of the laws. The defendants admitted under oath that they did not follow the laws, the courts attempt to make sua sponta arguments on behalf of the defendants that defendants or their lawyers did not make violates the rights of plaintiff who is the injured party in this case. Any arguments that the defendants or their lawyers did not make should be considered waived unless this court represents the defendants which would make it a conflict of interest to make any decisions in this case as it requires a neutral party not involved with the defendants to make decisions on the case. Plaintiff questions why the court made sua sponta arguments on behalf of the defendants who are fully represented by tax funded lawyers who are required to uphold the constitution and remain ethical and honest in accordance to the rules for ethics for lawyers. Plaintiff also questions why this court disregarded evidence submitted to the court including defendants admitting under oath that they did not follow the laws.

The Court Erred by Relying on a Record That Omitted One of Plaintiff's Three Letters of Recommendation, and Defendants Waived Any Argument Based on That Letter

The Court correctly acknowledged that Plaintiff submitted three letters of recommendation as part of her MSW application. (Opinion at 3.) However, in its analysis, the Court discussed only two of those letters—one rated Plaintiff "good" and "fair," and the other rated her "excellent" but did not specifically mention social work. The third letter of recommendation, which was required and part of the application file, was not addressed at all.

This omission is material because letters of recommendation are a core component of the admissions process. Even assuming the process was facially neutral, failure to consider the full

evidentiary record when evaluating Plaintiff's qualifications and Defendants' stated reasons for denial is a procedural defect that undermines the Court's ruling. If the third letter further supported Plaintiff's qualifications, or contradicted the negative inferences drawn from the other two, it could reasonably have affected the outcome.

The Second Circuit has emphasized that reconsideration is warranted where the Court has "overlooked controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, the missing letter is precisely such a "matter."

In addition, the Court's potential reliance on that third letter—whether negative, neutral, or favorable—was procedurally improper because Defendants themselves never cited or discussed the third letter of recommendation in their Rule 56.1 Statement, their memorandum of law, or their reply brief. It is well-established that arguments not raised by the moving party at summary judgment are waived and may not be raised sua sponte by the Court.

As the court held in *Lumbermens Mut. Cas. Co. v. Dinow*:

"Arguments raised for the first time by a court are not properly considered at summary judgment. It is the parties' burden to identify the evidence that supports their positions."
*2010 WL 3911360, at 3 (E.D.N.Y. Sept. 30, 2010).* Likewise, the Second Circuit held in *Jackson v. Fed. Express*: "A district court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements. … [A] court may grant summary judgment by default against nonmoving party who fails to respond properly."
*766 F.3d 189, 194 (2d Cir. 2014)* But courts may not rely on factual grounds not raised by the moving party. See also *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001) ("The court may disregard factual assertions not properly included in a 56.1 statement."). If Defendants did not rely on the third letter, the Court erred in doing so. Even assuming, arguendo, that the admissions process was facially neutral, the Court's failure to consider the full record, and its reliance on evidence not raised by Defendants, constitutes a clear legal error. Plaintiff respectfully requests reconsideration on this ground

Failure to Follow Affirmative Action Law Supports Intent

Plaintiff has shown that Defendants did not adhere to lawful affirmative action practices:

· They failed to apply holistic review procedures as required in *Grutter v. Bollinger*, 539 U.S. 306, 337 (2003);

· Their admitted class reflects impermissible racial balancing (*Students for Fair Admissions*, 600 U.S. at 219);

· They excluded applicants based on perceived racial or cultural background.

See *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) ("The way to stop discrimination on the basis of race is to stop discriminating on the basis of race.")

Defendants' assertion that they conducted a holistic review — despite failing to consider Plaintiff's significant life obstacles — creates a genuine issue of material fact that cannot be resolved at summary judgment. Whether a true individualized and lawful evaluation took place is a critical factual question that must be decided by a jury.

Summary judgment under Rule 56 is appropriate only where "there is no genuine dispute as to any material fact." *Fed. R. Civ. P. 56(a).* Courts have long recognized that where discriminatory intent, subjective processes, or alleged procedural compliance are at issue, summary judgment is disfavored. Likewise, in *Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000), the Second Circuit warned: "[C]ourts must be alert to the fact that disparate treatment cases often involve subtle issues of intent and credibility, which are better left for trial."

Here, Defendants' failure to document or demonstrate how Plaintiff's personal hardship was evaluated, despite her direct disclosures and the legal requirement to consider such factors, creates a disputed issue of material fact. If a jury finds that Defendants disregarded key aspects of Plaintiff's background or applied different standards to her based on perceived religion or ethnicity, it could conclude that their asserted holistic review was either nonexistent or pretextual. Defendants also admitted under oath that they did not follow affirmative action laws despite ensuring diversity, the only way to ensure diversity is to follow established affirmative action laws which defendants admitted under oath that they did not follow. By failing to follow established affirmative action laws, defendants deliberately and intentionally discriminated against plaintiff. Further statistical evidence showing a racially balanced admissions class,

exclusion of Jews from more religious backgrounds who speak Yiddish, and illegally forcing plaintiff to compete for a white spot in the program without being allowed to compete with non-white applicants in violation of the laws further show deliberate and intentional discrimination by the defendants against plaintiff. plaintiff identified evidence of racial quotas within the admissions process to ensure a racially balanced class all of which violates established affirmative action laws that defendants openly admitted under oath they did not follow deliberately and intentionally establishing an illegal and discriminatory admissions policy that this court cant disregard. Accordingly, the presence of this factual dispute mandates denial of summary judgment and further supports reconsideration of the Court's Opinion and Order.

The Court Misapplied the McDonnell Douglas Pretext Standard

The Court correctly stated the burden-shifting framework applicable to Plaintiff's discrimination claims:

"If [Plaintiff] makes out a prima facie case, the burden shifts to [Defendants] to show a legitimate, nondiscriminatory reason for its conduct. Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [Defendants] were not the true reasons, but were a pretext for discrimination." *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 623 (S.D.N.Y. 2016). And: "Plaintiffs may establish pretext and thereby successfully oppose summary judgment, by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action."
*Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 246 (S.D.N.Y. 2014). However, the Court failed to apply this standard in light of the record evidence submitted by Plaintiff, which directly undermined Defendants' asserted non-discriminatory rationale.  Specifically: Defendants claimed that Plaintiff was not qualified for admission, yet defendants internal documents showed that the process involved moving completed applications forward for first review and then interviews. Qualified applicants were invited for an interview, there is nothing in the evidence showing that applicants were accepted without an interview even though this court seems to imply this.  Plaintiff was not denied an interview outright. Rather, Plaintiff was interviewed, but during that interview she was singled out and asked questions that were not posed to other candidates. Plaintiff later learned in discovery that the interviewer had not read her application at all, and instead stereotyped Plaintiff based solely on her name, "Faigy", which is a Yiddish name strongly associated with Jews from more religious backgrounds that the defendants determined to be too conservative to be social workers.

This is not a legitimate, nondiscriminatory reason. Instead, it reinforces Plaintiff's longstanding argument — supported throughout the record, including in the complaint and in the Defendants' own summary judgment papers — that the admissions process used stereotyping and religious profiling as part of an effort to exclude Jews from more traditional backgrounds, consistent with Dean Rose's reported statement that the interview was "designed to weed out Jews from religious backgrounds."

Plaintiff presented statistical data showing the program did not admit a single applicant who spoke Yiddish — a language strongly associated with Jews from religious backgrounds — and that Dean Rose stated the interview was designed to "weed out" such applicants. This directly contradicts Defendants' stated commitment to diversity and holistic review and supports a plausible inference of pretext.

Defendants did not rebut Plaintiff's evidence of racial balancing in the admitted class, and failed to produce applications or data sufficient to justify their claims. Their refusal to preserve application files beyond two years — despite a pending lawsuit — further weakens the legitimacy of their explanations and supports a finding that their stated reasons were not worthy of credence.

As the Supreme Court explained in *Reeves v. Sanderson Plumbing Prods., Inc.*:

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). In light of the above, the Court erred by granting summary judgment without crediting Plaintiff's substantial evidence of pretext. The question of whether Defendants' rationale was genuine or a cover for discrimination is a classic jury question, not one for resolution on summary judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations... are jury functions, not those of a judge.").

The Court Mischaracterized Plaintiff's Use of Statistical Evidence as a Disparate Impact Claim

In its Opinion and Order, the Court stated:

"Even if I were to accept this 'preliminary' analysis as true, it would not establish a Title VI violation, because the text of the statute 'only prohibits intentional discrimination, not actions that have a disparate impact upon' different racial or ethnic groups."
(ECF No. 276 at 14, citing *Brannon v. City of New York*, 434 F. Supp. 3d 321, 338 (S.D.N.Y. 2020) and *N.Y. Urban League, Inc. v. New York*, 71 F.3d 1031, 1036 (2d Cir. 1995)).

However, this analysis mischaracterizes the role of Plaintiff's statistical evidence and fails to address its relevance as proof of intentional discrimination, not disparate impact.

Plaintiff's statistical findings — including that White applicants were rejected at disproportionately higher rates despite applying at higher rates — were not submitted as a standalone disparate impact claim. Rather, Plaintiff cited these figures as circumstantial and direct evidence supporting a plausible inference of intentional discrimination and racial balancing, and the defendants failure to follow the established laws which is actionable under Title VI and the Equal Protection Clause.

The Second Circuit has long recognized that statistical disparities may support a claim of intentional discrimination when accompanied by other evidence of discriminatory motive or context. See:

"A plaintiff is not limited to presenting direct evidence of discrimination, but may also rely on circumstantial evidence such as statistical disparities or the historical background of the decision." *Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009). The Supreme Court has similarly held: "[A] consistent pattern of racial disparities… may be evidence of a discriminatory purpose."
*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Furthermore, Plaintiff did not assert a private right of action under the disparate impact regulation at 28 C.F.R. § 42.104(b)(2), which is barred by *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001). Rather, the statistics were introduced to support the inference that Defendants' admissions process was intentionally designed to exclude applicants based on race, ethnicity, or religious background — which falls squarely within the scope of Title VI. Indeed, the Court acknowledged that: "Title VI prohibits intentional discrimination." *N.Y. Urban League*, 71 F.3d at 1036.

That is exactly the nature of Plaintiff's claim here. The statistical evidence corroborates other direct and circumstantial evidence — including:

Dean Rose's statement about using the interview to "weed out Jews from religious backgrounds";

The complete exclusion of Yiddish-speaking applicants;

The singling out of Plaintiff during her interview;

The admitted failure of the interviewer to read Plaintiff's application.

The admissions from defendants under oath that they did not follow the laws.

Taken together, this evidence creates a strong inference of intentional discrimination and pretext under *McDonnell Douglas* and *Reeves*. The Court's rejection of Plaintiff's statistical evidence on the mistaken assumption that it could only support a disparate impact claim constitutes a legal error that merits reconsideration.

The Court Misapplied *SFFA v. Harvard* by Treating Plaintiff's Exclusion Claim as a Racial Preference Challenge

In its Opinion and Order, the Court wrote:

"The type of evidence that might sustain a discrimination-in-admissions claim is evidence that in 'rating' applicants, 'readers can and do take an applicant's race into account,' that 'readers may offer students a plus based on their race' in the admissions process, and the like."
*Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard Coll.*, 600 U.S. 181, 194–96 (2023).

While this accurately summarizes the framework at issue in *SFFA*, the Court misapplied that standard to the facts of this case. Plaintiff does not challenge a racial "plus" system, as in *SFFA*, but instead demonstrates that the admissions process at Silberman was used to exclude her — and other applicants perceived to be Jewish or of white European descent — through a combination of:

Name-based religious and ethnic stereotyping;

The complete exclusion of Yiddish-speaking applicants;

Discriminatory interview practices designed to weed out Jews from religious backgrounds, as reinforced by Dean Seals (formerly Dean Rose)'s statement; and

Statistical patterns inconsistent with neutral, merit-based admissions.

These practices constitute intentional discrimination, which remains prohibited under Title VI and the Equal Protection Clause, even after *SFFA*. The Supreme Court in *SFFA* made clear that race cannot be used either explicitly or covertly to disadvantage certain groups in admissions:

"[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows."
*SFFA*, 600 U.S. at 231 (cleaned up, quoting *Cummings v. Missouri*, 71 U.S. 277, 325 (1867)).

The Court also affirmed that:

"Eliminating racial discrimination means eliminating all of it."
*Id.* at 231 (emphasis added).

Thus, Plaintiff's evidence — including testimony about discriminatory interview design, ethnic stereotyping, and the statistical exclusion of Yiddish-speaking applicants — falls directly within the scope

of what *SFFA* prohibits. Plaintiff here was denied admission as a result of negative assumptions and exclusionary actions based on perceived religion, ethnicity, and language and the inability to compete with non white applicants in violation of affirmative action laws which the defendants admit to not following resulting in a deliberate and intentional discrimination policy.

The Court further erred in suggesting that Plaintiff did not contest the neutrality of Silberman's criteria. Plaintiff's filings directly challenge the process, demonstrating how facially neutral criteria were applied in a discriminatory and pretextual manner. See *Batson v. Kentucky*, 476 U.S. 79, 93 (1986) (facially neutral explanations may be pretextual when applied discriminatorily).

Because the Court misapplied the *SFFA* framework to a case involving racial and religious exclusion, rather than preference, reconsideration is warranted.

The Court Erred in Dismissing Plaintiff's § 1981 and § 1983 Claims Based on Its Title VI Analysis

The Court dismissed Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983, reasoning that "[w]hile the elements of these claims vary, each requires proof of intentional discrimination," and concluding that Plaintiff "identifies no record evidence to support an inference of intentional discrimination." (ECF No. 276 at 17–18, citing *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 217

(E.D.N.Y. 2008).)

This dismissal rests on the same error underlying the Court's Title VI analysis — namely, that it overlooked substantial evidence of intent. Contrary to the Court's conclusion, Plaintiff presented multiple forms of record evidence supporting an inference of intentional discrimination, including:

Dean Rose's statement that the interview process was "designed to weed out Jews from religious backgrounds";

Statistical data showing zero Yiddish-speaking applicants were admitted to the MSW program;

The admissions interviewer's admission that she had not read Plaintiff's application and instead relied on Plaintiff's first name as a proxy for religious background;

Disparate treatment during the group interview and a pattern of racial/ethnic exclusion inconsistent with a neutral process.

The Court also failed to account for the broader scope of liability under § 1981 and § 1983, which includes individual capacity suits and Equal Protection claims.

Under § 1981, the Second Circuit has made clear that:

"Section 1981 prohibits discrimination in the making and enforcement of contracts, including contracts for employment or education. Although originally enacted to protect the rights of African Americans, its protection extends to all persons subjected to racial or ethnic discrimination."
*Patterson v. County of Oneida*, 375 F.3d 206, 224–26 (2d Cir. 2004).

The MSW application process — involving terms and conditions for entering a publicly funded graduate program — easily falls within the scope of § 1981. Intentional discrimination by any official involved in that process gives rise to personal liability under § 1981, so long as there is sufficient evidence of motive.

See also *Garrett v. Tandy Corp.*, 295 F.3d 94, 99 (1st Cir. 2002) ("The essence of a § 1981 claim is racial animus.").

Under § 1983, Plaintiff asserts a violation of the Equal Protection Clause of the Fourteenth Amendment, which likewise requires intentional discrimination, but which courts have long held may be proven through circumstantial evidence, including statements by officials and statistical disparities. See: "Discriminatory intent need not be proved by direct evidence. It can be inferred from the totality of the relevant facts, including the fact, if it is true, that the State consistently applied a facially neutral policy in a discriminatory manner."
*Washington v. Davis*, 426 U.S. 229, 241 (1976). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."
*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

Here, Plaintiff provided exactly the type of circumstantial evidence the law contemplates.

Dismissing her § 1983 claim without analyzing whether the totality of that evidence raised a genuine issue of material fact was legal error. Furthermore, the Court's reliance on *Brannon* and *JF* is misplaced. In *Brannon v. City of New York*, 434 F. Supp. 3d 321 (S.D.N.Y. 2020), the court dismissed claims based on speculative allegations unaccompanied by statistical or testimonial support. In *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609 (S.D.N.Y. 2016), the plaintiff similarly failed to present evidence of motive. In contrast, Plaintiff here has presented both direct statements (Dean Rose) and documentary/statistical evidence that supports an inference of intentional exclusion based on race, religion, or ethnicity.

Accordingly, the Court's dismissal of the § 1981 and § 1983 claims solely based on its flawed Title VI analysis constitutes a reversible legal error. Reconsideration is warranted.

The Court Erred in Dismissing Plaintiff's § 1981 and § 1983 Claims by Misapplying the Title VI Standard and Overlooking Overlapping Protections for Jews as a Protected Class

The Court dismissed Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 on the basis that they are governed by the same standard as her Title VI claim, and that Plaintiff failed to provide evidence of intentional discrimination. (ECF No. 276 at 17–18.) However, this reasoning fails for two distinct but related reasons: (1) Plaintiff did submit ample evidence of intentional discrimination, as discussed throughout this motion, and (2) Sections 1981 and 1983 provide distinct and broader protections that cannot be dismissed solely based on the Court's Title VI analysis.

*Plaintiff's Evidence of Intentional Discrimination Satisfies § 1983 Standards*

Even if viewed independently of Title VI, Plaintiff's § 1983 claim satisfies the elements required under *Arlington Heights* and *Washington v. Davis*. See:

"A plaintiff is not required to prove that the challenged action rested solely on racially discriminatory purposes. Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern. ... Discriminatory intent can be inferred from the totality of the relevant facts."
*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–68 (1977).

Here, the totality of the facts includes:

Dean Rose's statement that interviews were designed to "weed out Jews from religious backgrounds";

Statistical data from discovery showing no admitted Yiddish-speaking applicants despite their application numbers;

The admissions interviewer's failure to read Plaintiff's application and reliance on name-based assumptions;

Disparate treatment during the interview, including Plaintiff being the only candidate asked a negative follow-up question;

Evidence that other individuals with similar work and academic backgrounds were treated more favorably.

This cumulative evidence — combining direct statements, statistical patterns, and disparate treatment — satisfies the burden for intentional discrimination under § 1983. The Court's failure to independently evaluate this evidence under §§ 1981 and 1983, and its blanket dismissal of those claims based on the Title VI analysis, constitutes legal error.

Accordingly, reconsideration is warranted as to all § 1981 and § 1983 claims against the individual defendants.

The Court Erred in Dismissing Plaintiff's § 1981 and § 1983 Claims by Misapplying the Title VI Standard and Overlooking Overlapping Protections for Jews as a Protected Class.          The Court dismissed Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 on the basis that they are governed by the same standard as her Title VI claim, and that Plaintiff failed to provide evidence of intentional discrimination. (ECF No. 276 at 17–18.) However, this reasoning fails for two distinct but related reasons: (1) Plaintiff did submit ample evidence of intentional discrimination, as discussed throughout this motion, and (2) Sections 1981 and 1983 provide distinct and broader protections that cannot be dismiss*ed solely based on the Court's Title VI analysis.*          This cumulative evidence — combining direct statements, statistical patterns, and disparate treatment — satisfies the burden for intentional discrimination under § 1983. The Court's failure to independently evaluate this evidence under §§ 1981 and 1983, and its blanket dismissal of those claims based on the Title VI analysis, constitutes legal error. Accordingly, reconsideration is warranted as to all § 1981 and § 1983 claims against the individual defendants.


PLAINTIFF HAS STANDING TO SUE BASED ON PERCEIVED RACE OR ETHNICITY, INCLUDING AS A WHITE JEWISH APPLICANT

It is well-settled that plaintiffs who are perceived to be white may still bring claims of racial discrimination under Title VI, § 1981, and § 1983 when they suffer adverse treatment based on that perceived identity. The Supreme Court in McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278–80 (1976), held that § 1981 protects white individuals from racial discrimination equally. The Second Circuit and courts in this District have consistently reaffirmed that civil rights protections extend to all races, including white plaintiffs. See Pappas v. Giuliani, 118 F. Supp. 2d 433, 441 (S.D.N.Y. 2000).

Moreover, courts have long acknowledged that Jews may constitute a distinct ethnic or religious group for purposes of antidiscrimination laws. See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425–26 (2d Cir. 1995); Mizrahi v. Gonzales, 492 F.3d 156, 159–60 (2d Cir. 2007). Discrimination based on perception of religious or cultural identity—such as being an Orthodox or Hasidic Jew—is actionable even if the plaintiff is categorized administratively as white.

Importantly, courts recognize claims based on perceived race or ethnicity. See Teng v. N.Y. State Dep't of Envtl. Conservation, 2004 WL 2101928, at *7 (S.D.N.Y. Sept. 21, 2004) (perceived national origin); Altitude Express v Zarda. Plaintiff was denied admission in a context where the program explicitly tracked race, did not accept any Yiddish-speaking applicants (a group highly correlated with Jews from religious backgrounds), and used interviews to exclude Jewish applicants from more religious backgrounds where applicants were stereotyped based on name and skin color instead of looked at holistically as the interviewer failed to read the applications. These allegations fall squarely within recognized theories of perceived-race and ethnicity discrimination.

The Court Erred in Denying Further Discovery Under Rule 56(d)

The Court denied Plaintiff's discovery request for failure to file a formal Rule 56(d) affidavit. (ECF No. 276 at 19). However, Plaintiff made repeated informal requests for admissions data. Courts may consider such requests in pro se cases. See *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

Denying discovery while faulting Plaintiff for lack of evidence constitutes reversible error. See *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

CUNY Is Bound by Federal Nondiscrimination Laws Under Title VI and Related Statutes

Plaintiff respectfully moves for reconsideration to the extent that the Court failed to address or misapprehended Plaintiff's legal basis for asserting claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and related nondiscrimination provisions. The Court appeared to accept Defendants' assertion that Plaintiff had not shown CUNY receives federal funding connected to the MSW program at Silberman. However, this is contradicted by the record and applicable law.

CUNY is a tax-funded public university system. The Silberman School of Social Work is an integral part of CUNY and is publicly funded. In addition, CUNY students, including applicants to the Silberman MSW program, are required to complete the Free Application for Federal Student Aid (FAFSA) to qualify for federal student aid, including federal loans, Pell Grants, and work-study, all of which are federal financial assistance under Title VI. See: Grove City College v. Bell, 465 U.S. 555, 563–70 (1984) (holding that federal student aid received by students constitutes federal assistance to the institution under Title IX, which is interpreted similarly to Title VI); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286–87 (1998) (noting that Title VI and Title IX are to be interpreted in pari materia); Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 669 (1985) (explaining that entities receiving federal financial assistance are bound by the nondiscrimination obligations that accompany such funds).

Moreover, CUNY offers access to federally supported services and facilities, including work-study jobs, writing centers,, and fitness centers, all of which are directly or indirectly supported through federal and state public funding. As such, CUNY is clearly a recipient of federal financial assistance and is therefore subject to the nondiscrimination provisions of Title VI.

Plaintiff also cited this legal framework in her opposition, including references to 34 C.F.R. § 100.3 and other regulations implementing Title VI. Accordingly, to the extent that the Court overlooked or misapprehended this point in granting summary judgment, reconsideration is warranted. See: Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (motion for reconsideration appropriate where the court "overlooked controlling decisions or factual matters"); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration warranted when the court has "overlooked factual matters that might reasonably be expected to alter the conclusion reached").

At the time of discovery, parties agreed that cuny, including the MSW program, is a tax funded public university so there was no need to do discovery on this subject matter. defendants only mentioned at the summary judgment phase that there is no tax funding available for msw students despite asking students for their personal information to see if they qualified for financial aid so there was more need for discovery on this matter since it was a new claim that defendants never mentioned beforehand and contradicted their previous assertion that cuny, including the msw are tax funded. MSW students can get student loans, work study grants, access to writing centers and gyms, etc all of which are tax funded. Plaintiff provided this court with direct evidence from the MSW website showing that financial aid is available, it is unclear why this court would say otherwise.
https://sssw.hunter.cuny.edu/admissions/financial-aid-scholarship/


Additionally,it is true that plaintiff had some lawyers from Baker Bots represent me for limited purposes as per the directions of this court however, did not have multiple lawyers working at the same time. Instead, plaintiff originally had a lawyer who was familiar with the legal issues of this particular case as well as an associate to assist him as needed. these two lawyers ended up leaving the firm because they found new jobs at other firms so another lawyer took over presumably with an associate. This new lawyer who took over had limited knowledge about the actual laws related to the case and was only able to assist plaintiff with limited discovery matters and depositions. At this time, defendants claimed that they did not have the applications that plaintiff requested because they dont keep applications past two years. The defendants stated that they have a list of applicants and some demographical data about them so the magistrate judge at the time allowed them to give that information to plaintiff. Plaintiff received a list of unidentifiable information that included race and ethnicity as well as languages spoken. Plaintiff notes that this is the statistical data used to prove that the defendants have an illegal and discriminatory admissions process. The lawyer took the depositions of Nireata Seal and John Rose and then his services ended. Plaintiff proceeded to file a spoliation motion against the defendants for failing to produce the applications. Defendants asserted that they had the documents at the time they were served but disposed of it shortly after (check defendents response to spoliation motion where they state they had the documents until the fall of 2017 but were served in the spring of 2017 and therefore purposely destroyed the documents knowing they did not follow the laws). defendants then claimed they found some sections of the application and procceeded to send them to plaintiff.  It was not send in the original format and it is impossible to use in the format receieved so plaintiff asked to receive the applications in its original format but was denied. Plaintiffs no longer have relevant data such as the interviewers assessment of all applicants, recommendation letters of all applicants, , plaintiffs additional spoliation motion has not been resolved. Ultimately, defendants chose not to use the applications of other applicants knowing that it showed that plaintiff was treated differently than other similiarly situated applicants which is another reason why plaintiff is again requesting the applications in full and in its original format. cite all of this as well as real and relevant case law that allows plaintiff to get the applications in full and its original format and why the judge erred in his decision to deny it. (this needs to be worked on still) Defendants chose not to use these applications in their summary judgment motion, despite knowing that the records would show differential treatment. This further supports Plaintiff's renewed request to compel full and original-format applications. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (spoliation inference warranted where destroyed evidence is relevant and the loss prejudices the opposing party); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).

Plaintiff requested the application data in its original format once the defendants stated they found some portions of the applications, but was denied relevant discovery due to Defendants' inconsistent claims regarding the existence and destruction of records. The Court should have granted discovery or declined to enter summary judgment because there are genuine issues of material fact due to defendants negligence of deliberately destroying their documents in an effort to hide their illegal and discriminatory admissions policy. See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir.

1985) (summary judgment inappropriate where key facts remain under control of the moving party). In Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), the Second Circuit emphasized that "[a] plaintiff may demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons" that a reasonable jury could disbelieve them. Plaintiff's evidence squarely meets that standard. See also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

The Court erred in denying Plaintiff full access to these materials. Summary judgment should not be granted where the moving party controls evidence necessary to oppose the motion. See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985); Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999).
Courts have repeatedly held that Rule 56(d) discovery must be granted where the opposing party lacks access to essential evidence. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003) ("[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought and how they are to be obtained… and (4) how those facts are reasonably expected to create a genuine issue of material fact.").
Reconsideration is warranted due to the unresolved spoliation issue, Defendants' inconsistent explanations, and the Court's improper reliance on an incomplete record. Plaintiff respectfully renews the request for full application data in its original format.

Plaintiff's attempts to obtain this discovery were thwarted despite the pro bono attorneys appearing on her behalf for limited discovery purposes as granted by this Court. Plaintiff submitted a spoliation motion and in response, the Defendants openly admitted that they destroyed the applications in the Fall of 2017 after they were served in the Spring of 2017. Defendants then claimed that they found some portions of the applications but could not provide the interview portion, which was highly relevant since the admissions process was based on the interview, as confirmed in the deposition of Nireata Seals.
As a pro se litigant, Plaintiff may not have understood the formal requirement of submitting a Rule 56(d) affidavit, but she clearly identified in her opposition both the nature of the evidence sought and the reasons it would preclude summary judgment. See Newton v. City of New York, 640 F. Supp. 2d 426, 443 (S.D.N.Y. 2009); Gumbs v. Dynan, 2012 WL 3705009, at *17 (E.D.N.Y. Aug. 26, 2012). Where the Court misapprehends the evidentiary record or ignores admissible proof that could alter its legal conclusions, reconsideration is appropriate. See New York v. United States Dep't of Commerce, 351 F. Supp. 3d 502, 637 (S.D.N.Y. 2019) ("A district court may reconsider legal conclusions resting on misapprehension of evidence.").

INCONSISTENCIES WITH PRIOR DECISIONS OF THIS COURT

In its July 2, 2021 decision denying Defendants' second motion to dismiss, this Court found Plaintiff had sufficiently demonstrated that "Defendants used race or religion in considering her application" and that she plausibly reported discrimination based on her perceived race and religious background. Yet in summary judgment, the court disregarded and in fact omitted previous decisions. This contradiction undermines the decision to grant summary judgment and supports reconsideration. A court "should not grant summary judgment where the evidence presents a sufficient disagreement to require submission to a jury." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The Second Circuit has held that courts may not draw inferences against the non-moving party on dispositive motions. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).
More importantly, even if Plaintiff were not religiously observant, the relevant legal standard prohibits discrimination based on perceived religious identity. Additionally, atheists and agnostic have the same rights to religious freedom as anyone else in this country.  As courts in this Circuit have repeatedly held,

discriminatory treatment based on how someone appears, sounds, or is assumed to be—whether or not accurate—is still unlawful. See Sulehria, 2015 WL 3766631, at *5; Chertkova, 92 F.3d at 91

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for Reconsideration, vacate its June 23, 2025 Opinion and Order (ECF No. 276), and deny Defendants' motion for summary judgment, grant plaintiff further discovery, allow this case to proceed to trial, grant plaintiff summary judgment for defendants failure to follow the affirmative action laws and other nondiscrimination laws mentioned, grant plaintiff further relief as this court sees proper. Plaintiff notes that she had very little time to complete this reconsideration motion and requests more time as well as legal assistance from a competent lawyer with experience in this field who can help her complete this motion to the courts high standards despite plaintiff being a pro se litigant. Plaintiff also notes that she does not waive any argument inadvertently omitted in this reconsideration motion.

Respectfully submitted,


/s/ Faigy Rachel Weiss

Faigy Rachel Weiss
Pro Se Plaintiff

P.O.B 191104
Brooklyn NY 11219
646-657-6181
1:17-cv-03557 (VSB)